U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2012 JUL -2 P 4: 02

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

SAMUEL J. BOURNE,
           Plaintiff

Docket No. *1:12-cv-251-JL*

v.

STATE OF NEW HAMPSHIRE,
SUPREME COURT OF NEW HAMPSHIRE,
LINDA STEWART DALIANIS individually,
JAMES E. DUGGAN individually,
GARY E. HICKS individually,
CAROL ANN CONBOY individually,
ROBERT J. LYNN individually, and
EILEEN FOX individually,

           Defendants

JURY TRIAL DEMANDED

## COMPLAINT

### I. Introduction

1.     The Plaintiff brings this action seeking: (declaratory and injunctive relief) from

unreasonable and [retaliatory] fines and penalties improperly and unlawfully ordered by the

Defendants; a Declaratory Ruling of law prohibiting Defendants from any further deprivation of

Constitutional Rights to all who come before them; And, the Plaintiff also seeks a (Jury trial to

determine damages) that were directly caused by Defendants' actions that consisted of, but not

limited to: (1) deliberate retaliation without probable cause, (2) constitutional violations, (3)

selectively misapplying the law against an outsider (Mr. Bourne), (4) negligence, (5) fraudulent

representation, (6) discrimination, and (7) deprivation of due process and equal protection.

2.     Previously, the Plaintiff sought redress and relief from the Defendants herein on multiple

occasions, and each time, Plaintiff was systematically denied redress or relief. When the Plaintiff

recently presented newly discovered evidence to the NH Supreme Court, the Defendants herein recklessly retaliated against Mr. Bourne without probable cause, deprived him of redress or proper review, and specifically deprived him of due process and equal protection. As such, each action or inaction by Defendants were implemented to favor its own town of Madison officials and agents thereof, regardless of how many laws were violated by the Madison defendants. The Defendants conduct does in fact, violate a clearly established statutory and/or Constitutional rights of which a reasonable person would have known. See *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). *Wilson v. Layne* 526 U.S. 603, 609, 119 S. Ct. 1692, 1696 (U.S.Md.,1999). As such, the Defendants established background and above average education confirms they would have known that their actions to retaliate and deprive the Plaintiff of Constitutional protections, were abusive, discriminatory, and unlawful. As such, <u>retaliation without probable cause</u> is actionable. See *Hartman v. Moore*, 547 U.S. 250 (2006).

## II. Jurisdiction and Venue

3.      This action is brought pursuant to [multiple] violations of various provisions of the United States Constitution, and Amendments thereto, including, but not limited to; (a) violations of the privileges and immunities clause of article IV, § 2.; (b) violations pursuant to 42 U.S.C. 1983 and 1988; (c) violations of the First Amendment for discriminatory actions prohibiting Plaintiff from petitioning for governmental redress of grievances, and then sanctioning the Plaintiff for seeking such relief; and (d) violations of the Fourteenth Amendment for deprivation of due process and equal protection.

Jurisdiction is founded upon 28 U.S.C. 1331 and 1343.

2

### III. Plaintiff

4.      Plaintiff Samuel Bourne is a Massachusetts resident, also owning property in New

Hampshire, is committed to defending his inherit Civil and Property Rights as an American.

Plaintiff's mailing address is 117 Pond Street, East Bridgewater, MA 02333

### IV. Defendant[s]

5.      State of New Hampshire C/O Governor John Lynch State House, Rooms 208-214

Concord, NH 03301;

State of New Hampshire Supreme Court, One Charles Doe Drive Concord, NH 03301;

Linda Stewart Dalianis individually, One Charles Doe Drive Concord, NH 03301;

James E. Duggan individually, One Charles Doe Drive Concord, NH 03301;

Gary E. Hicks individually, One Charles Doe Drive Concord, NH 03301;

Carol Ann Conboy individually, One Charles Doe Drive Concord, NH 03301;

Robert J. Lynn individually, One Charles Doe Drive Concord, NH 03301; and

Eileen Fox individually, One Charles Doe Drive Concord, NH 03301.

### V. ALLEGATIONS COMMON TO ALL COUNTS

6.      This action is necessary due to the Defendant[s] bad faith retaliatory actions, corrupt

practices, failure to provide due process, failure to provide any adequate remedy or relief, failure

to apply the law, failure to provide a [fair] hearing before an [impartial] tribunal, and more

specifically, due to the Defendants civil rights violations, negligence, willful discrimination in

favor of others, and fraudulent representation.

*This action is of national importance*, and will certainly benefit the general public by requiring that the NH Court system must provide unbiased and adequate relief to all of the public who come before it. As of today, the Defendants in direct violation of the U.S. Constitution, and violation of the N.H. Constitution, only provide limited relief to a small privileged segment of the public, therefore selectively violating Constitutional law. Under the N.H. Constitution and the U.S. Constitution, the Defendants are required to provide adequate redress and relief to all who come before it. But here, the Defendants have specifically discriminated against an outsider (the plaintiff) because he dared to request further relief [after] new evidence was discovered that confirmed Town of Madison officials and agents thereof committed fraud on the Court in order to prolong litigation, deprive Mr. Bourne of relief, and to cause undo expenses upon Mr. Bourne. Madison officials and agents thereof constantly discriminated against Mr. Bourne, and deprived him of property rights and due process by concealing material facts in the previous appealed litigation. Here, the Defendants knowingly allowed the corrupt practice to occur and continue, which resulted in addition harm upon Mr. Bourne.

7.     The Defendants herein have shown bias, failed to provide a [fair] hearing before an [impartial] tribunal, while allowing and condoning the criminal behavior of Madison town officials and agents thereof, which amounts to aiding and abetting, and should not be tolerated in any fashion. This case addresses the fundamental problems that plagues the NH Judicial system. Such as: (a) biased favoritism toward NH town defendants, over land owners, outsiders, and specifically over *pro se* litigants; (b) no checks and balances; (c) no unbiased review; (d) no adequate relief; (e) no equal application of law; (f) constant discrimination of *pro se* litigants; and (g) no proper application of due process or equal protection.

8.      The Defendant[s] herein have knowingly and systematically rubber stamped dismissals

without ever reading or reviewing the merits of the Plaintiff's prior complaint[s], brief[s],

appendixe[s], or timely motion[s]. For example, when the Plaintiff submitted an appeal (docket

No. 2010-0091) the Defendant's herein completely failed to read or review the Plaintiff's

extensive brief or three volume appendixes. This was clearly evident after the Defendants

systematically denied the appeal without ever citing any issues raised, without citing any case

law, and/or without even noting any of the many disputed facts what-so-ever.

9.      The Defendants knowingly asserted false and fraudulent information within their Nov 18,

2010 "standardized" rejection Court order, by falsely claiming that they considered the briefs and

record submitted on appeal and affirm for reasons articulated in the trial court's well-reasoned

orders. See Court order dated Nov 18, 2010 attached hereto as **Exhibit A**.

10.      Here the physical evidence supports the fact that the four listed judges with the

assistance of the Court clerk knowingly falsified and misrepresented the Court record by

deceitfully and fraudulently claiming that they considered or reviewed the briefs and record

submitted on appeal, even though none of them ever reviewed anything. For example, when the

Plaintiff retrieved the original submitted briefs and appendixes from the Court, following the

"standardized" rejection court order noted above as exhibit A, the Plaintiff realized that each

brief and appendix were still in their original box and untouched by any judge or law clerk. The

only exception was [one] copy that is normally retained by the clerk's office for the Court's

permanent record. As such, it became evident that <u>not</u> even one single judge of the four judges

listed on the Court's order ever actually reviewed the Plaintiff's brief or appendixes as falsely

claimed in exhibit A. As such, their deceptive Court order (exhibit A) was presented under false

pretenses, intended for the Plaintiff to rely upon it, and was deceitfully implemented to protect the town of Madison officials and agents thereof, regardless of how many laws they violated.

11.     Shortly after the Defendants' produced the suspect Court order dated Nov 18, 2010 noted above, the Plaintiff has since discovered addition new evidence that further demonstrated that the town of Madison officials and agents thereof further deceived the lower Superior Court judge by now admitting that they "*vowed to deny Bourne*" his building permit. This information and new exhibits were in fact, timely submitted to the Defendants herein on or about (Nov 18, 2011) within the Plaintiff's "*petition for original jurisdiction*", but then, systematically denied by the Defendants because of the adverse nature of the evidence against town officials.

12.     In addition, other newly discovered evidence further demonstrated that the lower Superior Court judge (Houran) had a conflict of interest, and should have recused himself, but failed to do so. Therefore, demonstrating an injustice had occurred, and the Defendants failed to allow an impartial tribunal.

13.     Should a judge not disqualify himself, then the judge [is] in violation of the Due Process Clause of the U.S. Constitution. *United States v. Sciuto*, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause."). In the previously appealed lower Court case Docket No. 08-E-0027 Judge Hoaran failed to recuse himself, and failed to allow Mr. Bourne to amend his complaint before improperly dismissing his case. Therefore, violating Mr. Bourne's due process rights. In addition, Judge Houran also took it upon himself to intervene in a motion for fees and costs filed under Superior Court Rule 87. See other biased court order attached hereto as Exhibit E.

14.     In light of the newly discovered evidence, the Plaintiff then timely filed a "*Petition for original jurisdiction*", and as a result, the Defendants herein unlawfully [retaliated] against the

Plaintiff, by prohibiting him from seeking relief, and unjustly sanctioning him with abusive and unjustified fines. Filing a "*Petition for original jurisdiction*" is similar to requesting additional relief under Federal Rule 60, and as such, the Defendants herein systematically deprived Mr. Bourne of due process, and further responded by retaliating against Mr. Bourne by fining and/or sanctioning him for daring to seek redress and/or relief. See Court order dated Jan 12, 2012 attached hereto as **Exhibit B**.

15.    The previous lower Court records as presented to the Defendants herein, clearly demonstrated that (town of Madison officials and/or agents thereof): (a) committed perjury; (b) falsified court pleadings; (c) forged map[s] in order to make claim to private property and in doing so, failed to acknowledge such material facts until after Mr. Bourne was already subjected to many years of litigation and costs; (d) committed fraud against Mr. Bourne and others; (e) concealed material facts such as the towns lack of legal acceptance of the disputed easement, which normally requires detailed dedication and acceptance standards under *Hersh v. Plonski*, 156 N.H. 511 (N.H. 2007); (f) concealed the fact that town attorney Randall Cooper criminally falsified the notary of witness on same questioned deed; (g)  concealed knowledge that forged maps were used as [court evidence] in making claims to private property for the express benefit of a private club; (h) concealed other discovery; (i) committed willful spoliation of evidence when emails were requested; (j) willfully deprived Mr. Bourne of certain permits that town defendants easily grant to other residents, as newly discovered evidence demonstrates town officials now admit that they "*vowed to deny*" Bourne his building permits, which is contrary to town defendants earlier claims to the Court; (k) Madison defendants falsified affidavits and then presented them to the court as evidence, (l) Defendant King committed slander and libel through his mass emailing and other publications, (m) Madison defendants continued to promote the

7

continued trespass of motorized vehicles upon the subject property even <u>after</u> Judge Fitzgerald's court order prohibited such use, (n) continued to publish false information about the subject property, and (o) harassment and intimidation was systematically used against the Plaintiff on multiple occasions to deter his objections. As such, the Defendants herein, with the latest assistance of Robert J. Lynn and Eileen Fox, who <u>all</u> knowingly aided and abetted, condoned, allowed, and/or promoted the criminal and unlawful actions of Madison officials and agents thereof. And in doing so, failed to provide equal application of law, failed to provide due process and/or equal protection. Therefore, now bringing liability upon all Defendants herein.

(note): Defendants actions do <u>not</u> fall under the category of an abuse of discretion, as they were systematically implemented by "standardized" court orders to deny relief to outsiders and *pro se* litigants. This discriminatory conduct is further frustrated by Defendants willful retaliatory actions noted in Exhibit B.

16      Where Defendants herein allowed biased review, and allowed the town of Madison officials and agents thereof, to commit fraud upon the Court in order evade judgment, and to allow Madison officials and agents thereof, to unjustly subject Mr. Bourne to many years of litigation and costs, only confirms justice was never served. "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court (attorney Randall Cooper) and (Brian Cullen) so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. ***The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."*** Therefore, due process was not established.

8

17.     The Defendant[s] herein owed a <u>duty of care</u> to the Plaintiff and breached said duty, had a legal obligation to act within the law, in order to deter such deceitful conduct by the town of Madison officials and agents thereof, and again failed to deter or correct such deceitful behavior. Therefore, depriving Mr. Bourne of due process and equal protection under the law.

18     Defendants' failure to act, failure to be impartial, failure to review any of the Plaintiff's briefs, appendixes, and/or subsequent motions, certainly deprived Mr. Bourne of due process and equal protection.

19.     Defendant's deceitful, deceptive, and retaliatory Court orders, (exhibit A, exhibit B, exhibit C, and court order dated Dec 4, 2009 attached to exhibit E,) has resulted in substantial harm and damages upon Mr. Bourne. Therefore, Mr. Bourne now seeks actual, compensatory, and punitive damages.

20.     Defendants herein have a sworn legal obligation to apply and uphold NH State law and statutes thereof, which they negligently and recklessly failed to do, therefore causing substantial harm, mental anguish and/or pain and suffering, and severe financial damages upon the Plaintiff.

21.     In addition, the Defendants biased, negligent, reckless, deceitful, and/or unlawful standardized Court orders left the Plaintiff with severe monetary damages, and his property plagued with title defects, adverse claims, and unlawful restrictions. As such, the Defendants should have known that rehearing of the Plaintiff's grievances and/or claims were required and necessary. See *Burrows v. City of Keene*, 121 N.H. 590, 598 (1981).

22.     Defendants established Customs, Practices, and/or retaliatory misapplication of Court Rules used against the Plaintiff, clearly violates Mr. Bourne's Civil Rights under the Constitutional Protections mandated by the U.S. Constitution,  and also under the N.H. Constitution. For example, NH Supreme Court Rule 11 allows for the submission of the "petition

for original jurisdiction". But here, the Defendant's Court order (exhibit B) improperly and

recklessly applies said rule to prevent Mr. Bourne from seeking any redress or relief what-so-

ever. In addition, the Defendants' retaliation scheme misapplied NH Supreme Court Rule 23,

which limits taxation of costs [solely] to an appeal proven to be submitted in bad faith or

frivolously filed. Defendant's improper and deceitful application of Rule 23 was solely instituted

to deter the Plaintiff from requesting any further relief what-so-ever. As such, Defendants'

deceitful ploy to improperly grant town defendants baseless attorney fees under Rule 23, was

obviously implemented to retaliate and punish the Plaintiff for daring to seek redress under the

"petition for original jurisdiction." This was done in spite of new evidence that clearly

demonstrated criminal and malicious conduct by the town defendants had occurred. At no time

did the Plaintiff Mr. Bourne ever act in bad faith or file anything frivolously, nor can the

Defendants show otherwise. This is why Defendants latest "standard" denial Court order is not

signed, is unintelligible, falsely avoids timely filed motion[s] and improperly and recklessly

applies Rule 24(4) to deprive Mr. Bourne of any relief. See Defendants latest corrupt "standard"

denial Court order attached hereto as **Exhibit C.**

23.     The improper and deceitful misapplication of the Court Rules to deter a party from

seeking relief is clearly unconstitutional, and a direct violation of the First Amendment and

Fourteenth Amendment of the U.S. Constitution, which is substantially compelling enough to

require judicial review by this Federal Court.

24.     Exhibit A clearly states that the Court's opinion [is] subject to motions for rehearing

under New Hampshire procedural rules, as well as formal revision before publications in the

New Hampshire reports. But here, the Defendants knowingly and deceitfully failed to apply

these same rules evenly or equally to the Plaintiff's request for further relief. Therefore, violating

10

the Plaintiff's Constitutional First Amendment Rights to seek redress or relief. In addition, the Defendants retaliatory penalties implemented against the Plaintiff for seeking redress or relief was again hostile, and meant to deprive Mr. Bourne of his 1st Amendment Rights.

25.    If you were a non-represented litigant, and should the court not follow the law as to non-represented litigants, then the judge has expressed an "appearance of partiality" and, under the law, it would seem that he or she has disqualified him or herself.

26.    Should a judge issue any order after he or she has been disqualified by law, and if the party has been denied of any of his property, then the judge may have been engaged in the Federal Crime of *"interference with interstate commerce".* The judge has acted in the judge's [personal] capacity and not in the judge's judicial capacity. It has been said that this judge, or judges, acting in this manner, has no more lawful authority than someone's next-door neighbor (provided that he is not a judge). However some judges may not follow the law, such as here. If you were a non-represented litigant, and should the court not follow the law as to non-represented litigants, then the judge has expressed an "appearance of partiality" and, under the law, it would seem that he or she has disqualified him or herself.

However, since not all judges keep up to date in the law, and since not all judges follow the law, it is possible that a judge may not know the ruling of the U.S. Supreme Court and the other courts on this subject. Notice that it states *"disqualification is required"* and that a judge "must be disqualified" under certain circumstances.

The U.S. Supreme Court has also held that if a judge wars against the Constitution, or if he acts without jurisdiction, he has engaged in [treason] to the Constitution. If a judge acts after he has been automatically disqualified by law, then he is acting without jurisdiction, and that suggest that he is then engaging in criminal acts of treason, and may be engaged in [extortion] and the

interference with interstate commerce.

As such, Courts have repeatedly ruled that judges have <u>no</u> immunity for their criminal acts.
Since both treason and the interference with interstate commerce are criminal acts, no judge has
immunity to engage in such acts.

27.    Defendant's unconstitutional order[s] (exhibit A, exhibit B, exhibit C, exhibit D, and
exhibit E) were biased, retaliatory, deceitful, and fraudulently created to deprive Mr. Bourne of
due process, and equal protection.

28.    Defendants liability under the theory of <u>Respondeat Superior</u>, Defendants
servant/employee status creates an avenue where the Plaintiff may seek damages for the harm
done. In addition, Defendants violations of Constitutional Due process, for their failure to
provide a fair and/or impartial tribunal also brings additional liability. The core of these
requirements is notice and a [fair] hearing before an [impartial] tribunal, as such, the Defendants
failed to provide any fair or impartial tribunal. For example, when judge (Houran) [later] recused
himself in a "parallel" case, it brought to light that he had a conflict of interest and/or other
biased and unfair opinion. This later recusal demonstrated that an unfair decision had been made
by Judge (Houran) in the previous lower Court case[s], as he <u>failed</u> to recuse himself, and never
made any effort what-so-ever to disclose his conflict of interest and/or biased position before
improperly ruling on each one of the claim[s] presented by Mr. Bourne.

        In addition, Judge (Houran) knowingly <u>failed</u> to allow Mr. Bourne to amend his
pleadings or complaint prior to dismissing those claims against the town defendants. The lower
Court's order was full of misinformation, errors, disputed material facts, and misapplication of
law. See subject Superior Court Docket No. 08-E-0027 contested order[s] in part, attached hereto
as **Exhibit D.**

29.     In addition, in light of the extensive lower court record, (over 200 pleadings) the

Defendants herein, failed to provide any proper record, or showing what-so-ever, that an

impartial review of the lower Court decision[s] had ever occurred. This <u>failure</u> of the Defendants

to provide any in depth analysis, review, or written record of the plethora of disputed material

facts, or misapplication of law, is certainly overwhelmingly evident by Defendants

"standardized" court orders denying any relief. Therefore, as evident by exhibit A, the

Defendants failed to cite any disputed facts and/or any disputed misapplication of law, as such,

due process was not provided.

30.     In addition, the State of New Hampshire Defendant failed to establish safeguards against

abuse of power, discrimination, biased, and/or other violations of Constitutional law by the NH

Supreme Court and its employees thereof. As such, the individual Defendants willfully acting on

their own violated their sworn legal obligations, therefore bringing liability upon themselves for

tortious acts of an elected official under Respondeat Superior.

31.     **The Defendants herein failed to provide an impartial tribunal at the Superior Court**

**level, as well as at the appellate level. Therefore, Due Process was not provided.**

32.     It is the State that substantially created the positions and the lack of controls over the NH

Supreme Court, and in doing so, failed to implement safeguards against such abuse of power,

biased, and/or negligent acts. Defendants individual positions, were incorporated in the States

functioning, structure, and operations. The State had the right to control and/or remove the

individual Defendants from their positions, as they are paid by the State, hired by the State, and

empowered by the State. In consequence, a sufficient master-servant relationship exists, which

requires training, supervision, and removal for failure to abide by the law. Such failure to train,

supervise, or failure to remove the incompetent, spiteful, and biased individuals, can in fact, encompass direct liability as a result of the misconduct of the State employee[s].

## The Defendants are not immune from liability

33.     The principles involved in such a direct action are set forth in the Restatement (Second) of Agency § 213 (1958), to which this court has subscribed. See Labonte v. National Gypsum Co., 113 N.H. 678, 681, 313 A.2d 403, 405 (1973). Section 213 states, in relevant part:

   "A person conducting an activity through servants or other agents thereof is subject to liability for harm resulting from his conduct if he is (negligent or reckless):

        (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or

        (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;

        (c) in the supervision of the activity; . . ."

Sovereign Immunity

34.     Neither the Court, its employees, nor the State itself enjoys full sovereign immunity from tort liability. *Merrill v. Manchester,* 114 N.H. 722, 725, 332 A.2d 378, 383-84 (1974); RSA 541-B:19 (Supp. 1994). In fact, immunity is the exception, rather than the rule, in tort cases. See RSA 541-B:19; *Schoff v. City of Somersworth,* 137 N.H. 583, 589, 630 A.2d 783, 787 (1993). **There is also a disputed material fact as to the individual Defendant's mind set and deliberate intent to retaliate and deprive the Plaintiff of due process and equal protection.**

**United States Code Title 42, section 1983**

35.     The ratification of the thirteenth, fourteenth, and fifteenth amendments to the United

States Constitution in the aftermath of the Civil War revealed a national vision that the

Constitution guarantee the personal liberties of <u>all</u> citizens. In the Civil Rights Act of 1871 the

forty-second Congress of the United States created the tools necessary to transform that vision

into a concrete embodiment of civil rights protection. Section 1 of the Act, now codified at

United States Code Title 42, section 1983, provides federal remedies of tremendous scope,

<u>granting equitable and monetary relief</u> against **every** person who, under color of any statute,

ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia,

subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any

rights, privileges or immunities secured by the U.S. Constitution.

36.     Here, the Defendants (individually) (a) retaliated in bad faith, (b) violated their oath of

office, (c) willfully discriminated against the Plaintiff, and (d) recklessly deprived Mr. Bourne of

his Constitutional Rights of Due Process and Equal Protection. Therefore, the doctrine of official

immunity does <u>not</u> apply.  See *Owen v. City of Independence* 445 U.S. 622 (1980). See also

*Hartman v. Moore*, 547 U.S. 250 (2006).

37.     The Defendants can be found liable under 1983 where the State *itself* causes the

constitutional violation at issue. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658,

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). <u>The inadequacy of training or supervision may serve as</u>

<u>the basis for such liability</u> where the failure to train "amounts to deliberate indifference to the

rights of persons with whom the Defendants come into contact." *Canton v. Harris,* 489 U.S. 378,

388, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). In other words, where the State Defendant

policymakers are confronted with an obvious need to train its personnel to avoid the violation of

15

constitutional rights and they are deliberately indifferent to that need, the lack of necessary

training may be appropriately considered a State "policy" subjecting the State and its employees

to liability under *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978).

## COUNT I

### Violation of various provisions of the United States Constitution including the privileges and immunities clause of article IV, § 2.

38.     The Plaintiff realleges and reincorporates by reference the allegations asserted above in

paragraphs 1-38 as if fully stated herein.

39.     The United States Constitution, art. IV, § 2, provides: "The Citizens of each State shall be

entitled to all the Privileges and Immunities of Citizens in the several States." The purpose of the

clause is not to create an open-ended category of privileges and immunities incident to national

citizenship, but rather to guarantee that each state shall afford the same privileges and

immunities to noncitizens or nonresidents as it does to its own citizens or residents. "The section,

in effect, prevents a State from discriminating against citizens of other States in favor of its

own." *Hague v. Committee for Industrial Organization,* 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83

L.Ed. 1423 (1939), *cited in Baldwin v. Montana Fish & Game Comm'n,* 436 U.S. 371, 381-82,

98 S.Ct. 1852, 1859-60, 56 L.Ed.2d 354 (1978); *see also id.* at 380-81, 98 S.Ct. at 1858-59,

citing *Paul v. Virginia,* 75 U.S. 168, 180, 8 Wall 168, 180, 19 L.Ed. 357 (1869).

40.     Here, it is evident that the Defendants violated the privileges and immunities clause of

article IV, § 2., by purposely discriminating and retaliating against the Plaintiff, as Defendants

recklessly deprived him of due process and equal protection for the express benefit of the town

16

of Madison officials and agents thereof. As such, the Defendants improper actions should now be

struck down. Defendants discrimination against nonresidents seeking to pursue a common

calling within the State should be reckoned with. See *Hicklin v. Orbeck,* 437 U.S. 518, 524, 98

S.Ct. 2482, 2486, 57 L.Ed.2d 397 (1978).

41.      As incorporated in paragraphs 1-40, it is evident that the Defendants herein knowingly

abused their position to [*favor of its own town officials and agents thereof*], and in doing so,

willfully deprived the Plaintiff of his Constitutional Rights to due process and equal protection.

In addition, Defendants "standardized" rejection or denial court orders certainly do <u>not</u> provide

for due process.


## COUNT II

<u>Negligence</u>

42.      The Plaintiff realleges and reincorporates by reference the allegations asserted above in

paragraphs 1-42 as if fully stated herein.

43.      Because the Defendants record or suspect court orders (exhibit A, B, C, D, and E) clearly

demonstrate that there was no impartial or proper review of any Plaintiff's appeal brief[s] or three

volume appendixes, it would be fair to say that the Defendants were negligent, reckless, and

discriminatory, as such, an injustice has occurred. Because the Defendants were in fact,

negligent, or reckless, in failing to provide [any] ample review of the Plaintiff's briefs,

appendixes, or subsequent motions, now gives rise to a negligence claim. As such, Defendants

willfully permitting the biased lower Court to make a direct verdict or direct dismissal of Mr.

Bourne's claims without further review, certainly amounts to a negligent act designed to deprive

Mr. Bourne of a jury verdict and/or relief. Especially, where Defendants allowed such right to be

taken out of the hands of the jury by the lower court judge, when disputed material facts remained.

44.     To prove actionable negligence, a Plaintiff must establish that the defendant owed a duty to the Plaintiff, breached that duty, and that the breach proximately caused the claimed injury. *Carignan v. N.H. Int'l Speedway*, 151 N.H. 409, 412 (2004). Whether a duty exists in a particular case is a question of law that must be addressed. The test of [due care] is what reasonable prudence would require under similar circumstances, whether the Defendants breached that duty is a question for the trier of fact.

## COUNT III

### Fraudulent Representation

45.     The Plaintiff realleges and reincorporates by reference the allegations asserted above in paragraphs 1-45 as if fully stated herein.

46.     Here the Defendants made a false material representation that they actually reviewed the Plaintiff's brief and appendixes, had full knowledge that their representation was false, intended for the Plaintiff to rely upon their deceptive and standardized court order (Exhibit A), that the Plaintiff did rely upon the deceptive Court order, and such reliance then resulted in additional damages.

47.     In addition, the State of New Hampshire and its so-called Supreme Court continually use "standardized" court orders to deprive *pro se* litigants of relief. And in doing so, they knowingly make false representations, have full knowledge that their representations are false, knowingly deprive their victims of due process and equal protection, intend that their *pro se* victims rely

upon their standardized orders, give reliance by that party to his detriment, and knowingly cause their victims damage and loss.

48.     Under common law fraud requires: *"(1) a material representation of a past or present fact; (2) knowledge by the defendant of its falsity; (3) intention that it be relied upon; (4) reasonable reliance by the other person; and (5) resulting damages."* Carroll v. Cellco Partnership, 313 N.J. Super. 488, 501,  [*400]  713 A.2d 509 (App. Div. 1998) (citing *Gross v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 303 N.J. Super. 336, 344, 696 A.2d 793 (Law Div. 1997)); *Jewish Center of Sussex County v. Whale,* 86 N.J. 619, 624, 432 A.2d 521 (1981) *("A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment.").*

## COUNT IV

### Discrimination, Retaliatory Harassment, and Request for Injunctive Relief

49.     The Plaintiff realleges and reincorporates by reference the allegations asserted above in paragraphs 1-49 as if fully stated herein.

50.     Here the record before this Court spells out a very disturbing trail of events implemented to deprive the Plaintiff of his inherit due process and equal protection rights. And now these Defendants herein have the audacity to retaliate against Mr. Bourne, because he sought additional relief as allowed under the First Amendment to the Constitution. The Plaintiff Mr. Bourne discovered new compelling evidence that demonstrated that he was in fact, unlawfully deprived of his property rights by the suspect Madison officials and agents thereof, and as a result of Mr. Bourne bringing this new evidence to the attention of the Defendants herein, Mr.

Bourne was then deliberately retaliated against by improper and unlawful sanctions and fines. At the same time, the Plaintiff was [again] deprived of due process and equal protection. As such, injunctive relief should be granted in order to prevent these Defendants from unlawfully retaliating against Mr. Bourne by way Defendants unlawful fines or sanctions for seeking such further relief. Those corrupt and unlawfully ordered fines, sanctions and/or penalties (exhibit B) should be deemed retaliatory, and stricken.

## COUNT V

### Deprivation of Due process and Equal Protection

51.     The Plaintiff realleges and reincorporates by reference the allegations asserted above in paragraphs 1-51 as if fully stated herein.

52.     In addition, to all claims and notice of claims as asserted within paragraphs 1-51, the Plaintiff also includes further claims of deprivation of due process, equal protection, and additional damages for Defendants condoning, and contributing to the lower Court judge (Houran's) failure to recuse himself when the Plaintiff requested allowable costs and fees under Superior Ct., Rule 87. As such, Judge Houran was not familiar with the previous case, nor did he sit in, nor rule on the merits of the original action before the Carroll County Superior Court [consolidated] action, docket No.s 03-E-061, 03-E-0114, 03-E-0144, and 05-E-0014. In that action, retired Judge Fitzgerald found in favor of the Plaintiff. And, when Mr. Bourne requested fees and costs as allowed under Rule 87, judge Houran prejudiced and/or knowingly biased in favor of the town defendants, failed to recuse himself, and then improperly ruled on the requested relief. See suspect court order dated July 1, 2009 and Defendants herein standard appeal denial order dated Dec 4, 2009 attached hereto as **Exhibit E.**

20

53.     Its quite amazing that certain NH judges with obvious biased and/or discriminating

intent, knowingly fail to recuse him or herself. But here, the Defendant, so called NH Supreme

Court, continually allow, and condone, such deceitful behavior by its judges. Therefore,

contributing to the damages already suffered by Mr. Bourne, which now brings addition liability

upon all Defendants herein. At no time did any of the N.H. State court judges or Defendants

herein ever acknowledge their biased favoritism toward the local town of Madison officials and

agents thereof, nor did any of them timely recuse themselves as required by law. See *Blaisdell v.*

*City of Rochester*, 135 N.H. 589 (N.H. 1992).

54.     According to N.H. RSA 526:1: *A new trial may be granted in any case when through*

*accident, mistake or misfortune justice has not been done and a further hearing would be*

*equitable*. But here, Defendants have willfully deprived Mr. Bourne of a [fair] hearing before

any [impartial] tribunal, have specifically denied him of an impartial appeal process, have denied

him of due process and equal protection, and more importantly, Defendants have sanctioned the

Plaintiff for seeking governmental assistance, in spite of the guarantees mandated under the 1st

Amendment of the Constitution. Therefore, confirming Mr. Bourne's due process and equal

protections guaranteed by the U.S. Constitution have been violated.


        **WHEREFORE**, based upon the forgoing, the Plaintiff respectfully requests that a jury

trial be held, and judgment be entered against the Defendant[s] as follows:

A.      Grant permanent injunctive relief striking and prohibiting Defendants retaliatory fines,

sanctions, and/or award of attorney fees to the suspect Madison officials and agents thereof, as

noted in (exhibit B), and

B.      For each individual cause of action noted above, against all Defendants, actual,

compensatory, and punitive damages, in the amount to be determined at trial by jury, but in no

event, less than ten million dollars, and

C.      Declaratory Ruling of law prohibiting Defendants from any further deprivation of

Constitutional Rights to all who come before them, and

D.      Award Plaintiff any additional relief that is just and equitable.


Respectfully Submitted,

Samuel Bourne individually,                         June 29, 2012
117 Pond Street
East Bridgewater, MA 02333
508-378-9319

*2010 N H LEXIS 217* *

BEDROCK REALTY TRUST & a. v TOWN OF MADISON & a

Case No 2010-0091

SUPREME COURT OF NEW HAMPSHIRE

2010 N H. LEXIS 217

November 18, 2010, Decided

**NOTICE:**

THIS OPINION IS SUBJECT TO MOTIONS FOR REHEARING UNDER NEW
HAMPSHIRE PROCEDURAL RULES AS WELL AS FORMAL REVISION BEFORE
PUBLICATION IN THE NEW HAMPSHIRE REPORTS

**DISPOSITION:** [*1] Affirmed.

**JUDGES:** Dalianis -, Duggan -, Hicks - and Conboy -, JJ . concurred.

**OPINION**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is
unnecessary in this case. *See* SUP. CT. R. 18(1)  The petitioners' motion for oral argument is,
therefore, denied. The petitioners, Bedrock Realty Trust and Samuel Bourne, appeal several
orders of the superior court granting dispositive motions in favor of the respondents, the Town of
Madison, Cooper, Deans and Cargill law firm, Randall F  Cooper, Robert King, and Robert
Babine. We have reviewed the trial court's orders, and the petitioners' numerous claims of error,
and affirm for the reasons articulated in the trial court's well-reasoned orders.

*Affirmed.*

DALIANIS -, DUGGAN -, HICKS - and CONBOY -, JJ , concurred.



# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

### In Case No. 2011-0815, <u>Petition of Sam Bourne & a.</u>, the court on January 12, 2012, issued the following order:

Petition for original jurisdiction is denied.  <u>See</u> Rule 11.

The respondents' motions for summary dismissal, to the extent that they seek dismissal or summary affirmance, are moot.  The motion for summary dismissal, attorney's fees and costs, filed by the Town of Madison, Robert King and Robert Babine (the Town respondents), is granted to the extent that it requests an award of attorney's fees and any taxable costs pursuant to Rule 23.  On or before January 27, 2012, the Town respondents shall submit an itemization of the attorney's fees and costs that they seek to recover.

<u>Petition denied</u>.

Dalianis, C.J., and Duggan, Hicks, Conboy and Lynn, JJ., concurred.

**Eileen Fox,
Clerk**

Distribution:
Carroll County Superior Court, 212-2008-EQ-00027, 212-2011-CV-00031
Honorable Steven M. Houran
Honorable Kenneth R. McHugh
Mr. Samuel Bourne
Brian J. S. Cullen, Esquire
Andrew B. Ranks, Esquire
Randall F. Cooper, Esquire
George D. Walker. Esquire
R. Matthew Cairns, Esquire
File



# THE STATE OF NEW HAMPSHIRE
## SUPREME COURT

**EILEEN FOX**
CLERK OF COURT
**MARCIA McCORMACK**
DEPUTY CLERK
**TIMOTHY A. GUDAS**
DEPUTY CLERK

**DAVID S. PECK**
REPORTER OF DECISIONS



**LORETTA S. PLATT**
SENIOR STAFF ATTORNEY
**RICHARD C. BELL, JR.**
STAFF ATTORNEY
**BRET D. GIFFORD**
STAFF ATTORNEY

ONE CHARLES DOE DRIVE
CONCORD, N.H. 03301-6160
(603) 271-2646
1-888-535-1946
TTY/TDD RELAY 1-800-735-2964
www.courts.state.nh.us

June 19, 2012

Mr. Samuel Bourne
Bedrock Realty Trust
117 Pond Street
East Bridgewater, MA 02333

      RE: 2011-0815, <u>Petition of Sam Bourne & a.</u>

Dear Mr. Bourne:

      The clerk's office received the pleading that you filed on April 25, 2012. Please be advised that for the following reason(s), no action will be taken upon this pleading by the court.

      _____ Your pleading includes a consecutive motion for rehearing or reconsideration.  Supreme Court Rule 22(5) provides that consecutive motions for rehearing or reconsideration shall not be considered or acted upon by the court.

      _X_ Your pleading was filed after the mandate issued in this case.  Supreme Court Rule 24(4) provides that pleadings filed after the mandate has issued may not be considered or acted upon by the court.

      If you are seeking to reopen the above-referenced case, a petition for original jurisdiction seeking to reopen the case should be filed in accordance with Supreme Court Rule 11.  Such a petition will be given a new docket number. Please be advised that the filing fee is $205.00, consisting of the filing fee of $180.00 plus the $25.00 surcharge imposed by RSA 490:26-a, II.

                         Clerk of Court

cc:
Brian J. S. Cullen, Esquire
Andrew B. Ranks, Esquire
Randall F. Cooper, Esquire
George W. Walker, Esquire
R. Matthew Cairns, Esquire
File



STATE OF NEW HAMPSHIRE

CARROLL, SS                                              SUPERIOR COURT

Docket No. 08-E-027

Samuel Bourne, et al.
v.
Town of Madison, et al.

ORDER FOR SCHEDULING OF HEARING

Pending before the court are:  the defendants' "Cooper Cargill Chant, P.A. and
Randall F. Cooper's Verified Motion to Dismiss" (court index 8), to which the plaintiffs
object (court index 9); the plaintiffs' "Motion for Partial Summary Judgment on Count
VIII (Quiet Title)" (court index 10), which was filed on April 10, 2008 and is
accordingly, *see* RSA 491:8-a II, not yet ripe for consideration; the defendants' "Cooper
Cargill Chant, P.A. and Randall F. Cooper's Motion for Protective Order" (court index
12), to which the plaintiffs object (court index 14); the plaintiffs' "Motion to Compel the
Production of Documents" (court index 15), to which the defendants Cooper Cargill
Chant, P.A. and Randall F. Cooper object (court index 16); and the plaintiffs' "Motion
for Partial Summary Judgment on Count VII, Negligent and False Representation, and
Count X, Request for Injunction to Uphold Vested Rights, and Count XI, In Part,
Consumer Protection Act 358-A" (court index 13), which was filed on April 17, 2008 and
is accordingly, *see* RSA 491:8-a II, not yet ripe for consideration.

The Clerk is requested to schedule a hearing on the defendants' "Cooper Cargill
Chant, P.A. and Randall F. Cooper's Verified Motion to Dismiss" (court index 8) only.
Consideration of the other pending motions set out above is deferred pending hearing on
this motion to dismiss and further order.  The hearing will be scheduled for 30 minutes,
and will be conducted consistent with Supreme Court Rule 18(3), (4), and (5).

So ordered.

May 6, 2008

Steven M. Houran
Presiding Justice



THE STATE OF NEW HAMPSHIRE

CARROLL COUNTY                    SUPERIOR COURT

Samuel Bourne, Individually & Trustee of Bedrock Realty Trust

v.

Town of Madison, Cooper Deans and Cargill, Randall Cooper, Individually & Officially, Robert
King, Robert Babine, Bldg. Inspector

Docket No.: 08-E-027

ORDER

The petitioner in this case, Samuel Bourne (individually and as trustee of Bedrock Realty
Trust) ("Bourne"), asserts a number of claims against the Town of Madison ("the Town"),
Robert King ("King"), who served on the Town's road study committee in 1998; Robert Babine,
Building Inspector for the Town ("Babine") (collectively, "the Town respondents"); and Cooper,
Deans and Cargill Law Firm and Randall Cooper, an attorney and member of that law firm
("Cooper") (collectively, "the Law Firm respondents"). Upon hearing, and after a review of the
facts as pled and the applicable law, the court finds and rules as follows.

This action arises from a long and litigious history between Bourne and the Town.
Bourne purchased a piece of property in Madison, New Hampshire on September 30, 2002. The
Town has a conservation easement on land adjacent to Bourne's property.  Bourne's
predecessors-in-interest, the Kelseys, deeded ("the Kelsey deed") to the Town an easement over
their land, which later became Bourne's property, for the purpose of reaching the conservation
property ("the Kelsey easement"). The Kelsey easement ran through the Kelseys' (later
Bourne's) property. In 2000, the Town concluded that a roadway, known as Solomon Harmon

Road ("the road"), which ran across the Kelsey easement to the conservation property, was a Class VI public highway. The Town based this conclusion on the findings of the road study committee, of which King was the lead researcher.[1] The Town permits the public, including members of the public on snowmobiles, to pass over Class VI roads. At the time, the Town also permitted homes to be built on property that had frontage on a Class VI road. If a homeowner wished to build on such property, he or she would first be required to execute a standard agreement with the Town that relieved the Town of liability from use and maintenance of the road and which required, among other things, maintenance of the road on the part of the homeowner.

There are three previous litigations between the parties that are relevant to the current dispute. The first action, filed in state court by the Town, requested rescission of an agreement between Bourne and the Town. The second was a state court case that consolidated for trial several underlying cases filed by Bourne. The third was a federal action, also filed by Bourne.

The first action commenced when Bourne attempted to acquire a building permit for his property. He and the Town executed the standard Class VI roadway agreement. Bourne, or someone acting on his behalf, altered the agreement to preclude members of the public from passing over the road. The Town signed the agreement as altered, but later sued for its rescission, alleging that they had been unaware of the alteration when they signed it. Bourne and the Town settled that action. As part of the settlement, they executed a mutual release of all claims arising out of that action, which required Bourne to sign the agreement containing only

---

[1] A class VI road is, generally, a "public way" not otherwise classified under New Hampshire law, including "all highways discontinued as open highways and made subject to gates and bars. .and all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for 5 successive years or more.. " RSA 229:5. Class VI highways are "full public highways that the public has a right to pass over " Glick v. Ossipee, 130 N.H. 643, 646 (1988).

the standard terms, and required the Town to issue Bourne a building permit.[2]  The building
permit was granted on May 7, 2003 pursuant to the settlement, and was revoked on February 6,
2004, for reasons unrelated to the road.  The settlement released each of the parties from the
claims of the other, with a limited exception which allowed Bourne to litigate the status of the
road, including the public access thereto.

Bourne then filed a request with the Town Board of Selectmen on February 10, 2003,
requesting that the layout of the road be changed.  When the Board of Selectmen denied that
request, Bourne appealed to the superior court.  On September 19, 2003, Bourne filed a Petition
to Remove Class VI Status Placed in Error, alleging that the road was not a public way or that it
was not properly located.  On October 29, 2003, Bourne filed an action to enjoin snowmobile use
on the road.  The Town of Madison then granted the petition of another Madison landowner to
change the layout of the road.  On February 18, 2005, Bourne filed another suit alleging bad faith
on the part of the Town, and that it had granted the layout change petition in an effort to
circumvent the litigation.  The aforementioned four cases were consolidated for trial ("the State
Litigation"), and following a bench trial in March 2007 the court (Fitzgerald, J.) ruled on the
merits of the consolidated cases.  Bourne v. Town of Madison, Carroll County Superior Ct.,
Docket Nos. 03-E-0061, 03-E-114, 03-E-144, 05-E-014 (August 10, 2007) (Order, Fitzgerald, J.)
("the Fitzgerald Order").

The Fitzgerald Order held that the Kelsey easement did not permit snowmobile use and
that its location was clearly set out by the parties in the deed and could therefore not be changed.
Id. at 6.  It also held that the Town had not met its burden to show that it possessed any
prescriptive rights in Bourne's property.  Id. at 14.  In so ruling, the court determined that there

---

[2] Bourne had applied for a building permit previously, but that application had been rejected in November of 2002
for reasons unrelated to the road.

3

was insufficient evidence to show that members of the public had used the road for twenty years under a claim of right. Id. The court also held that there was no occasion for the Town to have laid out a Class VI road bisecting Bourne's property as a public necessity or convenience. Id. at 16-17. Finally, the court held that Bourne was not entitled to attorney's fees. Id. at 17. After the conclusion of the State Litigation, Bourne inquired of the Town as to the status of his building permit, and Cooper explained in a January 7, 2008 facsimile that the Town would likely not issue the permit because Bourne's property had frontage only on a private way, not a Class VI road.

While the State Litigation was pending, Bourne began litigation in the United States District Court for the District of New Hampshire against the Town, its selectmen, John Arruda, Clifford Graves, and Eileen Crafts, each individually and in his or her official capacity, and Robert King ("the Federal Litigation"). Bourne asserted five claims against the Town and its agents: that they (1) violated his federal and state constitutional rights to due process and equal protection, (2) breached the waiver agreement asserted to have been altered by Bourne's attorney, (3) perpetrated fraud, (4) made a negligent representation, and (5) interfered with contractual relations. Bourne v. Town of Madison, 494 F.Supp.2d 80, 87 (D.N.H. 2007).

In that case, the district court granted summary judgment to the defendants on Bourne's claims based in due process, equal protection, the New Hampshire Constitution, and state common law, with the exception of a claim for interference with contractual relations; that claim has been stayed pending any appeals of the State Litigation. Id. at 101-02.

In the present action, Bourne asserts ten counts numbered I-V and VII-XI set out in his petition and its amendments. The respondents move to dismiss Counts I-III, Count V, and Counts VII-XI; Bourne objects. The court will address each of these claims in turn.

4

In considering a motion to dismiss, the Court must determine "whether or not the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." Cadle Co. v. Dejadon, 153 N.H. 376, 378 (2006) (quoting La Roach Adm'r v. Doe, 134 N.H. 562, 564 (1991). In doing so, the court must "scrutinize the facts contained on the face of the petition to determine whether a cause of action has been asserted." Cadle, 153 N.H. at 378 (citing Williams v. O'Brien, 140 N.H. 595, 597 (1995)). When testing the pleadings, the court "assume[s] the truth of the facts alleged by the plaintiff and construe[s] all reasonable inferences in the light most favorable to him [or her]." Paul v. Sherbourne, 153 N.H. 747, 749 (2006) (citing DeWyngaert v. Bean Ins. Agency, 151 N.H. 406, 407 (2004)). However, the court "need not accept allegations in the writ that are merely conclusions of law." Silva v. Warden, N.H. State Prison, 150 N.H. 372, 374 (2003) (citing Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 258 (1998)). When the facts, properly viewed, "do not constitute a basis for legal relief," dismissal is appropriate. Paul, 153 N.H. at 749 (citing DeWyngaert, 151 N.H. at 407).

Count I is an action for slander of title against all respondents except Babine. In support of this claim, Bourne asserts that it came to light after the State Litigation trial that the respondents had deceived him with regard to the proper execution and acceptance of the Kelsey deed. Additionally, he alleges that on several occasions following the conclusion of the State Litigation, the respondents have made claims that the public has rightful access to the road and have allowed documents to remain on display in the Town library and online that continue to classify the road as a Class VI road. As a result, Bourne claims that he has suffered a slander of title at the hands of the defendants.

5

The law firm and Town respondents move to dismiss. Bourne objects. In their Motion to Dismiss, the respondents argue that any defect in the Kelsey deed, executed and recorded in 1979, was cured by statute, RSA 477:16, which states in pertinent part:

> When any instrument of writing shall have been on record in the office of the register of deeds in the proper county for the period of 10 years, and there is a defect in such instrument...because it was not acknowledged...such instrument shall, from and after the expiration of 10 years from the filing thereof for record, be valid as though such instrument had in the first instance...been acknowledged.

RSA 477:16 (2001). Bourne argues in his objection that RSA 477:16 does not address his fraud claim.

As to the Kelsey deed, the court finds and rules that Bourne's claims are barred by RSA 477:16. RSA 477:16 cured any and all of the defects Bourne alleges are present in the Kelsey deed. The deed was executed and recorded in 1979, and as such had been on record for more than the statutory ten years – actually more than twenty years – when Bourne purchased his property. Since Bourne acquired the property after any defect he alleges in the deed had been cured, any faults in the deed's execution or acknowledgment did not affect him. Bourne therefore has no fraud claim against any of the respondents because fraud requires that the party seeking to prove fraud show that "the other party made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Van der Stok v. Van Voorhees, 151 N.H. 679, 683 (2005) (quotation and citation omitted). Here, since the deed was cured of any alleged defect by the time Bourne took the property, the assertion by any respondent that the deed was not faulty was, in fact, true. There was therefore no falsity, nor could there have been any reliance by Bourne.

6

Even if the deed had not been cured, the court finds that any argument relating to the Kelsey deed is barred by res judicata. "Three conditions must be met for res judicata to apply: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered on the first action." Osman v. Gagnon, 152 N.H. 359, 362 (2005) (citation omitted)

> New Hampshire embraces the modern trend to define cause of action collectively to refer to all theories on which relief could be claimed on the basis of the factual transaction in question. Generally, in determining if two actions are the same cause of action for the purpose of applying res judicata, we consider whether the alleged causes of action arise out of the same transaction or occurrence. Res judicata will bar a second action even though the plaintiff is prepared in the second action to present evidence or grounds or theories of the case not presented in the first action.

Sleeper v. Hoban Family P'ship., ___ N.H. ___, ___; 955 A.2d 879, 883 (July 25, 2008) (quotations and citations omitted). Bourne himself admits that he moved to amend his pleading in the State Litigation to include defenses related to the Kelsey deed and that the motion was denied. Arguments relating to the deed are part of the same cause of action as that litigated in the State Litigation, because they were actually presented in that litigation. Any argument related to the Kelsey deed is therefore barred by res judicata. Accordingly, the respondents' motions to dismiss Count I are GRANTED insofar as they pertain to the Kelsey deed.

The court will now turn to Bourne's second claim within Count I, alleging that the Town has suggested that the public has a right of access over the road. An action for slander of title requires the petitioner to show four elements: "(1) publication of a slanderous statement disparaging a claimant's title to an interest in land, (2) the statement was false, (3) the statement was made with malice or with reckless disregard of its falsity, and (4) the statement caused actual damage." Pettee v. Young, 783 A.2d 637, 642 (Me. 2001) (citation omitted).

7

In this case, assuming for the purposes of this motion the truth of the plaintiff's allegations, the statements by the Town respondents that suggest that the public has some right of access through Bourne's property are not false. Although the Fitzgerald Order held that the road is not a Class VI road, the Kelsey easement is nonetheless effective under RSA 477:16, as discussed above. Construing the two documents together creates a right-of-way in the Town, rather than a Class VI road, which nevertheless permits pedestrian crossing of Bourne's property. Further, as to that assertion and as to the assertion, assumed for this motion to be true, that the Town continues to maintain documents showing the existence of a Class VI roadway, the court finds that Bourne has failed to sufficiently allege malice or reckless disregard on the part of the Town in failing to immediately remove any and all documents that reflect the Town's former classification of the road from public record, nor has he sufficiently alleged actual damage. Accordingly, the Motions to Dismiss Count I are GRANTED as they pertain to the action for slander of title.

Count II is an action for negligence against all respondents. Bourne contends that the respondents in this action have acted negligently in their failure to cure injustices and their alleged continued deception. Given the law Bourne cites for this claim, the court understands this to mean that Bourne is alleging professional negligence on the part of the law firm respondents. The law firm respondents argue that they had no duty of care to Bourne, but only to their client. The Town respondents argue that the Town had no duty of care to an opposing party in litigation and therefore a claim for negligence must be dismissed. Bourne responds to the respondents' Motions to Dismiss the negligence claim by claiming that all attorneys owe a duty of fairness to opposing parties and counsel.

8

To state a claim for negligence, the plaintiff must show "that the defendant owed a duty to the plaintiff, breached that duty, and that the breach proximately caused the claimed injury." Estate of Joshua T. v. State, 150 N.H. 405, 407 (2003). Bourne has failed to state a duty of care owed to him for the purposes of a negligence claim. There is no case law in New Hampshire that supports a duty to opposing parties or their attorneys in litigation sufficient to support a negligence claim on the circumstances of record in this case. Accordingly, the Motions to Dismiss are GRANTED as to the negligence claim.

Count III is an action for fraud against all respondents. Bourne alleges that during King's January 18, 2006 deposition, King admitted that, according to Bourne, the only map the Town used to claim prescriptive rights to the petitioner's property was deceitfully altered to include the missing road. The court takes this to mean that Bourne is alleging fraud on the part of the Town and King for altering the map and using it in the State Litigation. Bourne goes on to allege that Cooper falsely and deceitfully executed the Kelsey deed, that the respondents kept the faulty nature of the Kelsey deed hidden from Bourne, that they represented that a road existed when and where it did not, and that they falsely represented a vested right in issuing and revoking his building permit. He goes on to argue that an affidavit by King presented to the court in 2004 mislead the court and Bourne with regard to the map, and that this was revealed to Bourne during a deposition in 2006.

"The essence of fraud is a fraudulent misrepresentation. In order to withstand a motion to dismiss, the plaintiff must specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions. It is not sufficient for the plaintiff merely to allege fraud in general terms." Brzica v. Trustees of Dartmouth College, 147 N.H. 443, 449 (2002)

(quotation and citation omitted). The court has addressed Bourne's claims regarding the Kelsey deed in its analysis of Count I, above

The only other statement, not related to the Kelsey deed, that Bourne sufficiently alleges for the purposes of stating a claim for fraud is the statement King made during his 2006 deposition regarding the map. King admitted during the trial of the State Litigation that he had made twenty-two alterations to the map, including adding the road to it. Fitzgerald Order at 9 Because King admitted in the State Litigation to making the alterations, as noted in the Fitzgerald Order, Bourne cannot show that King made a misrepresentation material to that litigation. To the extent that Bourne intends his allegation to be that the misrepresentation at issue was the map alteration itself or a statement made by King in a 2006 deposition, King later, at the 2007 trial, admitted to making the alterations, and the Fitzgerald Order explicitly took that admission into account. Accordingly, Bourne has not alleged a misrepresentation that could have any continuing materiality. Further, the issue having been raised in the State Litigation, it is now barred by res judicata. E.g. Sleeper, 955 A.2d at 883.

Additionally, if fraudulent statements were made during the course of prior litigation and had any affect on that litigation, RSA 526:1 and 526:2 authorize the superior court to grant a new trial in any case wherein justice has not been done and further hearing would be equitable. The proper response to the discovery of fraud in prior litigation is to file a petition for a new trial in those cases, not to begin an entirely new proceeding. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count III.

Count V is an action for inverse condemnation and trespass against all defendants except Babine. Here, Bourne argues that the Town, in maintaining that a Class VI road ran through Bourne's property prior to the order made in the State Litigation, condemned and trespassed on

10

his property. The respondents move to dismiss, arguing that this claim is barred by res judicata.
Bourne objects.                    Duri9 And AFTER

Since this alleged conduct took place prior to the State Litigation and was directly at
issue in that case, it constitutes a theory on which relief could have been claimed in that
litigation. As such, it is barred by res judicata, as discussed above. See e.g. Sleeper, 955 A.2d at
883. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count V.

Bourne did not plead a Count VI.

Count VII is an action for negligent and false representation against all respondents.
Bourne alleges that the respondents made the false representations in connection with the
negotiations that resulted in Bourne being issued a building permit for his property, which
representations Bourne claimed he discovered at the October 16, 2006 deposition of Babine. He
goes on to argue that the defendants used the permit as "bait" to circumvent the State Litigation,
that they revoked the permit because of discriminatory animus toward him, and that they never
actually intended to grant him a building permit. Pet. at 11. The court takes his argument to
mean that Bourne is alleging that the respondents issued him a building permit when they never
had an intention of allowing him to build.

Bourne also argues that the Administrative Procedure Act applies to the Babine's actions.
Bourne does not set out any reason or rationale that would support the application of the Act to
Babine's actions. The respondents move to dismiss, arguing that they gave Bourne notice that he
had only been granted a building permit because the Town had adopted a policy whereby
property owners would be permitted to build on lots with frontage on Class VI roads, and that by
challenging the status of the road he was putting his building permit in jeopardy. Bourne objects.

11

The elements of a cause of action for negligent misrepresentation are "a misrepresentation of a material fact by the defendants and justifiable reliance by the plaintiff." Snierson v. Scruton, 145 N.H. 73, 78 (2000) (quotation and citation omitted).  Bourne does not point to any misrepresentation he believes the respondents made in issuing him a building permit.  The mere fact that a building permit was issued and subsequently revoked does not mean that the issuance of that permit was, in itself, a misrepresentation.  As to the Administrative Procedure Act, Bourne has failed to elucidate how Babine violated the Act or even to which Act he is referring,[3] and therefore has failed to state a claim arising under it.  Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count VII.

Count VIII is an action to quiet title against all respondents except Babine.  Bourne argues that the faulty Kelsey deed resulted in a cloud on his title that must be removed.  The respondents move to dismiss.  Bourne objects.  The court has addressed Bourne's claims with regard to the Kelsey deed above.  Because, as discussed above, the Kelsey deed is valid, the respondents' Motions to Dismiss are GRANTED as to Count VIII.

Count IX is an action for nuisance against all respondents.  Bourne asserts that the Town's allowance of public traffic over the road prior to the State Litigation resulted in a loss of enjoyment of his property.  The respondents move to dismiss.  Bourne objects.  Since any alleged nuisance occurred AFTeR prior to the State Litigation, and the use of the road was directly at issue in that action, this claim is barred by res judicata, as discussed above.  See e.g. Sleeper, 955 A.2d at 883.  Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count IX.

---

[3] Bourne cites the federal Administrative Procedure Act, 5 U.S.C. § 706 (2000), in an addendum to his pleading, but New Hampshire also has an Administrative Procedure Act. RSA 541-A:1 et seq.  Assuming he means RSA 541-A:1 et seq., he offers no support for its application here, and the court finds none.

Count X is a request to uphold injunctive rights against all respondents. In support of this claim, Bourne argues that the doctrine of vested rights requires the Town to reissue his building permit. The respondents move to dismiss. Bourne objects.

Bourne's request that the Town be required to issue him a building permit must be heard at the Town of Madison Zoning Board of Adjustment, pursuant to RSA 676:5, which provides for appeals to the Zoning Board of Adjustment for any person aggrieved by any decision of an administrative officer. If Bourne had been denied a building permit and he believes that decision was made in error, the proper forum in which to bring such a grievance was the Zoning Board of Adjustment. McNamara v. Hersh, 157 N.H. 72, 73-74 (2008). Challengers must exhaust their administrative remedies before appealing to the superior court. Id. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count X.

Count XI is a claim under the Consumer Protection Act, RSA chapter 358-A, against all respondents. Bourne avers that the respondents disparaged his business's goods or services in revoking his building permit, in making claims that a Class VI road existed, and in presenting the Kelsey deed as appropriately executed. The respondents move to dismiss. Bourne objects.

As stated in the analysis of Count X, the proper forum for the question of whether or not Bourne should have been issued a building permit was the Town of Madison Zoning Board of Adjustment. The court has also previously addressed Bourne's claims with regard to the validity of the Kelsey deed. Finally, all claims with regard to the Class VI status of the road were or should have been raised in the State Litigation and are therefore barred by res judicata, as discussed above. See e.g. Sleeper, 955 A.2d at 883. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count XI.

13

Finally, Bourne has amended Counts II, VII, and XI to include claims for obstruction of justice, concealment of material facts, municipal estoppel, and estoppel by silence   The respondents move to dismiss. Bourne objects.

Bourne does not make it clear how these claims are applicable to the counts Bourne is attempting to amend, nor is it clear how Bourne believes they apply to his situation. The court reads these amendments in the broadest context, and doing so reads them in part to mean that Bourne believes that the respondents concealed facts from him in the State and Federal Litigation and that the Town should have told him that they were going to revoke his building permit. The court has addressed each of these claims under Count III and Count X, respectively, and for the reasons discussed there, the Motions to Dismiss are to this extent GRANTED.

With regard to the remainder of the assertions in these amendments, although New Hampshire takes "a liberal approach to the technical requirements of pleadings," Porter v. City of Manchester, 151 N.H. 30, 43 (2004) (quotation and citation omitted), it is "well established that a defendant is entitled to be informed of the theory on which the plaintiff is proceeding and the redress that he claims as a result of the defendant's actions." Id. (quotation and citation omitted). "Allegations of pleadings are sufficiently clear if they are understandable by the court and counsel." Milne v. Burlington Homes, 117 N.H. 813, 815 (1977).

In this case, Bourne's allegations in his amendment are not sufficiently clear to give the respondents or the court proper notice of the factual basis for these claims, aside from the claims the court can understand him to be asserting, set out, addressed, and dismissed above Accordingly, as to the balance of Bourne's amendments, the respondents' Motions to Dismiss are GRANTED.

14

In sum, for the foregoing reasons, the respondents' Motions to Dismiss Counts I-III,

Count V, and Counts VII-XI are GRANTED.

So Ordered.

December 7, 2008

Steven M. Houran
Presiding Justice

THE STATE OF NEW HAMPSHIRE

CARROLL COUNTY                                      SUPERIOR COURT

Samuel Bourne, Individually & Trustee of Bedrock Realty Trust

v.

Town of Madison, Cooper Deans and Cargill, Randall Cooper, Individually & Officially, Robert
King, Robert Babine, Bldg. Inspector

Docket No.: 08-E-027

ORDER ON MOTION TO COMPEL AND MOTION FOR CONDITIONAL DEFAULT

Pending before the court are Mr. Bourne's motion to compel (court index 137) and his
motion for conditional default (court index 138). The court rules as follows.

*Motion to Compel*

By the body of this motion, Mr. Bourne, as counterclaim defendant, asks that the court
order Mr. King to execute authorizations for access to Mr. King's electronic communications in
the possession of Mr. King's email service provider, Earthlink, Inc., for January 1, 2003 through
November 30, 2004. The motion does not explain why the court should do so in the face of the
assertion by Earthlink that it permanently moves email messages from its server to the user's
computer when the user downloads the messages, nor does the motion explain whether one of
the exceptions to the provisions of 18 U.S.C. 2701 *et seq.* applies here. The motion is denied.

The proposed order attached to the motion seeks additional relief not addressed in the
body of the motion, including a requested order for access to Mr. King's computers. As the body
of the motion does not explain why the court should grant these additional requests, they are
denied.

*Motion for Conditional Default*

Mr. Bourne, as counterclaim defendant, requests that the court enter conditional default
against Mr. King for Mr. King's failure to answer interrogatories within 30 days. Upon
consideration of prior pleadings and orders, good cause exists and justice requires that ruling on
Mr. Bourne's motion for conditional default be deferred until the court rules on the motion to
dismiss scheduled for April 7, 2009 hearing.

So Ordered.

April 2, 2009

Steven M. Houran
Presiding Justice

STATE OF NEW HAMPSHIRE

CARROLL, SS                                         SUPERIOR COURT

Docket Nos. 03-E-061, 03-E-114, 03-E-144, 05-E-014

Bedrock Realty Trust
v.
Town of Madison

## ORDER ON MOTION FOR TAXATION OF COSTS

Pending before the court is the petitioner's Motion for Taxation of Costs Under Rule 87. The petitioner asserts that he is entitled to an order for costs under Superior Court Rule 87. The petitioner's motion incorporates an attached verified Bill of Costs asserting a claim for costs in the amount of $44,576.46 plus interest on that amount.

The respondent objects, asserting that the petitioner is precluded from seeking costs because the issue has been previously resolved and not raised on appeal. More specifically, the respondent asserts that the court's order (Fitzgerald, J.) dated August 10, 2007 denied the petitioner's request for costs and that the denial, which was not appealed, may not be revisited now.

The respondent is in large part, but not entirely, correct.

In its pretrial pleadings and at trial, the petitioner asked that the court award it both its attorney's fees and its costs. The August 10, 2007 order (Fitzgerald, J.) explicitly denied the petitioner's request for "attorneys' fees and costs." Thus, the issue of the petitioner's request for costs has been raised, litigated, and resolved by the trial court, and that resolution was not appealed to the Supreme Court.  *See Supreme CT Ord 2007-0550*

The question remains, however, whether the trial court intended its August 10, 2007 ruling denying costs to apply to all costs, including those mandated to the prevailing party under Superior Court Rule 87, or only those costs over which the trial court has discretion. Upon review of the pretrial pleadings, trial memoranda, petitioner's requests for findings and rulings, and the August 10, 2007 order, the court determines that the trial



court intended its denial of costs to apply only to those costs over which it had discretion, not those costs mandated by Rule 87.

Further, had the trial court intended its order to deny the petitioner all costs, it would have been an unsustainable exercise of discretion to do so.[1]   The court reaches this conclusion with the understanding that costs are "allowable only when authorized by statute or court rule," *Claremont School Dist. v. Governor (Costs and Attorney's Fees),* 144 N.H. 590, 583 (1999) (quotation omitted), *see also Grenier v. Barclay Square Commercial Condo. Owners' Assoc.,* 150 N.H. 111, 118-19 (2003) (concerning evaluation of costs within framework of Rule 87).

Superior Court Rule 87 provides in full as follows:

(a) Costs. Costs shall be allowed as of course to the prevailing party as provided by these rules, unless the Court otherwise directs.
(b) Taxation of Costs. Upon written request, the clerk shall tax costs in any case, which shall include the fees of the clerk and fees for service of process which are documented in the court file.
Any party claiming other allowable costs shall file a motion to allow costs together with an itemized, verified bill of all costs requested, to be ruled upon by the Court. Any party aggrieved by the Court's order concerning costs may appeal therefrom within 30 days from the date of notice of such order, regardless of whether an appeal concerning the underlying judgment is sought.
(c) Allowable Costs. The following costs shall be allowed to the prevailing party: Fees of the clerk, fees for service of process, witness fees, expense of view, cost of transcripts, and such other costs as may be provided by law. The court, in its discretion, may allow the stenographic cost of an original transcript of a deposition, plus one copy, including the cost of videotaping, and may allow other costs including, but not limited to, actual costs of expert witnesses, if the costs were reasonably necessary to the litigation.

It is not argued that the petitioner is not the prevailing party as that term is used by Rule 87.

---

[1] This court believes it has the context upon which to make this determination, given the long and extensive record before it in this case and given this court's familiarity with the underlying issues gained from the more than a dozen pretrial orders this court has issued in the pending follow-on case of *Samuel Bourne, Individually & Trustee of Bedrock Realty Trust v. Town of Madison, Cooper Deans and Cargill, Randall Cooper, Individually & Officially, Robert King, Robert Babine, Bldg. Inspector,* Carroll County Superior Court Docket No. 08-E-027.

Accordingly, "[u]pon written request, the clerk shall tax costs in any case, which shall include the fees of the clerk and fees for service of process which are documented in the court file." Rule 87(b). The petitioner has made a written request for these costs, and the use of the word "shall" makes this provision mandatory. Accordingly, the Clerk shall proceed to tax against the respondent the fees of the Clerk and fees for service of process which are documented in the court file, and to that extent the petitioner's motion for costs is granted.

The petitioner also moves the court for allowance of additional costs pursuant to Rule 87(b), asserting that the petitioner is entitled to such costs under Rule 87(c). Rule 87(c) provides that "[t]he following costs shall be allowed to the prevailing party: Fees of the clerk, fees for service of process, witness fees, expense of view, cost of transcripts, and such other costs as may be provided by law." The use of the word "shall" makes this provision mandatory. Thus, the court is mandated to order "witness fees, expense of view, cost of transcripts, and such other costs as may be provided by law."

Within this category, the petitioner claims witness fees and the cost of transcripts. There was no "expense of view" and the petitioner asserts no provision of law providing for costs other than Rule 87. Thus, the court's focus here is on the petitioner's witness fee and transcript claims.

The petitioner claims witness fees for Pat Kelsey, Robert Tafuto, and Stephen Nix. As to each, however, he provides no itemization or breakdown of asserted costs. For example, as to witness Kelsey, the petitioner claims $1,094 for "Airfare, Hotel, Rental Car and Testimony." The claims as to witnesses Tafuto and Nix are likewise lumped together as to each. The only portion of these claims which is mandated by Rule 87(c) is the portion allocable to witness fees, but the petitioner does not provide the court with information concerning witness fees he has paid. Without that information, the court cannot determine what portion of the total claim associated with these witnesses constitutes such fees. Accordingly, the claim for witness fees is denied.

The petitioner claims $718 for court hearing transcripts. The cost of such transcripts "shall" be allowed to the prevailing party. Rule 87(c). Accordingly, the

motion for costs is granted as to this claim and the respondent is ordered to pay the petitioner $718.

 With four exceptions, discussed below, the balance of the petitioner's claims for costs, including without limitation claims for costs of expert witnesses and stenographic costs of pretrial depositions, at least arguably fall within the category of costs the court may consider in its discretion. *See* Rule 87(c) ("The court, in its discretion, may allow the stenographic cost of an original transcript of a deposition, plus one copy, including the cost of videotaping, and may allow other costs including, but not limited to, actual costs of expert witnesses, if the costs were reasonably necessary to the litigation."); *but see e.g. Martinez v. Nicholson,* 154 N.H. 397, 402 (2006) ("Under Rule 87(c), 'actual costs of expert witnesses' are limited to those charges 'directly related' to the expert witness's appearance and testimony in court, and do not include charges such as those related to pretrial conference work."). The time to seek a review of the trial court's denial of costs which were within its discretion to order was the time of appeal to the Supreme Court, not now. This court accordingly declines to consider such claims here.

 The petitioner also claims $4,226 for long distance calls, $2,862 for postal services over four years, $3,048 for office supplies, ink, paper, and photo paper, and $642.06 for copy fees paid to the respondent Town of Madison. These costs do not fall within the mandatory portion of Rule 87(c). These are not the type of costs ordinarily ordered under Rule 87 even in the exercise of a court's discretion. However, assuming without deciding that they could be ordered in the court's discretion under Rule 87(c), the time to seek a review of the trial court's denial of costs which were within its discretion to order was the time of appeal to the Supreme Court, not now. This court accordingly declines to consider such claims here.

 The petitioner also claims $745.86 for his appeal transcript cost. Such costs are governed by Supreme Court Rule 23. Rule 23 provides in relevant part:

> The clerk of the supreme court shall audit and allow bills of costs accruing in this court, and certify the costs to the trial court with the order made in the case. The following costs shall be allowed to the prevailing party: the entry fee, the actual cost of reproducing and binding the notice of appeal

> and any appendix, the actual cost of reproducing and binding the brief and any appendix, and cost of transcript.
> Costs will be deemed waived if a request for taxation of costs with itemization is not filed within 30 days after the date on the order in the case.

The Supreme Court's June 25, 2009 Mandate to this court setting out its May14, 2009 order was not accompanied by any certification of costs accrued in the Supreme Court. Accordingly, this claim is denied.

The petitioner also claims $547.50 for attorney's fees the petitioner was previously ordered to pay to the respondent. This issue has previously been litigated to an endpoint, and will not be reconsidered here. This claim is denied.

The petitioner also asks that he be awarded interest for all expenses paid to adjust for losses from May 2003 to date. Rule 87 does not contemplate the award of interest on orders to pay costs. As costs are "allowable only when authorized by statute or court rule," *Claremont School Dist. v. Governor (Costs and Attorney's Fees),* 144 N.H. 590, 583 (1999) (quotation omitted), and as no authority for this claim is cited or known to the court, this claim is denied.

In conclusion, for the foregoing reasons, the fees of the Clerk and the fees for service of process which are documented in the court's file will be taxed by the Clerk. Rule 87 (a) and (b). The court orders the respondent to pay the following costs in favor of the petitioner: $718 for transcripts. Rule 87(b) and (c). The balance of the petitioner's requests for costs are denied.

So ordered.

July 1, 2009

Steven M. Houran
Presiding Justice

# THE STATE OF NEW HAMPSHIRE
## SUPREME COURT

**EILEEN FOX**
CLERK OF COURT
**MARCIA McCORMACK**
DEPUTY CLERK
**MICHELLE A. CARAWAY**
DEPUTY CLERK

**DAVID S. PECK**
REPORTER OF DECISIONS



**LORETTA S. PLATT**
SENIOR STAFF ATTORNEY
**RICHARD C. BELL, JR.**
STAFF ATTORNEY
**BRET D. GIFFORD**
STAFF ATTORNEY

ONE CHARLES DOE DRIVE
CONCORD, N.H. 03301-6160
(603) 271-2646
1-888-535-1946
TTY/TDD RELAY 1-800-735-2964
www.courts.state.nh.us

July 14, 2009

Mr. Sam Bourne
Bedrock Realty Trust
117 Pond St.
East Bridgewater, MA  02333

RE:  2008-0550 Bedford Realty Trust v. Town of Madison

Dear Mr. Bourne:

The clerk's office received the pleading that you filed on July 14, 2009.  Please be advised that for the following reason, no action will be taken upon this pleading by the court.

__X__  Your pleading was filed after the mandate issued in this case. Supreme Court Rule 24(4) provides that pleadings filed after the mandate has issued may not be considered or acted upon by the court.

Please note that the mandate was issued in this case on June 25, 2009, the same day that the order denying the motion for reconsideration was issued.  See Rule 24(1) (clerk shall forward mandate "within 7 days" after issuance of order denying motion for reconsideration).  Thus, pursuant to Rule 24(4), any pleading filed with this court after June 25, 2009, may not be considered or acted upon by the court.  Rule 24(1) does not provide a seven-day period for the filing of motions following the issuance of an order denying reconsideration.  See also Rule 22(5) (consecutive motions for rehearing or reconsideration shall not be considered or acted upon by the court).

Clerk of Court

Cc:  Randall F. Cooper, Esquire
File

# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

### In Case No. 2009-0498, Bedrock Realty Trust v. Town of Madison, the court on December 4, 2009, issued the following order:

Having considered the petitioner's brief and reply memorandum, the respondent's memorandum of law, and the appellate record, we conclude that oral argument is unnecessary for the disposition of this appeal. See Sup. Ct. R. 18(1). The petitioner, Bedrock Realty Trust, appeals an order of the superior court denying in part its motion for taxation of costs against the respondent, the Town of Madison, pursuant to Superior Court Rule 87. We affirm.

A decision to award costs under Rule 87 lies within the sound discretion of the trial court; we will not overturn the decision absent an unsustainable exercise of discretion. See Martinez v. Nicholson, 154 N.H. 397, 400 (2006). "This means that we review the record only to determine whether it contains an objective basis to sustain the trial court's discretionary judgment." In the Matter of Hampers & Hampers, 154 N.H. 275, 281 (2006). It is the burden of the petitioner to demonstrate that the trial court's ruling was clearly untenable or unreasonable to its prejudice, see G2003B, LLC v. Town of Weare, 153 N.H. 725, 729 (2006), and to submit so much of the record as is sufficient to make this determination and to establish that the petitioner raised its appellate arguments in the trial court, see Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).

In this case, the trial court found that the petitioner's requested costs which were within its discretion to allow under Rule 87(c), including the costs of its expert witnesses, its pretrial deposition costs, and its expenses for long distance telephone calls, postal services, office supplies, ink, paper, photo paper, and copying costs, were within the scope of the petitioner's earlier request for costs and attorney's fees. The trial court denied that request, and we upheld its decision in Case No. 2008-0550. Thus, the trial court concluded that "the time to seek review of [its] denial of [such] costs . . . was at the time of the appeal to the Supreme Court," and declined to consider such costs further. Similarly, the trial court concluded that a request to be reimbursed the attorney's fees the petitioner had paid the respondent as a court-ordered sanction earlier in the case had already "been litigated to an endpoint, and [would] not be reconsidered here."

A final judgment is ordinarily binding upon parties in subsequent litigation as to matters that were decided, or that could have been litigated, in the earlier action. See Sleeper v. Hoban Family P'ship, 157 N.H. 530, 533 (2008). The decision we upheld in Case No. 2008-0550 denying the petitioner's request for costs and attorney's fees upon the basis of the respondent's alleged bad faith was, necessarily, a final judgment. See Van Der Stok v. Van Voorhees, 151 N.H. 679, 681 (2005) (jury verdict became final judgment only upon a post-verdict decision on a request for attorney's fees). Upon this record, the trial court did not err by declining to re-examine, under the guise of a post-judgment Rule 87 motion for taxation of costs, those costs it found to be within the scope of the petitioner's earlier request for costs and attorney's fees, and the attorney's fees the petitioner had been ordered to pay the respondent in the underlying action.

The trial court also found, with respect to the costs the petitioner sought relative to Pat Kelsey, Robert Tafuto, and Stephen Nix, that the petitioner's affidavit, which "provide[d] no itemization or breakdown of asserted costs," failed to provide sufficient information to determine the amount paid as "witness fees," the only expense relative to witness costs for which allowance is mandated by Rule 87(c). Accordingly, the trial court denied the claim to the extent the petitioner sought reimbursement for "witness fees" paid to these witnesses. The trial court did not unsustainably exercise its discretion in so ruling.

It was the petitioner's burden, to the extent it sought reimbursement for witness fees, to submit "an itemized, verified bill of all costs requested" sufficient to substantiate its request. Super. Ct. R. 87(b). As the trial court noted, the petitioner's affidavit did not satisfy this burden. To the extent the petitioner argues that the trial court should have held a hearing or directed the clerk of court to audit the bill of costs, the record does not reflect that the petitioner sought such relief.

We reject the petitioner's contention that the trial court erred by denying the transcript preparation costs it had incurred in the earlier appeal. See LaMontagne Builders v. Brooks, 154 N.H. 252, 258-59 (2006) (requests for appeal costs must be sought in the supreme court under Supreme Court Rule 23, and not in the superior court). To the extent the petitioner argues that it was entitled to interest under RSA 336:1 (2009), or witness fees under RSA 516:14 (2007), the record does not reflect that it sought relief pursuant to those statutes. The petitioner's remaining arguments are either insufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or are without merit, warranting no further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

2

Broderick, C.J., and Dalianis, Duggan, Hicks and Conboy, JJ., concurred.

**Eileen Fox,**
**Clerk**

Distribution:
Clerk, Carroll County Superior Court, #03-E-0061, 0114, 0144; 05-E-0014
Honorable Steven M. Houran
Honorable Robert J. Lynn
Bedrock Realty Trust
Randall F. Cooper, Esquire
Michelle Caraway, Supreme Court
Marcia McCormack, Supreme Court
File

3

U.S. District Court
District of New Hampshire
55 Pleasant Street
Concord, NH 03301

June 29, 2012

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2012 JUL -2 P 1: 03

Attentions: Clerks Office

Dear Clerk

$12-\rho\rho-251$

Here enclosed is an original copy, a cover letter, and eight copies that will be served upon the defendants listed.

Please docket the new complaint.

Each copy has a summons attached that needs to be stamped and signed by the Court.

Once, you properly sign and stamp each summons as required, please return them to me, so that I can have the defendants properly served.

Also included herein is a check in the amount of $365.00 for the required $350.00 filing fee, and an extra $15.00 for return Mail.

If you have any questions or concerns, please feel free to contact me.

Sincerely,

Sam Bourne
117 Pond Street
East Bridgewater, MA 02333
508-378-9319