UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2012 JUL 30 P 1: 32

SAMUEL J. BOURNE,
        Plaintiff

Docket No. 12-cv-251-JL

v.

STATE OF NEW HAMPSHIRE,
SUPREME COURT OF NEW HAMPSHIRE,
LINDA STEWART DALIANIS individually,
JAMES E. DUGGAN individually,
GARY E. HICKS individually,
CAROL ANN CONBOY individually,
ROBERT J. LYNN individually, and
EILEEN FOX individually,

        Defendants

### PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS

Now Comes the Plaintiff Mr. Bourne and respectfully Object to the Defendants unsupported motion to dismiss, and the Plaintiff states as follows:

### Disputed Factual Allegations

First and foremost, the Defendants "factual allegations" at 1 are completely misleading, as the Plaintiff is NOT requesting the Court to vacate or reverse any State court orders, as those orders should be considered null and void, and legally unenforceable, due to their unlawfulness, failure to provide a fair hearing before an [impartial] tribunal, and are unsigned. At this time, it is unclear whether or not the Defendants herein will attempt to enforce those unlawful orders, But the Madison defendants do in fact intend on enforcing the retaliatory fines. As such, injunctive relief is certainly necessary in order to prevent further irreparable harm. The Court should note that the Plaintiff did in fact rely ALL those suspect orders, which has lead to further damages. The Defendants should be enjoined from their malicious, discrimination, and retaliatory fines

1

against the Plaintiff. If the Court has any reservations, then the Defendants should be ordered to answer the Plaintiff's complaint for a more in-depth analysis. This Court should keep in mind that the Defendants do not deny any of the facts alleged in the Plaintiff's complaint.

Injunctive relief prohibiting retaliatory fines that were unlawfully implemented to deprive the Plaintiff of his First Amendment Rights must be given high priority. The same high standards should also be applied to the Plaintiff's requests for Declaratory Judgment declaring the rights of the partie[s]. As such, the Plaintiff does in fact have every right to obtain an order that requires the Defendants to cease and desist all such discriminatory conduct, which violates Constitutional law. Defendants retaliatory fines, and/or unlawful deterrent, preventing the Plaintiff from seeking redress should be judicially estopped to prevent the continued injustice. The same is true with the Defendants failure to provide a [fair] hearing before an [impartial] tribunal, as this Federal Court's inherit power does in fact, allow for such declaratory relief to correct the injustice as clearly stated within the Plaintiff's complaint. In addition, Defendants failure to allow any appellate review of the lower Court order by judge (Houran) docket No. (08-E-0027) did in fact violate the Plaintiff's due process rights. The lower court order improperly implements an unconstitutional statute NH **RSA 477:16** which unlawfully allows anyone to record deeded rights to private property, and if the unlawful recorded deed goes unnoticed for ten years or more, it becomes legally binding upon the subject property. Such lack of due process amounts to an unlawful taking. Therefore, requiring a Declaratory Ruling of law.

Madison defendants and their counsel (attorney Brian Cullen) and (Randall Cooper) who assisted the Madison defendants in concealing material facts, and concealing other non-privileged documents, did so, with full knowledge of their deceit. As such, the Plaintiff was never made aware of certain material facts affecting the subject Kelsey deed. For example,

2

Madison defendant's counsel concealed that the Kelsey easement: (1) was never legally or formally accepted, (2) contained the falsified notary of witness by attorney Randal Cooper, (3) attempted to unlawfully grant deeded rights over the neighbors property without their consent, (4) was never built, maintained, or used, and (5) violates State Environmental laws as it attempts to utilize public use of restricted wetland. Therefore, concealing material facts that created a cloud upon Mr. Bourne's title, and in doing so, violated Mr. Bourne's due process rights. If the Defendants herein bothered to do their job as required, then they would have known of these facts, and their record would have shown it. But instead, the Defendants herein misrepresented that such review had actually occurred, when in fact, no such appellate review had ever taken place. This fraudulent misrepresentation by the Defendants herein, caused irreparable harm upon Mr. Bourne by deliberately depriving him of his appellate rights.

In regard to the remainder of judge (Houran's) disputed order, which deliberately misapplies the law at every turn, was written with biased intent, and illegally authorized the criminal acts committed by the Madison defendants. If the Defendants herein actually reviewed the Plaintiff's original complaint or his appeal brief, then the Defendants would have found ample evidence to hold the Madison defendants liable, and would have found ample support to disbar [both] Randall Cooper, and more specifically attorney Brian Cullen. Fraud on the Court by both of these attorneys should not go unnoticed.

In addition, the fact that Defendants deliberately failed to provide a [fair] hearing before an [impartial] tribunal, deprived Mr. Bourne of his Due Process Rights, as those issues are specifically [ripe] for review. In other words, the Defendants unlawful and unconstitutional (procedural protocol) or (standardized generic court orders) implemented only by a clerk, against *Pro Se* litigants because of known [budget cuts], systematically deprived the Plaintiff of Due

3

Process. As such, a disputed material fact of national importance does in fact exist, therefore requiring this Court to deny the Defendants motion to dismiss.

In regard to the Plaintiff vested rights ignored by the Defendants. Mr. Bourne received a building permit, started construction, and spent large sums of money, thereby creating a vested right to complete the construction. Madison's officials unlawfully and deceitfully revoked said permit in retaliation for contesting their unfounded road claims, and since then, the town official's <u>now</u> admit, they *"Vowed to deny Bourne his Building permit"*, which is contrary to their earlier statements made to the lower court. Therefore, requiring further judicial relief, not judicial stonewalling.

Failure of the State Defendants to provide actual, or [any] equal appellate review to *Pro Se* litigants certainly deprived Mr. Bourne of his fundamental Civil Rights. The evidence before the Court demonstrates that the Defendant NH Supreme Court indented to punish the Plaintiff for daring to bring forth compelling evidence against the Madison defendants. There was no reasonable excuse to retaliate against Mr. Bourne for his good faith efforts to seek such redress or review. See Petition for original jurisdiction attached hereto as <u>Exhibit 1.</u> See also Plaintiff's objection to Madison defendants motion for summary dismissal, attached hereto as <u>Exhibit 2.</u> Both exhibits 1, and 2, clearly demonstrate that the Plaintiff acted in good faith, and specifically should have been permitted to seek such relief as guaranteed to Mr. Bourne by the U.S. Constitution. Denying Mr. Bourne of his right to seek redress and then retaliating against him with unjust and unlawful fines should not be tolerated in any case. Even if, this Court finds no adequate case law to address the abusive conditions set forth by the Defendants, then new ground should be paved to address such outrageous deprivation.

When new evidence was discovered that proved Judge (Houran) was biased when making his questionable rulings, and other new evidence discovered that also proved Madison defendants *"Vowed to deny Bourne his Building Permits",* a complete briefing should have been ordered, but never retaliatory fines ordered against Mr. Bourne for daring to seek such redress. As such, the Defendants actions were outrageous and in direct violation of Mr. Bourne's First Amendment Rights.

During the (unconstitutional process or biased protocol) used by the Defendants to deprive Mr. Bourne of his constitutional rights, his vested property rights, and his rights to an impartial tribunal, the Defendants willfully caused Mr. Bourne to suffer great financial damages that can in fact be calculated. Such actionable negligence can also be established by showing the Defendants owed a duty to the Plaintiff, breached that duty, and that breach proximately caused the claimed injury. Quoting: *Carigan v. N.H. Int'l Speedway*, 151 N.H. 409, 412 (2004). For example, Defendants [admit] at 3, that: ***"However, the procedural orders of the NH Supreme Court attached as exhibits are issued by the Clerk, and the orders by the justices are also issued by Eileen Fox as Supreme Court Clerk."*** As such, Defendant Fox appears to be the only one making the orders, and not the so-called justices, as none of them ever signed any such orders. The so-called "standardized" Court orders: (a) lack any review of the facts; (b) lack any disputed material issue raised on appeal; and (c) fail to cite any case law to support the lower court's biased opinion. Obviously, none of the so-called justices [ever] reviewed Mr. Bourne's (thirty six) page brief, or the [three] volume appendix. As such, the Defendants now bring liability upon themselves in their [individual] capacity for false and fraudulent representation of the facts, and failure to do their job. See Plaintiff's Appellant Brief attached hereto as Exhibit 3. (Duplicate court orders omitted).

5

Where the alleged justices allowed the Clerk (Ms. Fox) to make, write, and produce, "standardized" Court orders depriving *Pro Se* litigants of Due Process, with the other Defendants names attached, (without their signatures), it falsely gives the impression that such generic order is somehow legal and binding, when in fact, it is not. Where Defendants knowingly gave the false impression of a legal and binding Court order without [any] confirming justice signature, or actual review, certainly [misrepresents] that the issues raised on appeal were properly reviewed by a Judge. When in fact, no judge actually reviewed anything at all. At most, it may have been reviewed by a law clerk in training, and then [i]llegally authorized by Defendant Fox. Ms. Fox is not a judge or jury, and has no such judicial power to make such orders, nor does she have the power to deprive Mr. Bourne of his appellate rights guaranteed by the New Hampshire, and U.S. Constitution. Such legal deception, failure to provide appellate review, and unlawful standardized Court orders produced by the Clerk, certainly amount to an obvious deprivation of Due Process. Such systematic deprivation, makes a mockery of the NH Court system, therefore justifying relief herein.

Because the Plaintiff Mr. Bourne raises material issues of National Importance of the systematic deprivation of rights of *Pro se* litigants in New Hampshire in order to [patronage] their municipalities, and because of known budget cuts, an order compelling discovery of Defendants unlawful procedures, protocol, names of witnesses, communications, and other material, should be ordered.

The Defendants, so-called judges have <u>not</u> performed their judicial duties as required under common law or oath, therefore bringing liability upon themselves in their [individual] capacity. Because there are so many disputed material facts present, the Defendants misguided and unsupported motion to dismiss must be denied as a matter of law.

6

The U.S. Supreme Court has held that the deprivation of fundamental liberty rights "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 96 S. Ct. 2673; 427 U.S. 347, (1976). The appellate Court stated: "The practice of [patronage] dismissals violates the First and Fourteenth Amendments, and respondents thus stated a valid claim for relief. Pp. 427 U. S. 355-373." Here, in the instant action, the same [patronage] and systematic dismissal of Massachusetts resident (the outsider) and by way of his *(Pro Se)* litigant status, denied him of any relief what-so-ever, which again amounts to the same practice of [patronage] dismissals on behalf of their NH Municipalities and officials thereof.

In addition, the elements of fraudulent representation by Defendants is properly stated within the subject complaint, and even if those elements could be found somewhat insufficient to state a cause of action as inappropriately claimed by the Defendants, then [if] necessary, this Court should order that the Plaintiff be allowed to amend his complaint in order to fully brief each element of each cause of action.

Defendants fraudulent representation amounts to "Fraud upon the Court", which occurs whenever any officer of the Court commits fraud before a tribunal. A judge is not a Court; he is under law an officer of the Court, and he must not engage in any action to deceive the Court. *Trans Aero Inc. v. LaFuerga Area Boliviana*, 24 F.3d 457 (2nd Cir. 1994); *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (fraud upon the Court exists "where the judge has not performed his judicial duties"). Such as here in the instant case, the Defendants have not performed their judicial duties, which requires the Defendants to be listed and judged in their [individual] capacity. Therefore, they have no judicial immunity.

Judges who do not report the criminal activities of other judges or knowing fail to prevent, or even condone the Fraud on the Court, as noted in the subject lower court case, (08-E-

0027), then they, the (defendants herein) become principals in the criminal activity itself, *18 U.S.C. Section 1.* For example, If the Defendants herein now claim to have had first-hand knowledge of the underlying case, (08-E-0027) where it was clearly evident that Town of Madison attorney Randall Cooper willfully committed Fraud on the Court by submitting fraudulent affidavits to escape summary judgment, used forged maps as court evidence to prolong litigation, committed perjury time and time again, and even concealed incriminating documents that were discovered years later. This Fraud also includes the Town's other Attorney Brian Cullen, who willfully assisted the Madison defendants in concealing discovery adverse to their defense, time after time. In addition, Madison defendants in the underlying case even concealed the fact that the disputed Kelsey deed subject to the Plaintiff property was in fact never legally accepted under the required rules of dedication and acceptance. *Hersh v. Plonski* 156 NH 511 (NH 2007). In addition, the disputed deed contained the fraudulent notary of witness by Attorney Randall Cooper as confirmed by affidavit of Patricia Kelsey, and Patrick Kelsey. The Defendants herein were given notice that a town agent Robert D. King admitted that Selectmen Brooks *"vowed to deny Bourne his building permits",* which is contrary to Madison defendants falsified pleadings, but when the Defendants herein received such notice of deceitful and criminal tactics, the Defendants herein chose it would be best to deprive Mr. Bourne of his inherit and vested property rights. The record before the Court demonstrates that the Defendants herein condoned, permitted, and promoted said criminal activity. For example, the Defendants herein should have known that after years of contentious litigation, Madison agent Robert D. King finally admitted (March 2007) to forgery of maps only [after] he was caught red handed. Those forged maps were used by Madison defendants as evidence in the earlier court case, and were specifically attached to a fraudulent affidavit submitted to the lower Court to escape

summary judgment. See King testimony admitting to twenty two [secret] alteration of the Herbert Weston map, attached hereto as Exhibit 4.

See also fraudulent affidavit submitted to the lower court by Madison defendants, attached hereto as Exhibit 5.

Under appellate review, *Supreme Court of New Hampshire v. Piper* 470 U.S. 274 (1985) it was found that the New Hampshire Supreme Court did in fact, violate the Privileges and Immunities Clause, Article IV, which provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." While the Fourteenth Amendment provides that **"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States,"** it is the Article IV provision which affects interstate relationships. Here, Mr. Bourne owns property in New Hampshire, but still resides in Massachusetts, because the Defendants herein have willfully deprived Mr. Bourne of Due process, and his inherit and vested property rights, and in doing so, failed to permit Mr. Bourne from having the same rights as other New Hampshire land owners and residents. Therefore, violating the Privileges and Immunities Clause, Article IV of the U.S. Constitution.

The Court should also take notice that the Defendants counsel did not even bother to file an appearance as require under the Local Rules. Therefore, requiring the Court to reject the Defendants instant motion.

## Standard of Review for a Motion to Dismiss

The Plaintiff herein is representing himself *Pro Se,* and as such, he should be liberally construed, and that he should be held to less stringent standards than lawyers. See, e.g. *Price v. Johnston* (1948) 334 US 266, 292; *Chase v. Crisp* (10th Cir 1975) 523 F.2d 595, 597; *Curtis v. Illinois* (7th Cir. 1975) 512 F2d 717,721; *Ham v. North Carolina* (4th Cir 1973) 471 F2d 406,

407; *Hairston v. Alabama* (5th Cir.1972) 465 F2d 675, 678 n5; *Turrell v. Perini* (6th Cir 1969) 414 F2d 1231, 1233; (9th Cir 1966) 370 F2d 37, 40; *Whittaker v. Overholster* (DC Cir 1962) 299 F2d 447, 448. See also *Haines v. Kerner* (1972) 404 U.S. 519.

"Pro se litigant's pleadings should not be held to the same high standards of perfection as lawyers. "Significantly, the Haines case involved a *pro se* complaint, as does the present case, which requires a less stringent reading than one drafted by a lawyer." *Puckett v. Cox* 456 F.2d 233, at 236 (1972).

### The Eleventh Amendment does NOT bar suits in Federal Court against State actors

Current law recognizes four principal [exceptions] to the rule of State sovereign immunity. Perhaps the most important exception is that State sovereign immunity does not prevent an injured private party from suing a State *officer* and obtaining an order that the officer cease conduct that violates Federal law. This exception, commonly associated with the case of *Ex parte Young* 209 U.S. 123 (1908), derives from the notion that State sovereign immunity applies only to the State itself and does not protect State officers who are acting unlawfully. The nature of this reasoning is widely recognized. Because a State acts only through its officers, an order restraining the officer restrains the State. The distinction between them exists only to mitigate the rigors of State sovereign immunity doctrine, to provide at least some relief to private parties injured by State violations of Federal law, and to permit some mechanism for curing such violations. Thus, this exception to State sovereign immunity provides some relief to injured parties. *See, e.g., Stafford v. Briggs*, 444 U.S. 527, 539 (1980) (referring to cases where "the action is based upon that the officer is acting as an individual"); *Tonkawa Tribe v. Richards*, 75 F.3d 1039, 1048 (5th Cir. 1996) (explaining that Eleventh Amendment immunity is circumvented where "the suit is instituted under suits for prospective [injunctive relief] against a

State official in vindication of a Federal right"); *In re* McVey *Trucking, Inc.*, 812 F.2d 311, 322 (7th Cir. 1987) ("These cases rely on the admitted facts that the Court order is against the State officer, not against the State."); *Gray v. Bell*, 712 F.2d 490, 509–10 (D.C. Cir. 1983) ("To avoid the bar of sovereign immunity, Courts indulged the fact that a remedy could be had against a government officer, even though, in reality, relief would come from the government itself.").

Another important exception is that States have no immunity from suits brought by other States or by the United States. According to the official theory, States consented to such suits when they ratified the Constitution or subsequently joined the Union. The exception for suits by the United States is particularly important, because the United States is always an appropriate party to bring an action for the enforcement of federal law. Accordingly, the *Federal government may itself enforce Federal law*, apparently including Federal law that regulates the behavior of States toward private parties, by bringing actions for monetary relief against States that violate Federal law. Federal officials may even, it appears, collect money from States that have violated Federal law and distribute it to the victims of the violations.

The third exception to the rule of State sovereign immunity, discovered by the Supreme Court in the 1976 case of *Fitzpatrick v. Bitzer*, is that Congress can *abrogate* State sovereign immunity by passing a statute that expressly provides for private damage suits against States. The Court held in *Fitzpatrick* that a State's employees may sue the State under Title VII of the Civil Rights Act of 1964. The Court said that Congress's power, under Section 5 of the Fourteenth Amendment, to enforce the provisions of the amendment by "appropriate" legislation, permits Congress to override the States' sovereign immunity. Even though the Plaintiff is not a State employee, the notion of equal protection then must be applied.

The Fourth Exception—Consent and Waiver, the exception for cases in which a State

consents to suit [or] in *some other way* waives its sovereign immunity. This waiver is evident where Defendants at 5 admit; "*Although the State has waived immunity to tort claims in its own court...*" Thereby, opening the door in this case. Such waiver in State court should be recognized as a waiver in Federal Court under the Fourteenth Amendment equal protection clause.

At least since *Clark*, the Courts have taken as a given that cases in which a State waives its immunity constitute an [exception] to the rule that State sovereign immunity bars private actions against States. (quoting: *Clark v. Barnard,* 108 U.S. 436 (1883).

Two notable principles may also be recognized and govern the Defendants automatic waiver. In some cases, a State voluntarily, knowingly, and intentionally agreed to be sued. In other cases, State officials took actions that had the effect of relinquishing the State's sovereign immunity, whether they knew it or not, and whether they intended it or not. As such, the State Defendants admitted its prior consent, which would arise by implication, and it would occur without regard to the intent of the State or its officials. Moreover, a State's waiver of sovereign immunity was irrevocable. If this Court still has any reservations as to Defendants waiver of sovereign immunity on behalf of themselves or on behalf of the State, then the Court may consider the oath taken Under RSA NH 311:6, which subscribes to support the Constitution of the United States. Therefore, waiving any claim to sovereign immunity.

In addition, the State of New Hampshire Defendant failed to establish safeguards against abuse of power, discrimination, biased, and/or other violations of Constitutional law by the NH Supreme Court and its employees thereof. As such, the individual Defendants willfully acting on their own, chose to violate their sworn legal obligations, therefore bringing liability upon themselves for tortious acts of an elected official under Respondeat Superior.

## The Defendants are not immune from liability based on Judicial Immunity

First and foremost, the Defendants have failed to demonstrate any action or inaction they allegedly took in this particular case to justify any judicial Immunity. For example, the Defendants have failed to produce any required (time log or record) of any kind to prove they actually reviewed the lower Court Madison litigation in question. Without such evidence, there is no proof what-so-ever that any judicial function or review had ever occurred. Printing a judges name to a generic standardized rejection order created by the Clerk, certainly does not substantiate any judicial or appellate review of any kind. Ironically, the individual Defendants herein <u>never</u> signed the standardized dismissal orders to confirm any such review had ever taken place to justify judicial Immunity. For further support, see Court order in question, within Plaintiff's original complaint at exhibit A. Therefore, *a material fact issue remains,* to whether or not there was any actual judicial function, in order to claim judicial immunity.

The U.S. Supreme Court, in <u>Scheuer v. Rhodes,</u> 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a State law in a manner violative of the Federal Constitution", he "comes into conflict with the superior authority of that Constitution, and <u>he is in that case stripped of his official or representative character</u> and [is] subjected <u>in his person</u> to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. As such, State officials may be sued as [individuals] within § 1983 actions. *Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000).

One other consideration this Court must consider, is that the State of New Hampshire Defendant cut funds allocated to the N.H. Judicial branch from 2009-2012, and as a result, the NH Courts took it upon themselves to clear the docket by systematically disposing of *Pro Se*

litigant cases. This systematic disposal of cases is clearly evident by the material facts of this case.

In addition, the N.H. State Constitution's Bill of Rights (Part I, Article 14), states that "*everyone*" is entitled to a certain remedy for all injuries they may receive and that they are to obtain it "*completely, and without any denial; promptly, and without delay.*" The purpose of that provision is to make civil remedies readily available and to guard against arbitrary denial of access to the Courts, such as here. It is an equal protection clause because, whether you are suing someone or being sued, you want to have your case resolved as soon as possible. In 2010 there were $3.1 million of cuts out of a judicial branch budget of about $65 million, with another $2.2 million hit in May of that year. The Concord District Court, which is a three-judge court, operated with one full-time judge. Due to the reduction in personnel, a form letter went out that summer canceling all civil trials. So, if there is no legitimate judicial review by the Defendants herein as alleged, then there is no judicial immunity. See Sep 29, 2010 news article covering a lawsuit filed against the State of N.H., for its abusive budget cuts, attached hereto as Exhibit 6 and 7.

Ironically, the Defendants themselves failed to create a record sufficient enough to show there was [any] judicial review of the appealed Madison case (08-E-0027) in order to prove a legitimate judicial function had actually occurred to claim judicial immunity. This is precisely why the Defendants are named in their "individual" capacity, and not an official one.

In addition, The principles involved in such a direct action are set forth in the Restatement (Second) of Agency § 213 (1958), to which this Court has subscribed. See Labonte v. National Gypsum Co., 113 N.H. 678, 681, 313 A.2d 403, 405 (1973). Section 213 states, in relevant part:

14

"A person conducting an activity through servants or other agents thereof is subject to liability for harm resulting from his conduct if he is (negligent or reckless):

> (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
>
> (c) in the supervision of the activity; . . ."

## Sovereign Immunity

Neither the Court, its employees, nor the State itself enjoys full sovereign immunity from tort liability. *Merrill v. Manchester,* 114 N.H. 722, 725, 332 A.2d 378, 383-84 (1974); RSA 541-B:19 (Supp. 1994). In fact, <u>immunity is the exception</u>, rather than the rule, in tort cases. See RSA 541-B:19; *Schoff v. City of Somersworth,* 137 N.H. 583, 589, 630 A.2d 783, 787 (1993).

Here, the Defendants (individually) (a) retaliated in bad faith, (b) violated their oath of office, (c) willfully discriminated against the Plaintiff, and (d) recklessly deprived Mr. Bourne of his Constitutional Rights of Due Process and Equal Protection. <u>This was not a judicial function, it was an individual choice.</u> Therefore, the doctrine of official immunity does <u>not</u> apply. See *Owen v. City of Independence* 445 U.S. 622 (1980). See also *Hartman v. Moore,* 547 U.S. 250 (2006).

## The *Rooker-Feldman* Doctrine Does NOT Apply

As noted above, the Plaintiff is NOT requesting the Court to vacate or reverse any State court orders, as those orders should be considered null and void and legally unenforceable, due to their unlawfulness, failure to provide [any] fair hearing before an [impartial] tribunal, and

15

are unsigned. It is unclear if the Defendants intend on enforcing those discriminatory rulings, but in any event, the issue herein are simple: (1) did the Defendants deprive Mr. Bourne of Due process; (2) did the Defendants violate Mr. Bourne's Constitutional rights under the Privileges and Immunities Clause, Article IV, which provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States; (3) did the Defendants deprive Mr. Bourne of his First Amendment rights to be able to petition the government for redress without the fear of retaliation and arbitrary fines; (4) did the Defendants violate Mr. Bourne's Fourteenth Amendment rights by denying him of equal access, equal protection, and deprived him of actual unbiased or fair appellate review, or any appellate review at all; and (5) did the Defendants maliciously deprivation efforts cause Mr. Bourne to suffer emotional distress and hardship, and if so, damages must be assessed. As such, for each cause of action noted within the Plaintiff's complaint, the Plaintiff seeks (a) damages, (b) injunctive relief, and (c) a declaratory ruling of law.

## The Plaintiff's Complaint and Factual Allegations Are Sufficient Enough to State a Claim for which Relief Can Be Granted

In support thereof, the Defendants admit at 11 that: "a *Pro Se* litigant is held to a less stringent standard than one drafted by a Lawyer..." In addition, the Plaintiff has every right to demand a Declaratory Ruling of law prohibiting the Defendants from depriving Mr. Bourne of his Constitutional Rights, which would in effect help to protect others similar situated who may come before the discriminating and biased Defendants. If the Defendants are allowed by this Court to continue their arbitrary and deprivation efforts, then the unsuspecting, uneducated, and poor masses who sadly come before them, will suffer too! Therefore, making this case of national importance.

are unsigned. It is unclear if the Defendants intend on enforcing those discriminatory rulings, but in any event, the issue herein are simple: (1) did the Defendants deprive Mr. Bourne of Due process; (2) did the Defendants violate Mr. Bourne's Constitutional rights under the Privileges and Immunities Clause, Article IV, which provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States; (3) did the Defendants deprive Mr. Bourne of his First Amendment rights to be able to petition the government for redress without the fear of retaliation and arbitrary fines; (4) did the Defendants violate Mr. Bourne's Fourteenth Amendment rights by denying him of equal access, equal protection, and deprived him of actual unbiased or fair appellate review, or any appellate review at all; and (5) did the Defendants maliciously deprivation efforts cause Mr. Bourne to suffer emotional distress and hardship, and if so, damages must be assessed. As such, for each cause of action noted within the Plaintiff's complaint, the Plaintiff seeks (a) damages, (b) injunctive relief, and (c) a declaratory ruling of law.

## The Plaintiff's Complaint and Factual Allegations Are Sufficient Enough to State a Claim for which Relief Can Be Granted

In support thereof, the Defendants admit at 11 that: "a *Pro Se* litigant is held to a less stringent standard than one drafted by a Lawyer..." In addition, the Plaintiff has every right to demand a Declaratory Ruling of law prohibiting the Defendants from depriving Mr. Bourne of his Constitutional Rights, which would in effect help to protect others similar situated who may come before the discriminating and biased Defendants. If the Defendants are allowed by this Court to continue their arbitrary and deprivation efforts, then the unsuspecting, uneducated, and poor masses who sadly come before them, will suffer too! Therefore, making this case of national importance.

Such remedy could in fact, be had against a government officer, even though, in reality, relief would come from the government itself. Sending the NH Defendants a strong message [deterring] their deceitful, destructive, and discriminating conduct, would certainly assist in mending their ways.

## In Conclusion

Under the simple appellate requirements known by the Defendants, there were no extraordinary circumstances present what-so-ever to prevent the Defendants from recognizing a clearly established law or right was being violated. In other words, the Defendants willfully chose to discriminate against Mr. Bourne, simply because he was an *outsider* and *Pro Se*. The Defendants were negligent, and personally chose to fraudulently misrepresent that appellate review had somehow occurred, and then again fraudulently misrepresented it as lawful. In light of the *Madison officials and their attorney bringing this headache upon the Defendants herein*, the individual Defendants themselves chose to permit the corrupt practices subject to (08-E-0027). As such, Defendants conduct did in fact, violate clearly established statutory and constitutional rights, of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); and, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Plaintiff's Constitutional rights were clearly established, and violated. Because there are direct Constitutional issues, a fully-developed factual record must first be developed. In addition, if this Court by chance views the "individual" Defendants as "government employees", then this Court may consider applying *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as the U.S. Supreme Court allowed the district Courts to infer a personal liability remedy for money damages against federal employees who violate the Fourth Amendment. *Id.* at 388. To infer a personal

liability here, for conduct that violated clearly established statutory and constitutional rights, of which a reasonable person would have known, then personal liability has been established. In addition, the Defendants do not deny any of the allegations as set forth in Mr. Bourne's complaint.

**WHEREFORE**, the Plaintiff Mr. Bourne respectfully requests this Court to:

A.  Deny the Defendant's motion to dismiss in its entirety, and

B.  Grant such other relief that best serves to uphold Constitutional Rights.

Respectfully Submitted,

*/s/ Samuel Bourne*
Samuel Bourne individually,
117 Pond Street
East Bridgewater, MA 02333
508-378-9319

July 28, 2012

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to counsel for the Defendant[s], Michael A. Delaney Attorney General of N.H., and Nancy J. Smith Senior Assistant Attorney General of N.H., 33 Capital Street Concord, N.H. 03301

*/s/ Samuel Bourne*

18