# EXHIBIT-1

# State of New Hampshire

# Supreme Court

No. 2011- 0815                                                              Nov 18, 2011

Bedrock Realty Trust, and Samuel Bourne
Individually and as Trustee.

v.

Town of Madison, Cooper Deans and Cargill law firm, Randall F. Cooper in both his personal
and official capacities, Robert King individually, and Robert Babine in his official capacity.

---

## PETITION FOR ORIGINAL JURISDICTION

---

By: Samuel Bourne
117 Pond Street
East Bridgewater,
MA 02333
508-378-9319

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Judge Houran's Admitted Bias and Impartiality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

II. Conflicting Application of Law, Personal Hostility, and Bias, regarding Property Use and Permits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

III. Conflicting Application of Law, regarding the Defamatory Publication. . . . . . . . . . . . . . .. 7

IV. Conflicting Application of law, regarding the "non-accepted" Kelsey Easement. . . . . . . 8

V. Prospective Relief is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

REQUEST FOR ORAL ARGUMENT AND CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . .12

## TABLE OF AUTHORITIES

*Blaisdell v. City of Rochester*, 135 N.H. 589 (N.H. 1992)............................5

*Turco v. Barnstead, 136 N.H. 256 (N.H. 1992)*..............................................6

*Funtown USA v. Conway*, 127 N.H. 312 (N.H. 1985)....................................7

*Thomson v. Cash*, 119 N.H. 371 (N.H. 1979)................................................7

*Catalfo v. Shenton,* 102 N.H. 47, 50 (N.H. 1959)..........................................8

*Pickering v. Frink*, 461 A.2d 117 (N.H.,1983)...............................................8

*Lassonde v. Stanton*, 157 N.H. 582, 592-93, 956 A.2d 332 (2008)...............8

*Danboise v. Espinola,* 2010 N.H. LEXIS 210 (N.H. Oct. 27, 2010)..............8

*Hersh v. Plonski*, 156 N.H. 511 (N.H. 2007).................................................10

*United States v. General Motors Corp.*, 323 U.S. 373, 377-78 (1945)..........10

*Metzger v. Town of Brentwood*, 117 N.H. at 502, 374 A.2d at 957...............11

*Awl Power v. City of Rochester,* 148 N.H. 603 (N.H. 2002).........................11

## N.H. State Statutes

(NH RSA 485-C:1)........................................................................................... 9

(NH RSA 482-A:1)........................................................................................... 9

(NH RSA 485:9)................................................................................................9

(NH RSA 31:95-e (1998))................................................................................9

(NH RSA 638:2)................................................................................................8

(NH RSA 676:12)............................................................................................11

## SUMMARY OF ARGUMENT

Now Come the Plaintiffs Bedrock Realty Trust, and Samuel Bourne individually and as Trustee, and respectfully request this Honorable Court to Grant the Petition for Original Jurisdiction due to this Court's inconsistent application of law, and due to [new] evidence of admitted (bias and prejudice) by the lower Court Judge Houran, and Defendants herein. Granting such relief is warranted in order to vacate this Court's unjust Nov 18, 2010 order and the bias and prejudicial lower Court order dated Dec 7, 2008, pursuant to Supreme Ct. R. 38, Canon 3C, and/or for further Rehearing under RSA 526:1 and RSA 526:5. Due to this [new] evidence of admitted (bias and prejudice) by the lower Court Judge Houran and by the Defendant's new admissions, certainly give rise to this Court granting such relief.

Granting Such relief should be granted freely to correct the injustice that the lower Court's prejudicial order specifically caused, especially where it conflicts with other rulings by this Court, therefore requiring further review.

## **ARGUMENT**

### **I. Judge Houran's Admitted Bias and Impartiality**

1.     The Plaintiffs previously appealed a host of conflicting rulings of law unlawfully implemented by the lower Court (Houran) that were later erroneously upheld by this Court without proper review. Such an injustice appears to be a direct result of the lower Court's failure to disclose at such time that it was bias, prejudiced, and/or had a conflict of interest. A judge's failure to disclose to the parties the basis for his or her disqualification under canon of judicial conduct will result in a disqualification of that judge. See Supreme Ct. R. 38, Canons 3C, D. As such, the unjust Court order[s] should now be vacated, and rehearing should be granted under this Court's original jurisdiction.

2.     New evidence of Judge Houran's recent recusal in a parallel case involving the Plaintiffs now confirms, that in fact, Judge Houran's previous order dated Dec 7, 2008 was bias, and specifically prejudiced against the Plaintiffs herein, therefore confirming an injustice has occurred. See Judge Houran's recent recusal attached hereto as Exhibit 1.

Standard of Review

3.     Any judge that has recused himself from any [related case] in which his impartiality is reasonably questioned, certainly brings forth the obvious conclusion that all of his prior orders regarding Bedrock Realty Trust, Mr. Bourne, and the subject property, are now null and void. Here, sufficient grounds exist for which Judge Houran's admitted bias and impartiality has proven all of his previous orders related to Bedrock Realty Trust, Mr. Bourne, and the subject property, should be vacated as unreliable, void, bias, and not legally sufficient. See *Blaisdell v. City of Rochester*, 135 N.H. 589 (N.H. 1992).

5

## II. Conflicting Application of Law, Personal Hostility, and Bias, regarding Property Use and Permits

4.      Defendant's granted the Plaintiffs a building permit as settlement of their previous litigation, had a contractual obligation to adhere to, and created a vested right. Once construction started, Defendants' rushed to unlawfully revoke said permit by way of falsified reasons in retaliation for Plaintiff's previous efforts to prohibit an unlawful snowmobile trail through the subject property that endanger the Plaintiff's family and reasonable use thereof. By the Town issuing the building permit, they represented to the Plaintiffs that construction was in fact permitted, and that the Plaintiffs had no reason to know construction was not otherwise permitted. The Town Defendants expected the Plaintiffs to rely on the permit and to begin construction. As such, the Plaintiff in fact did rely upon the issuance of said permit, started construction, and then incurred damages as a result of false and deceitful representation[s]. *Turco v. Barnstead, 136 N.H. 256 (N.H. 1992)*.

Ironically, even the Defendants admit they are disappointed with the recent rulings of both Courts. For example, Madison Selectmen Mr. Brooks at 13 has recently stated that; *"There have been decisions made that, quite frankly, are -- got all kinds of holes in them. Instead of really putting the hammer down and saying either the town's right or the town's wrong or he's right, whatever -- it's nothing's been concrete."* See Selectman Brooks' statements in part, attached hereto as Exhibit 2.

5.      For the Court's convenience, a copy of its previous order dated Nov 18, 2010 is attached hereto as Exhibit 3.

And, the lower Court's bias and prejudicial order that violates statutory and common law is attached hereto as Exhibit 4.

6

6.      In addition, new evidence recently discovered further demonstrates that in fact, the

Defendants acted out of personal hostility toward the Plaintiffs, that their motives were in fact

malicious and discriminatory, and that they committed perjury upon [both] Courts, as they now

admit, Madison selectman Mr. Brooks "*vowed to deny Bourne*" his building permits, which is

contrary to the Defendant's earlier fabricated claims made to both Courts. See *Funtown USA v.

Conway*, 127 N.H. 312 (N.H. 1985). In *Funtown*, this Court ruled that the town officials deceitful

actions were unlawful, but here, this Court has failed to apply equally such standards to the

Defendant's similar bad faith conduct. As such, this new evidence now confirms that, in fact, Mr.

Bourne's vested property rights were systematically violated by admitted hostility of Town

officials. So far, the inconsistent rulings or misapplication of law by this Court now appears to

condone such unlawful behavior by town officials and their agents thereof. As a result of no

action taken by this Court to correct such injustice, now supports the fact, that due process was

not adequately provided, and as such, N.H. State remedies were inadequate, therefore, now

giving rise to new litigation against the State of New Hampshire for the violations of due

process. See admitted hostility, where selectman Brooks "*vowed to deny Bourne*" his building

permits, noted in an email dated June 25, 2011 between Defendant King and selectman Brooks

attached hereto as Exhibit 5.

## III. Conflicting Application of Law, regarding the Defamatory Publications

7.      Rulings by this Court under the Defamation and Slander cause of action, this Court

obviously failed to apply consistent application of the law. For example, this Court's order

(exhibit 3) conflicts with its previous opinions; *"(whether words susceptible of being construed

to imply fraud or wrongdoing were used in the defamatory sense is a question of fact for the

jury"). Thomson v. Cash,* 119 N.H. 371 (N.H. 1979). In addition, *"the existence of malice or bad*

7

*faith, which would constitute an abuse of the privilege, remains a question of fact for the jury. Lafferty v. Houlihan, 81 N.H. 67, 121 A. 92; 1 Harper and James, The Law of Torts, s. 5.27 and s. 5.29, p. 467 (1956). Accordingly the orders sustaining the demurrer and granting the motion to dismiss were erroneous."* Quoting: *Catalfo v. Shenton,* 102 N.H. 47, 50 (N.H. 1959). Where Defendant King actually knew his statements sent electronically to the general public were false, it will suffice to justify holding the Defendant liable. *See Pickering v. Frink*, 461 A.2d 117 (N.H.,1983). "Where, as in this case, a jury could have found that the defamatory emails sent to the general public charged the Plaintiff with a crime, with unfit activities, and/or with such defamatory characteristics such as: *"Product of a sick mind", "Pathological liar", "sociopathic characteristics", or "this is what a con man does",* which would tend to injure him in his trade or business, commonly called libel *per se*, he can recover as general damages, all damages which would normally result from such a defamation, such as harm to his reputation." *Id.*; *see Lassonde v. Stanton*, 157 N.H. 582, 592-93, 956 A.2d 332 (2008). "He need not prove these damages specifically." *Chagnon,* 103 N.H. at 441; *see Lassonde,* 157 N.H. at 593. Quoting: *Danboise v. Espinola,* 2010 N.H. LEXIS 210 (N.H. Oct. 27, 2010). Therefore, Judge Houran's previous order granting Defendant's motion to dismiss regarding the Defamation and Slander cause of action was bias and unjust, and conflicts with other rulings of this Court.

## IV. Conflicting Application of law, regarding the "non-accepted" Kelsey Easement

8.    The non-accepted Kelsey deed, is actually null and void for multiple reasons. Especially, since Madison Town counsel has previously conceded in his letter addressed to Mr. Bourne's prior counsel at 2 that; "*Thus Mr. Bourne's property is served by a private road.*" As such, the Town was Estopped from now claiming any [new] rights not previously reserved or proven. See town counsel's letter dated Jan 7, 2008 attached hereto as Exhibit 6.

The admission by Defendant's counsel (Cooper) is further supported by the fact, that there was never any formal acceptance, it was never built, there is no survey, or any other evidence what so-ever that proves the actual location or even the existence on the ground of the non-accepted Kelsey easement. This is further evident, since 1979 it was [never] built and [never] maintained, nor has any evidence ever been produced to rebut this fact. In addition, both, Judge Fitzgerald on Aug 10, 2007 and this Court on May 14, 2009 have previously confirmed that there was no public occasion to layout the easement, since the McNair land has other access of over 4000 feet of frontage on Goe Hill road and Shawtown road.

Judge (Hoaran's) bias Court order [conflicts] with this Court's earlier rulings that confirmed there was no public occasion to layout the easement. Docket No. (2008-0550). For further support, the non-accepted Kelsey deed contains the falsified notary of witness by town counsel Randall Cooper in violation of NH (RSA 638:2) Fraudulent Handling of Recordable Writings as further confirmed by sworn affidavit of Patrick and Patricia Kelsey, and the alleged deed attempts to grant an [easement over an easement] over land of others, which is contrary to common law. The highly questionable location [alleged] by the Town of Madison would unlawfully travel through a large wetland area in direct violation of New Hampshire environmental laws (NH RSA 485-C:1), (NH RSA 482-A:1), and more specifically in violation of (NH RSA 485:9): *"No public highway, access roads, or private ways [of any sort], shall be constructed so as to traverse any watershed..."*

The Court should note that town officials in bad faith concealed from this Court that they for many years secretly knew that the Kelsey easement was never formally accepted, built, or maintained by the Town as required under common law. NH RSA 31:95-e (1998), *"In the context of the dedication of land for public use, to be effective, there must be both an offer of*

9

*dedication and acceptance: that is, the landowner "offers" up its property to the municipality and the municipality "accepts" it. The acceptance [requirement] generally protects the public from having an undesirable dedication thrust upon it, as where the concomitant burdens of maintaining a street, park, or other public service outweigh the public benefits. If acceptance were not required, it would be a great hardship upon towns if an individual could lay out a way upon his own land, throw it open to the public, and then oblige the town to charge themselves with the maintenance and repairs of it.* " Quoting: *Hersh v. Plonski*, 156 N.H. 511 (N.H. 2007). The Town has since acknowledged that in fact, no legal acceptance has ever occurred as noted in documents only discovered after town officials were found in contempt for withholding Court order discovery (NH Fed docket 05-cv-365-JD) (contempt order No. 80). As such, any bias, and unjust Court orders created by Judge Houran should be vacated, and as such, be ruled upon by this Court as being unjust, null and void, and specifically inconsistent with this Court's previous opinions, therefore requiring further review under this Court's original jurisdiction.

## V. Prospective Relief is Appropriate

9.     The New Hampshire Constitution makes explicit to what is implicit in U.S. Const. amend. V; namely, that no part of a man's property shall be taken from him without his consent. N.H. Const. pt. 1, art. 12. Furthermore, the New Hampshire Bill of Rights provides that among the natural, essential and inherent rights of all men is the right of acquiring, possessing, and protecting property; and, in a word, of seeking and obtaining happiness. N.H. Const. pt. 1, art. 2. This fundamental right is recognized in the same article which recognizes the right of enjoying and defending life and liberty.

The question in the case is whether the action[s] of the Defendant's constituted a taking of the Plaintiffs' property or other fundamental rights thereof. "Property," in the constitutional

10

sense, is not the physical thing itself but is rather the group of rights which the owner of the thing has with respect to it. *United States v. General Motors Corp.*, 323 U.S. 373, 377-78 (1945); *Eaton v. B. C. & M. R. R., supra* at 511. The term refers to a person's right to "possess, use, enjoy and dispose of a thing and is not limited to the thing itself." *Metzger v. Town of Brentwood*, 117 N.H. at 502, 374 A.2d at 957; *see United States v. General Motors Corp. supra.* The property owner's right of "indefinite use (or of using indefinitely) . . . necessarily includes the right . . ." [to exclude] others (trespassers) from interfering with Plaintiff's use of the property, whether it be unlawful intrusion upon the land, or other such disruptive use, or anything else. *Eaton v. B. C. & M. R. R., supra* at 511. "From the very nature of these rights of user and of exclusion, it is evident that they cannot be materially abridged without, *ipso facto*, taking the owner's 'property.'" *Id.* "The principle must be the same whether the owner is wholly deprived of the use of his land, or only partially deprived of it. . . ." *Id.* at 512. As such, the town Defendant's continue to unlawful make claim to the Plaintiff's property by way of the Kelsey easement that was not legally accepted by the town, that contains the falsified notary of witness by town Counsel Randall Cooper, that attempts to grant an easement over an easement over land of others, and attempts to implement [new] adverse uses to land where environmental laws prohibit such use. In addition, the Town Defendants cannot now deny Mr. Bourne his build permit for having frontage on a private road, which said permit was previously granted by the Defendants in settlement of their litigation creating a vested right NH (RSA 676:12) *Awl Power v. City of Rochester,* 148 N.H. 603 (N.H. 2002), and then Defendants' further re-voked said permit in retaliation, out of spite, ill will, and/or by way of other malicious means, in direct violation of the law.

11

Therefore, Defendant's actions constitute an unlawful taking, slander of title, create title defects, confirm fraud, harassment, retaliation, defamation and libel, and other unconscionable violations.

## CONCLUSION

WHEREFORE, this Court should find that justice requires exercising original jurisdiction over this case, and for such other relief that is just and equitable.

Respectfully Submitted,                              Nov 18, 2011

Sam Bourne individually and as Trustee
Bedrock Realty Trust
117 Pond St
East Bridgewater MA 02333
508-378-9319

## REQUEST FOR ORAL ARGUMENT AND CERTIFICATION

The Plaintiff's requests Mr. Bourne be allowed 10 minutes for oral argument separate from the time allotted to the parties, in accord with Supreme Court Rule 30(4).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to:

Randall Cooper, Cooper, Deans and Cargill
George W. Walker Esq,
Brian J.S. Cullen Esq,
Andrew Ranks Esq. and Thomas Fay Esq,

EXHIBIT -1

# The State of New Hampshire

2011-CV-031
Docket No.

Bedrock Realty Trust v Laconia Savings Bank

## ORDER ON DOCUMENT NO. _____

Pursuant to Supreme Court Rule 38 Canon 3 E
I hereby disqualify myself from this case.

2/4/11
Date

Signature

Hon. Steven M. Houran, Presiding Justice

OC-602-245

**ORDER**

THE STATE OF NEW HAMPSHIRE

CARROLL, SS                                          SUPERIOR COURT

No. 212-2011-CV-31

BEDROCK REALY TRUST

V.

LACONIA SAVINGS BANK

<u>ORDER</u>

The justice regularly assigned to the Carroll County Superior Court having recused himself from this case, the case is hereby transferred to the Strafford County Superior Court for all purposes.

So Ordered.

Date: 3/3/11

KENNETH R. MCHUGH
Acting Chief Justice

EXHIBIT -2

**AUDIO TRANSCRIPTION CENTER**   A DIVISION OF THE SKILL BUREAU

129 Tremont Street
Boston, MA  02108
Tel: 617-423-2151
Fax 617-423-9183

## CERTIFICATE

I, Amy Reardon, do hereby certify that the following 15 pages embody a true and accurate transcript. Prepared in the Audio Transcription Center to the best of our abilities, it comprises the recorded contents of a DVD provided to us by our client, Sam Bourne.  The DVD contained the relevant portion of a meeting of the Town of Madison (New Hampshire) Board of Selectmen held on June 9, 2010.

8/13/10
Date

Amy Reardon

Amy Reardon, Production Coordinator
Audio Transcription Center

Page 12

Town of Madison Board of Selectmen Meeting
June 9, 2010

1    been attacked on issues personally. And I don't like it.

2    It's not right. It's unfounded most of the time. And it

3    is -- it's -- it's uncalled for, quite frankly. Uh when I

4    read this letter over the weekend -- I mean, of course I

5    have the benefit of knowing some of -- some of it. I had

6    personal involvement, because I was on the board at that

7    time. But in the beginning, obviously, I wasn't. But uh

8    I've lived here my whole life and I know what's going on.

9    And to link some -- As John says, he's trying to say, from

10    A to B to C to D to E. And there's just so many things in

11    here that just aren't even pertinent. But they're a juicy

12    tidbit. It's almost like an article in the newspaper,

13    where the -- you know, the reporter, you know, connects

14    this to this but there's no real connection in real life.

15    Uh I mean, it is discouraging. So I will support an

16    investigation to this to see if there is anything we can

17    do. I'm glad that you're not asking to respond to this in

18    the paper, because I wouldn't be in favor of that. Because

19    that's what this guy wants. He wants to draw us out.

20    Because right now he's standing holding a bag full of

21    nothing.

22  ARRUDA:  Yeah.

23  BROOKS:  And -- and the court has consistently, in recent

Town of Madison Board of Selectmen Meeting
June 9, 2010

1    months, shut him down on every -- And right now he's filed

2    a motion to reconsider every single thing in the federal

3    district court.  Which, I'm just waiting for somebody to

4    tell him that the venue's improper, et cetera, et cetera,

5    et cetera.  He's representing himself, which is tantamount

6    to having a fool for a client, as the saying goes.  I'm

7    very disappointed in our legal system.  There have been

8    decisions made that, quite frankly, are -- got all kinds of

9    holes in them.  Instead of really putting the hammer down

10   and saying either the town's right or the town's wrong or

11   he's right, whatever -- It's -- nothing's been concrete.

12   And that's what bothers me.  And this guy is just allowed

13   to proceed with suit after suit after suit.  And nobody is

14   slapping him, saying, "This is vexatious.  It's personal.

15   It's baseless under the law," which most of it is.  But

16   nobody is slapping him down.  Because the legal system

17   handles pro se litigants with kid gloves.  But the majority

18   of the time, he's had some of the highest priced attorneys

19   in the state of New Hampshire working for him for periods

20   of time.  And even -- and even then the arguments

21   proceeded.  So I guess uh -- This is very upsetting,

22   because it -- I mean, and my personal stake in this is it

23   paints my town in a bad light.  And with this headline,

Town of Madison Board of Selectmen Meeting       Page 14
June 9, 2010

1    "Time to," Demine -- "Demand High Ethical Standards for all

2    Government Officials" -- Well, you may sit out there and

3    disagree with something that I've done.  I defy you to show

4    where I've been unethical --

5  ARRUDA:  Yeah.

6  BROOKS:   -- or -- I try my utmost to make decisions in the best

7    interests of the town of Madison.  Now you can certainly

8    disagree with that on point on point and we can have an

9    argument and we can walk away either agreeing to disagree

10    or whatever but, to say that it's unethical, I mean, that's

11    -- that crosses a line.  Which, as you said, all you have,

12    walking through life, is your name and your reputation.

13    And when somebody tries to sully that, I'll pick up arms

14    and I'll stand beside you.  So.

15  ARRUDA:  Thank you.

16  BENOIT:  OK.  Uh John, you have anything further?

17  ARRUDA:  No.

18  BENOIT:  Uh in that case, uh all in favor of the motion as

19    stated.

20  ARRUDA:  So --

21  BENOIT:  Aye.  Aye?

22  ARRUDA:  Aye.

23  BROOKS:  Aye.

Town of Madison Board of Selectmen Meeting          Page 15
June 9, 2010

1   BENOIT:   Well, this passes unanimously.  We will proceed with

2        contacting town counsel.

3   BROOKS:   And how about we just say it this way?  We'll proceed

4        with co-- uh contacting every attorney that's involved with

5        this matter on behalf of the Town of Madison.

6   ARRUDA:   Sure.

7   BENOIT:   Because there are a number of them, uh between the

8        insurance company and --

9   ARRUDA:   Yeah.  And also Rick Sager (sp?) needs to be uh --

10  BROOKS:   Every -- every attorney that's associated with

11       representing the interests of the Town of Madison, either

12       individual selectmen or otherwise.  We'll just --

13  BENOIT:   Yeah, that's fine.

14  ARRUDA:   Uh well, I apologize for the cost that this is going

15       to cost but uh it's uh --

16  BENOIT:   OK.  Uh are there any other uh issues that individual

17       selectmen care to raise?

18  (meeting continues)

EXHIBIT -3

*2010 N.H. LEXIS 217, ***

BEDROCK REALTY TRUST & a. v. TOWN OF MADISON & a.

Case No. 2010-0091

SUPREME COURT OF NEW HAMPSHIRE

2010 N.H. LEXIS 217

November 18, 2010, Decided

**NOTICE:**

THIS OPINION IS SUBJECT TO MOTIONS FOR REHEARING UNDER NEW HAMPSHIRE PROCEDURAL RULES AS WELL AS FORMAL REVISION BEFORE PUBLICATION IN THE NEW HAMPSHIRE REPORTS.

**DISPOSITION:** [*1] Affirmed.

**JUDGES:** Dalianis ▾, Duggan ▾, Hicks ▾ and Conboy ▾, JJ., concurred.

**OPINION**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. *See* SUP. CT. R. 18(1). The petitioners' motion for oral argument is, therefore, denied. The petitioners, Bedrock Realty Trust and Samuel Bourne, appeal several orders of the superior court granting dispositive motions in favor of the respondents, the Town of Madison, Cooper, Deans and Cargill law firm, Randall F. Cooper, Robert King, and Robert Babine. We have reviewed the trial court's orders, and the petitioners' numerous claims of error, and affirm for the reasons articulated in the trial court's well-reasoned orders.

*Affirmed.*

DALIANIS ▾, DUGGAN ▾, HICKS ▾ and CONBOY ▾, JJ., concurred.

③

EXHIBIT -4

# THE STATE OF NEW HAMPSHIRE

CARROLL COUNTY                                          SUPERIOR COURT

Samuel Bourne, Individually & Trustee of Bedrock Realty Trust

v.

Town of Madison, Cooper Deans and Cargill, Randall Cooper, Individually & Officially, Robert King, Robert Babine, Bldg. Inspector

Docket No.: 08-E-027

## ORDER

The petitioner in this case, Samuel Bourne (individually and as trustee of Bedrock Realty Trust) ("Bourne"), asserts a number of claims against the Town of Madison ("the Town"); Robert King ("King"), who served on the Town's road study committee in 1998; Robert Babine, Building Inspector for the Town ("Babine") (collectively, "the Town respondents"); and Cooper, Deans and Cargill Law Firm and Randall Cooper, an attorney and member of that law firm ("Cooper") (collectively, "the Law Firm respondents"). Upon hearing, and after a review of the facts as pled and the applicable law, the court finds and rules as follows.

This action arises from a long and litigious history between Bourne and the Town. Bourne purchased a piece of property in Madison, New Hampshire on September 30, 2002. The Town has a conservation easement on land adjacent to Bourne's property. Bourne's predecessors-in-interest, the Kelseys, deeded ("the Kelsey deed") to the Town an easement over their land, which later became Bourne's property, for the purpose of reaching the conservation property ("the Kelsey easement"). The Kelsey easement ran through the Kelseys' (later Bourne's) property. In 2000, the Town concluded that a roadway, known as Solomon Harmon

Road ("the road"), which ran across the Kelsey easement to the conservation property, was a Class VI public highway. The Town based this conclusion on the findings of the road study committee, of which King was the lead researcher.[1]  The Town permits the public, including members of the public on snowmobiles, to pass over Class VI roads. At the time, the Town also permitted homes to be built on property that had frontage on a Class VI road. If a homeowner wished to build on such property, he or she would first be required to execute a standard agreement with the Town that relieved the Town of liability from use and maintenance of the road and which required, among other things, maintenance of the road on the part of the homeowner.

There are three previous litigations between the parties that are relevant to the current dispute. The first action, filed in state court by the Town, requested rescission of an agreement between Bourne and the Town. The second was a state court case that consolidated for trial several underlying cases filed by Bourne. The third was a federal action, also filed by Bourne.

The first action commenced when Bourne attempted to acquire a building permit for his property. He and the Town executed the standard Class VI roadway agreement. Bourne, or someone acting on his behalf, altered the agreement to preclude members of the public from passing over the road. The Town signed the agreement as altered, but later sued for its rescission, alleging that they had been unaware of the alteration when they signed it. Bourne and the Town settled that action. As part of the settlement, they executed a mutual release of all claims arising out of that action, which required Bourne to sign the agreement containing only

---

[1] A class VI road is, generally, a "public way" not otherwise classified under New Hampshire law, including "all highways discontinued as open highways and made subject to gates and bars...and all highways which have not been maintained and repaired by the town in suitable condition for travel thereon for 5 successive years or more..." RSA 229:5. Class VI highways are "full public highways that the public has a right to pass over." Glick v. Ossipee, 130 N.H. 643, 646 (1988).

2

the standard terms, and required the Town to issue Bourne a building permit.[2]   The building

permit was granted on May 7, 2003 pursuant to the settlement, and was revoked on February 6,

2004, for reasons unrelated to the road.   The settlement released each of the parties from the

claims of the other, with a limited exception which allowed Bourne to litigate the status of the

road, including the public access thereto.

    Bourne then filed a request with the Town Board of Selectmen on February 10, 2003,

requesting that the layout of the road be changed.   When the Board of Selectmen denied that

request, Bourne appealed to the superior court.   On September 19, 2003, Bourne filed a Petition

to Remove Class VI Status Placed in Error, alleging that the road was not a public way or that it

was not properly located.  On October 29, 2003, Bourne filed an action to enjoin snowmobile use

on the road.   The Town of Madison then granted the petition of another Madison landowner to

change the layout of the road.  On February 18, 2005, Bourne filed another suit alleging bad faith

on the part of the Town, and that it had granted the layout change petition in an effort to

circumvent the litigation.   The aforementioned four cases were consolidated for trial ("the State

Litigation"), and following a bench trial in March 2007 the court (Fitzgerald, J.) ruled on the

merits of the consolidated cases.   Bourne v. Town of Madison, Carroll County Superior Ct.,

Docket Nos. 03-E-0061, 03-E-114, 03-E-144, 05-E-014 (August 10, 2007) (Order, Fitzgerald, J.)

("the Fitzgerald Order").

    The Fitzgerald Order held that the Kelsey easement did not permit snowmobile use and

that its location was clearly set out by the parties in the deed and could therefore not be changed.

Id. at 6.   It also held that the Town had not met its burden to show that it possessed any

prescriptive rights in Bourne's property.   Id. at 14.   In so ruling, the court determined that there

---

[2] Bourne had applied for a building permit previously, but that application had been rejected in November of 2002 for reasons unrelated to the road.

3

was insufficient evidence to show that members of the public had used the road for twenty years under a claim of right. Id. The court also held that there was no occasion for the Town to have laid out a Class VI road bisecting Bourne's property as a public necessity or convenience. Id. at 16-17. Finally, the court held that Bourne was not entitled to attorney's fees. Id. at 17. After the conclusion of the State Litigation, Bourne inquired of the Town as to the status of his building permit, and Cooper explained in a January 7, 2008 facsimile that the Town would likely not issue the permit because Bourne's property had frontage only on a private way, not a Class VI road.

While the State Litigation was pending, Bourne began litigation in the United States District Court for the District of New Hampshire against the Town, its selectmen, John Arruda, Clifford Graves, and Eileen Crafts, each individually and in his or her official capacity, and Robert King ("the Federal Litigation"). Bourne asserted five claims against the Town and its agents: that they (1) violated his federal and state constitutional rights to due process and equal protection, (2) breached the waiver agreement asserted to have been altered by Bourne's attorney, (3) perpetrated fraud, (4) made a negligent representation, and (5) interfered with contractual relations. Bourne v. Town of Madison, 494 F.Supp.2d 80, 87 (D.N.H. 2007).

In that case, the district court granted summary judgment to the defendants on Bourne's claims based in due process, equal protection, the New Hampshire Constitution, and state common law, with the exception of a claim for interference with contractual relations; that claim has been stayed pending any appeals of the State Litigation. Id. at 101-02.

In the present action, Bourne asserts ten counts numbered I-V and VII-XI set out in his petition and its amendments. The respondents move to dismiss Counts I-III, Count V, and Counts VII-XI; Bourne objects. The court will address each of these claims in turn.

In considering a motion to dismiss, the Court must determine "whether or not the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery." Cadle Co. v. Dejadon, 153 N.H. 376, 378 (2006) (quoting La Roach Adm'r v. Doe, 134 N.H. 562, 564 (1991)). In doing so, the court must "scrutinize the facts contained on the face of the petition to determine whether a cause of action has been asserted." Cadle, 153 N.H. at 378 (citing Williams v. O'Brien, 140 N.H. 595, 597 (1995)). When testing the pleadings, the court "assume[s] the truth of the facts alleged by the plaintiff and construe[s] all reasonable inferences in the light most favorable to him [or her]." Paul v. Sherbourne, 153 N.H. 747, 749 (2006) (citing DeWyngaert v. Bean Ins. Agency, 151 N.H. 406, 407 (2004)). However, the court "need not accept allegations in the writ that are merely conclusions of law." Silva v. Warden, N.H. State Prison, 150 N.H. 372, 374 (2003) (citing Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 258 (1998)). When the facts, properly viewed, "do not constitute a basis for legal relief," dismissal is appropriate. Paul, 153 N.H. at 749 (citing DeWyngaert, 151 N.H. at 407).

Count I is an action for slander of title against all respondents except Babine. In support of this claim, Bourne asserts that it came to light after the State Litigation trial that the respondents had deceived him with regard to the proper execution and acceptance of the Kelsey deed. Additionally, he alleges that on several occasions following the conclusion of the State Litigation, the respondents have made claims that the public has rightful access to the road and have allowed documents to remain on display in the Town library and online that continue to classify the road as a Class VI road. As a result, Bourne claims that he has suffered a slander of title at the hands of the defendants.

5

The law firm and Town respondents move to dismiss. Bourne objects. In their Motion to Dismiss, the respondents argue that any defect in the Kelsey deed, executed and recorded in 1979, was cured by statute, RSA 477:16, which states in pertinent part:

> When any instrument of writing shall have been on record in the office of the register of deeds in the proper county for the period of 10 years, and there is a defect in such instrument...because it was not acknowledged...such instrument shall, from and after the expiration of 10 years from the filing thereof for record, be valid as though such instrument had in the first instance...been acknowledged.

RSA 477:16 (2001). Bourne argues in his objection that RSA 477:16 does not address his fraud claim.

As to the Kelsey deed, the court finds and rules that Bourne's claims are barred by RSA 477:16. RSA 477:16 cured any and all of the defects Bourne alleges are present in the Kelsey deed. The deed was executed and recorded in 1979, and as such had been on record for more than the statutory ten years – actually more than twenty years – when Bourne purchased his property. Since Bourne acquired the property after any defect he alleges in the deed had been cured, any faults in the deed's execution or acknowledgment did not affect him. Bourne therefore has no fraud claim against any of the respondents because fraud requires that the party seeking to prove fraud show that "the other party made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Van der Stok v. Van Voorhees, 151 N.H. 679, 683 (2005) (quotation and citation omitted). Here, since the deed was cured of any alleged defect by the time Bourne took the property, the assertion by any respondent that the deed was not faulty was, in fact, true. There was therefore no falsity, nor could there have been any reliance by Bourne.

6

Even if the deed had not been cured, the court finds that any argument relating to the Kelsey deed is barred by res judicata. "Three conditions must be met for res judicata to apply: (1) the parties must be the same or in privity with one another; (2) the same cause of action must be before the court in both instances; and (3) a final judgment on the merits must have been rendered on the first action." Osman v. Gagnon, 152 N.H. 359, 362 (2005) (citation omitted).

> New Hampshire embraces the modern trend to define cause of action collectively to refer to all theories on which relief could be claimed on the basis of the factual transaction in question. Generally, in determining if two actions are the same cause of action for the purpose of applying res judicata, we consider whether the alleged causes of action arise out of the same transaction or occurrence. Res judicata will bar a second action even though the plaintiff is prepared in the second action to present evidence or grounds or theories of the case not presented in the first action.

Sleeper v. Hoban Family P'ship., ___ N.H. ___, ___; 955 A.2d 879, 883 (July 25, 2008) (quotations and citations omitted). Bourne himself admits that he moved to amend his pleading in the State Litigation to include defenses related to the Kelsey deed and that the motion was denied. Arguments relating to the deed are part of the same cause of action as that litigated in the State Litigation, because they were actually presented in that litigation. Any argument related to the Kelsey deed is therefore barred by res judicata. Accordingly, the respondents' motions to dismiss Count I are GRANTED insofar as they pertain to the Kelsey deed.

The court will now turn to Bourne's second claim within Count I, alleging that the Town has suggested that the public has a right of access over the road. An action for slander of title requires the petitioner to show four elements: "(1) publication of a slanderous statement disparaging a claimant's title to an interest in land, (2) the statement was false, (3) the statement was made with malice or with reckless disregard of its falsity, and (4) the statement caused actual damage." Pettee v. Young, 783 A.2d 637, 642 (Me. 2001) (citation omitted).

7

In this case, assuming for the purposes of this motion the truth of the plaintiff's allegations, the statements by the Town respondents that suggest that the public has some right of access through Bourne's property are not false. Although the Fitzgerald Order held that the road is not a Class VI road, the Kelsey easement is nonetheless effective under RSA 477:16, as discussed above. Construing the two documents together creates a right-of-way in the Town, rather than a Class VI road, which nevertheless permits pedestrian crossing of Bourne's property. Further, as to that assertion and as to the assertion, assumed for this motion to be true, that the Town continues to maintain documents showing the existence of a Class VI roadway, the court finds that Bourne has failed to sufficiently allege malice or reckless disregard on the part of the Town in failing to immediately remove any and all documents that reflect the Town's former classification of the road from public record, nor has he sufficiently alleged actual damage. Accordingly, the Motions to Dismiss Count I are GRANTED as they pertain to the action for slander of title.

Count II is an action for negligence against all respondents. Bourne contends that the respondents in this action have acted negligently in their failure to cure injustices and their alleged continued deception. Given the law Bourne cites for this claim, the court understands this to mean that Bourne is alleging professional negligence on the part of the law firm respondents. The law firm respondents argue that they had no duty of care to Bourne, but only to their client. The Town respondents argue that the Town had no duty of care to an opposing party in litigation and therefore a claim for negligence must be dismissed. Bourne responds to the respondents' Motions to Dismiss the negligence claim by claiming that all attorneys owe a duty of fairness to opposing parties and counsel.

To state a claim for negligence, the plaintiff must show "that the defendant owed a duty to the plaintiff, breached that duty, and that the breach proximately caused the claimed injury." Estate of Joshua T. v. State, 150 N.H. 405, 407 (2003). Bourne has failed to state a duty of care owed to him for the purposes of a negligence claim. There is no case law in New Hampshire that supports a duty to opposing parties or their attorneys in litigation sufficient to support a negligence claim on the circumstances of record in this case. Accordingly, the Motions to Dismiss are GRANTED as to the negligence claim.

Count III is an action for fraud against all respondents. Bourne alleges that during King's January 18, 2006 deposition, King admitted that, according to Bourne, the only map the Town used to claim prescriptive rights to the petitioner's property was deceitfully altered to include the missing road. The court takes this to mean that Bourne is alleging fraud on the part of the Town and King for altering the map and using it in the State Litigation. Bourne goes on to allege that Cooper falsely and deceitfully executed the Kelsey deed, that the respondents kept the faulty nature of the Kelsey deed hidden from Bourne, that they represented that a road existed when and where it did not, and that they falsely represented a vested right in issuing and revoking his building permit. He goes on to argue that an affidavit by King presented to the court in 2004 mislead the court and Bourne with regard to the map, and that this was revealed to Bourne during a deposition in 2006.

"The essence of fraud is a fraudulent misrepresentation. In order to withstand a motion to dismiss, the plaintiff must specify the essential details of the fraud, and specifically allege the facts of the defendant's fraudulent actions. It is not sufficient for the plaintiff merely to allege fraud in general terms." Brzica v. Trustees of Dartmouth College, 147 N.H. 443, 449 (2002)

9

(quotation and citation omitted). The court has addressed Bourne's claims regarding the Kelsey deed in its analysis of Count I, above.

The only other statement, not related to the Kelsey deed, that Bourne sufficiently alleges for the purposes of stating a claim for fraud is the statement King made during his 2006 deposition regarding the map. King admitted during the trial of the State Litigation that he had made twenty-two alterations to the map, including adding the road to it. Fitzgerald Order at 9. Because King admitted in the State Litigation to making the alterations, as noted in the Fitzgerald Order, Bourne cannot show that King made a misrepresentation material to that litigation. To the extent that Bourne intends his allegation to be that the misrepresentation at issue was the map alteration itself or a statement made by King in a 2006 deposition, King later, at the 2007 trial, admitted to making the alterations, and the Fitzgerald Order explicitly took that admission into account. Accordingly, Bourne has not alleged a misrepresentation that could have any continuing materiality. Further, the issue having been raised in the State Litigation, it is now barred by res judicata. E.g. Sleeper, 955 A.2d at 883.

Additionally, if fraudulent statements were made during the course of prior litigation and had any affect on that litigation, RSA 526:1 and 526:2 authorize the superior court to grant a new trial in any case wherein justice has not been done and further hearing would be equitable. The proper response to the discovery of fraud in prior litigation is to file a petition for a new trial in those cases, not to begin an entirely new proceeding. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count III.

Count V is an action for inverse condemnation and trespass against all defendants except Babine. Here, Bourne argues that the Town, in maintaining that a Class VI road ran through Bourne's property prior to the order made in the State Litigation, condemned and trespassed on

10

his property. The respondents move to dismiss, arguing that this claim is barred by res judicata. Bourne objects.

Since this alleged conduct took place ~~prior to~~ _AFTER_ the State Litigation and was directly at issue in that case, it constitutes a theory on which relief could have been claimed in that litigation. As such, it is barred by res judicata, as discussed above. See e.g. Sleeper, 955 A.2d at 883. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count V.

Bourne did not plead a Count VI.

Count VII is an action for negligent and false representation against all respondents. Bourne alleges that the respondents made the false representations in connection with the negotiations that resulted in Bourne being issued a building permit for his property, which representations Bourne claimed he discovered at the October 16, 2006 deposition of Babine. He goes on to argue that the defendants used the permit as "bait" to circumvent the State Litigation, that they revoked the permit because of discriminatory animus toward him, and that they never actually intended to grant him a building permit. Pet. at 11. The court takes his argument to mean that Bourne is alleging that the respondents issued him a building permit when they never had an intention of allowing him to build.

Bourne also argues that the Administrative Procedure Act applies to the Babine's actions. Bourne does not set out any reason or rationale that would support the application of the Act to Babine's actions. The respondents move to dismiss, arguing that they gave Bourne notice that he had only been granted a building permit because the Town had adopted a policy whereby property owners would be permitted to build on lots with frontage on Class VI roads, and that by challenging the status of the road he was putting his building permit in jeopardy. Bourne objects.

The elements of a cause of action for negligent misrepresentation are "a misrepresentation of a material fact by the defendants and justifiable reliance by the plaintiff." Snierson v. Scruton, 145 N.H. 73, 78 (2000) (quotation and citation omitted). Bourne does not point to any misrepresentation he believes the respondents made in issuing him a building permit. The mere fact that a building permit was issued and subsequently revoked does not mean that the issuance of that permit was, in itself, a misrepresentation. As to the Administrative Procedure Act, Bourne has failed to elucidate how Babine violated the Act or even to which Act he is referring,[3] and therefore has failed to state a claim arising under it. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count VII.

Count VIII is an action to quiet title against all respondents except Babine. Bourne argues that the faulty Kelsey deed resulted in a cloud on his title that must be removed. The respondents move to dismiss. Bourne objects. The court has addressed Bourne's claims with regard to the Kelsey deed above. Because, as discussed above, the Kelsey deed is valid, the respondents' Motions to Dismiss are GRANTED as to Count VIII.

Count IX is an action for nuisance against all respondents. Bourne asserts that the Town's allowance of public traffic over the road prior to the State Litigation resulted in a loss of enjoyment of his property. The respondents move to dismiss. Bourne objects. Since any alleged nuisance occurred prior to the State Litigation, and the use of the road was directly at issue in that action, this claim is barred by res judicata, as discussed above. See e.g. Sleeper, 955 A.2d at 883. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count IX.

---

[3] Bourne cites the federal Administrative Procedure Act, 5 U.S.C. § 706 (2000), in an addendum to his pleading, but New Hampshire also has an Administrative Procedure Act. RSA 541-A:1 et seq. Assuming he means RSA 541-A:1 et seq., he offers no support for its application here, and the court finds none.

Count X is a request to uphold injunctive rights against all respondents. In support of this claim, Bourne argues that the doctrine of vested rights requires the Town to reissue his building permit. The respondents move to dismiss. Bourne objects.

Bourne's request that the Town be required to issue him a building permit must be heard at the Town of Madison Zoning Board of Adjustment, pursuant to RSA 676:5, which provides for appeals to the Zoning Board of Adjustment for any person aggrieved by any decision of an administrative officer. If Bourne had been denied a building permit and he believes that decision was made in error, the proper forum in which to bring such a grievance was the Zoning Board of Adjustment. McNamara v. Hersh, 157 N.H. 72, 73-74 (2008). Challengers must exhaust their administrative remedies before appealing to the superior court. Id. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count X.

Count XI is a claim under the Consumer Protection Act, RSA chapter 358-A, against all respondents. Bourne avers that the respondents disparaged his business's goods or services in revoking his building permit, in making claims that a Class VI road existed, and in presenting the Kelsey deed as appropriately executed. The respondents move to dismiss. Bourne objects.

As stated in the analysis of Count X, the proper forum for the question of whether or not Bourne should have been issued a building permit was the Town of Madison Zoning Board of Adjustment. The court has also previously addressed Bourne's claims with regard to the validity of the Kelsey deed. Finally, all claims with regard to the Class VI status of the road were or should have been raised in the State Litigation and are therefore barred by res judicata, as discussed above. See e.g. Sleeper, 955 A.2d at 883. Accordingly, the respondents' Motions to Dismiss are GRANTED as to Count XI.

13

Finally, Bourne has amended Counts II, VII, and XI to include claims for obstruction of justice, concealment of material facts, municipal estoppel, and estoppel by silence. The respondents move to dismiss. Bourne objects.

Bourne does not make it clear how these claims are applicable to the counts Bourne is attempting to amend, nor is it clear how Bourne believes they apply to his situation. The court reads these amendments in the broadest context, and doing so reads them in part to mean that Bourne believes that the respondents concealed facts from him in the State and Federal Litigation and that the Town should have told him that they were going to revoke his building permit. The court has addressed each of these claims under Count III and Count X, respectively, and for the reasons discussed there, the Motions to Dismiss are to this extent GRANTED.

With regard to the remainder of the assertions in these amendments, although New Hampshire takes "a liberal approach to the technical requirements of pleadings," Porter v. City of Manchester, 151 N.H. 30, 43 (2004) (quotation and citation omitted), it is "well established that a defendant is entitled to be informed of the theory on which the plaintiff is proceeding and the redress that he claims as a result of the defendant's actions." Id. (quotation and citation omitted). "Allegations of pleadings are sufficiently clear if they are understandable by the court and counsel." Milne v. Burlington Homes, 117 N.H. 813, 815 (1977).

In this case, Bourne's allegations in his amendment are not sufficiently clear to give the respondents or the court proper notice of the factual basis for these claims, aside from the claims the court can understand him to be asserting, set out, addressed, and dismissed above. Accordingly, as to the balance of Bourne's amendments, the respondents' Motions to Dismiss are GRANTED.

In sum, for the foregoing reasons, the respondents' Motions to Dismiss Counts I-III, Count V, and Counts VII-XI are GRANTED.

So Ordered.

December 7, 2008

Steven M. Houran
Presiding Justice

THE STATE OF NEW HAMPSHIRE
CARROLL COUNTY SUPERIOR COURT
A TRUE COPY ATTEST:

Court Assistant

EXHIBIT -5

| | |
|---|---|
| From: | R. D. King [rdkingx2@earthlink.net] |
| Sent: | Saturday, June 25, 2011 2:13 PM |
| To: | Mike Brooks |
| Subject: | Recommendation that Selectmen formulate and announce its position concerning issuance of a building permit on the Bourne property |
| Attachments: | Foreclosure Notice, Bourne property, 14Jun11.pdf |
| Importance: | High |

## NON-PUBLIC COMMUNICATION

Hello Mike:

Now that the Foreclosure Notice has been issued on the Bourne property (see attached), there are two measures that the Board could take to protect the Town from future troubles with that property.

One would be to initiate an exploratory discussion of whether the Town should seek to acquire the property at auction, either to keep it as conservation land or later to sell it to a buyer with deeded covenants against residential construction beyond what is there now (rustic cottage). Reinstatement of the snowmobile trail would be an obvious option under this concept. The Selectmen could provide leadership by encouraging discussions of this issue by the Planning Board and Conservation Commission. The idea is not to propose anything, but just to initiate a timely dialog and see where it goes. You might be surprised at what you find out by doing this. It's anyone's guess about how public opinion will react to the opportunity that is presenting itself.*

The other measure would be to formulate and announce the Board's perspective on whether it should issue a building permit for a new year-round home on the Bourne property. The purpose of this would be to assure that no one buys the property with a presumption that he could go beyond what is grandfathered and build a year-round dream home on it. *Allowing such a presumption could lead to serious trouble later.*

Court documents in the Bourne cases contain frequent statements that without the old town road that led to the Solomon Harmon ruins, the remaining easement r.o.w. (Kelsey easement) isn't a public vehicular road and hence is unsuitable to further residential development. Bourne was strongly assured that you wouldn't issue him a building permit for a new home under these circumstances.

A new owner could ask for a building permit based on his private r.o.w. ("driveway"), but you discouraged Bourne strongly from believing that you'd allow that.

Subdivision on a Class VI road is flatly prohibited by our Zoning Ordinance. Subdivision on a private r.o.w. is not flatly prohibited by our Ordinance, but in Bourne's case the Planning Board made it clear that it would not approve a subdivision on a private r.o.w. with the characteristics of the Bourne driveway, particularly as to its narrow width (30 feet or less) and steepness.

In any event, construction on a Class VI highway or a private r.o.w. where the lot has no frontage on a Class V or better road is deemed unsuitable hence unlawful under state law; however, Selectmen have special discretion to make exceptions where circumstances overcome the state's presumption of unsuitability, e.g., where the actual conditions are little different from those prevailing on Class V roads.** A classic example of this is the Brown's home on Daniel Ward Road, where the house is but a short "driveway distance" from Lead Mine Road, where there are no further houses on the Class VI road and little potential for same, where the grade is gentle and the roadbed sound, where conflicts with public use are minimal, where there are no school bus problems, and where potential pressures to make the road Class V are difficult to imagine.

In any event, state law does not obligate the Selectmen to grant requests for building permits on these types of road, and as long as they have a reasonable basis for their decision, their exercise of discretion will be upheld. To this I would only add that a rejected permittee has recourse to the ZBA, but that body has some pretty stringent standards to meet in overturning the Selectmen's decision.

In a word, letting the public and the auctioneer know of your already well-developed position on a building permit for this particular property could save the Town a lot of grief later on. Prospective buyers would have realistic expectations about what they could build there.

Procedurally, let me remind you that in the Bourne case, he came to the Selectmen before purchase and received pre-sale assurances that he could build what he wanted. The new owner should have similar assurances about what he can build before making his purchase.***

If all goes well, the Bourne property will pass to someone who only wants it for the view, the proximity to conservation easement lands and scenic Bald Ledge, and the rustic cottage to facilitate such pursuits as snowmobiling, hunting, and communing with nature. It will be especially nice if the new buyer re-opens the Kelsey easement to snowmobilers who will maintain the roadway for enjoyment by the public in general.

MAD00081

As the auction is scheduled for July 15, it would seem that time is short for acting on these proposals, but the auctioneer told me that these auctions are often postponed. You may have more time than it seems. In any event, you have one regular meeting in July before the auction as presently scheduled. My suggestion would be to bring up the subject under "new business" at your meeting on the 28th and announce your position, perhaps after a public hearing, on July 12.****

I hope that you share with me the view that the Kelsey easement, the 300-acre McNair recreational easement parcel, and Bald Ledge together constitute one of Madison's most valuable recreational gems. This gem is worth preserving.

Please give this suggestion your careful consideration.

I am communicating these same thoughts to each Selectman separately and individually so as to remain on the non-public side of RSA 91-A. It isn't as if anything I'm saying won't bear the light of day, but it will keep personalities out of the equation and hence allow a more objective public discussion.

Bob King

---

\* At this point many people are feeling "non-buyer's remorse" at not having acquired the Jimmy Perkins' mini-lot in the Town Forest when it was available. Haunted by that missed opportunity, they may find acquisition of the Bourne property to be a good idea. If we haven't already done so in legal fees and other costs – not to mention moral costs – before all is said and done, the Town will have saved money by buying out the Perkins lot.

\*\* RSA 674:41.

\*\*\* The last thing you'd want is for the new owner to assume that the assurance of a permit that you gave to Bourne in 2002 applies equally to the new owner in 2011. Circumstances have changed. You also have to worry that if you give to the new owner a permit that you vowed to deny to Bourne, Bourne will have an issue about unequal treatment. 

\*\*\*\* The subject of the hearing could be broadly framed, e.g., "What if any actions should we take in regard to the auction of the Bourne property scheduled for July 16?"

2

MAD00082

# EXHIBIT -6

Received:                              Jan  7 2008 04:49pm



COOPER
CARGILL
CHANT
ATTORNEYS AT LAW

**FAX TRANSMISSION - January 7, 2008**
**with mail confirmation**

**NOTICE:** The information contained in this fax transmission is intended only for the individual or entity named. **THIS INFORMATION MAY BE PRIVILEGED AND CONFIDENTIAL.** If the reader of this message is not the intended recipient, you are hereby notified and instructed not to read anything beyond this notice and you are further prohibited from disseminating, distributing or copying any part of this communication. If you received this fax transmission in error, please call us collect at (603) 356-5439.

**FAX NUMBER:** 625-5650                          **TOTAL PAGES:** 2

Rachel A. Hampe, Esq.
McLane, Graf, Raulerson & Middleton, P.A.
P O Box 326
Manchester  NH  03105-0326

Re:     Bedrock Realty Trust v. Town of Madison
        Docket No.: 03-E-061, 03-E-114, 03-E-144, 05-E-0014
        CDC File No.: 1101.162

Dear Rachel:

I am in receipt of your letter of January 7, 2008.

I am not sure what the Selectmen intend to do, and nor will I violate attorney-client privilege and share what I may or may not have discussed with them.

I believe, however, both at Mr. Bourne's deposition and during the trial, I discussed with him and with Mr. Arruda, the consequences of Mr. Bourne challenging the Class VI Road status in light of both the frontage requirements of the Madison zoning ordinance and the limitations of RSA 674:41.

674:41 Erection of Buildings on Streets; Appeals. –
  I. From and after the time when a planning board shall expressly have been granted the authority to approve or disapprove plats by a municipality, as described in RSA 674:35, no building shall be erected on any lot within any part of the municipality nor shall a building permit be issued for the erection of a building unless the street giving access to the lot upon which such building is proposed to be placed
      (a) Shall have been accepted or opened as, or shall otherwise have received the legal status of, a class V or better highway prior to that time, or
      (b) Corresponds in its location and lines with:
          (1) A street shown on the official map; or
          (2) A street on a subdivision plat approved by the planning board; or

RANDALL F. COOPER  .  KENNETH R. CARGILL  .  PAUL W. CHANT  .  CHARLES L. GREENHALGH  .  DENNIS L. MORGAN
DEBORAH A. FAUVER  .  CHRISTOPHER T. MEIER    REBECCA J. OLESON
DORCAS H. DEANS - Of Counsel
Attorneys admitted in NH, ME, MA, OH

Received:                                    Jan  7 2008 04:49pm

January 7, 2008                                                    Page 2

(3) A street on a street plat made by and adopted by the planning board, or

(4) A street located and accepted by the local legislative body of the municipality, after submission to the planning board, and, in case of the planning board's disapproval, by the favorable vote required in RSA 674:40, or

(c) Is a class VI highway, provided that

(1) The local governing body after review and comment by the planning board has voted to authorize the issuance of building permits for the erection of buildings on said class VI highway or a portion thereof; and

(2) The municipality neither assumes responsibility for maintenance of said class VI highway nor liability for any damages resulting from the use thereof; and

(3) Prior to the issuance of a building permit, the applicant shall produce evidence that notice of the limits of municipal responsibility and liability has been recorded in the county registry of deeds; or

(d) Is a private road, provided that

(1) The local governing body, after review and comment by the planning board, has voted to authorize the issuance of building permits for the erection of buildings on said private road or portion thereof, and

(2) The municipality neither assumes responsibility for maintenance of said private roads nor liability for any damages resulting from the use thereof; and

(3) Prior to the issuance of a building permit, the applicant shall produce evidence that notice of the limits of municipal responsibility and liability has been recorded in the county registry of deeds for the lot for which the building permit is sought; or

(e) Is an existing street constructed prior to the effective date of this subparagraph and is shown on a subdivision plat that was approved by the local governing body or zoning board of adjustment before the municipality authorized the planning board to approve or disapprove subdivision plats in accordance with RSA 674:35, if one or more buildings have been erected on other lots on the same street

Previously, pursuant to RSA 674:41, I (c), the board of selectmen, as the governing body, had after review and comment voted to authorize building permits on Class VI roads, and it was for that reason that Mr. Bourne was able to get initially obtain a building permit. When Mr. Bourne challenged both Class VI status, both as a prescriptive highway and as a result of Kelsey easement, one of the reasons the board of selectmen "laid out" the Solomon Harmon road to the Bourne boundary was to permit the Board to continue to honor their settlement agreement with Mr. Bourne, and honor his building permit is he cleaned up the issues raised by the building inspector.



In light of Mr. Bourne having pursed the litigation to conclusion, as you admit in your letter the court ruled that there is no Class VI highway, therefore there is no statutory basis for granting Mr. Bourne a building permit pursuant to RSA 674:41, I (c).   Thus Mr. Bourne's property is served by a "private road", and I do not believe that the board of selectmen, as governing body, has adopted a policy to allow building permits on private roads pursuant to RSA 674:41, I (d).

I will request the Board to confirm whether they wish to consider granting Mr. Bourne a building permit pursuant to RSA 674:4, I (d).  If not, your client will have a right to appeal that decision to the ZBA as provided in RSA 674:4, II.



Received:                          Jan  7 2008 04:50pm

January 7, 2008                                                    Page 3

Thank you for your attention to this matter, and if you should have any questions, please do not
hesitate to call.

Very truly yours,

COOPER CARGILL CHANT, P.A.

Randall F. Cooper, Esq.
rcooper@coopercargillchant.com

RFC:rfc
enclosure(s)
cc: Board of Selectmen.

## MADISON PLANNING BOARD
Minutes
June 3, 2009
Public Hearing & Regular Meeting

Members Present: Jay Buckley (via telephone), Mike Brooks – Selectman, Noreen Downs, Karl Nordlund, and Marc Ohlson-Chair.
Members Not Present: Mark Brown, Phil LaRoche, and Mary Meier
Others Present: Bob Babine – Code Enforcement Officer, Peter Craugh, Kevin O'Neil, Doug Burnell, Laura Spector – PB Counsel, Ron Briggs, Josh & Teresa Shackford, Catherine Walsh
Meeting Agenda Posted: 5/27/09 at Madison Town Hall, Madison Post Office, and Silver Lake Post Office

1. **CALL TO ORDER**: Mr. Ohlson called the Meeting to order at 7:00 P.M. Mr. Buckley is not able to attend in person due to work constraints and is attending via the phone. Per statute, he noted that no one was present with him.

2. **APPOINTMENT OF ALTERNATES**: Mrs. Downs was raised to voting status.

3. **APPROVAL OF AGENDA**: Mr. Brooks moved, seconded by Mr. Nordlund, to approve the agenda as presented. Vote: Brooks - yes; Buckley - yes; Downs - yes; Nordlund - yes; Ohlson - yes. Motion passed.

4. **APPROVAL OF MINUTES**: Mrs. Downs moved, seconded by Mr. Buckley to approve the minutes of the 5/6/09 regular meeting as presented. Vote: Brooks - yes; Buckley - yes; Downs - yes; Nordlund - yes; Ohlson - yes. Motion passed. Mr. Buckley moved, seconded by Mr. Brooks, to approve the minutes of the work session of 5/23/09 as presented. Vote: Brooks - yes; Buckley - yes; Downs - yes; Nordlund - yes; Ohlson - yes. Motion passed.

5. **PUBLIC COMMENT**: none

## 6A. REVIEW OF CONTINUED APPLICATIONS:
A. Preliminary Subdivision and Boundary Line Adjustment for Pomeroy Limited Partnership, Winter Road Extension, Shoreland & Wetlands Conservation Districts, Tax Map 125 Lot 3 (09-06) This application is continued from the May meeting.

The public hearing was re-opened at 7:05 P.M. Doug Burnell, HE Bergeron Engineers, stated he would like to hear Ms. Spector's opinion on the application. She explained that although the application must be considered as a subdivision application, the statutes regulating conversion to condominiums state that the conversion must be granted as long as there is no change in the use or impact on the land. Since this is a grandfathered non-conforming lot with three existing dwellings, and the applicant is not proposing anything other than conversion of the dwellings to condominium ownership and there are no town regulations more stringent than the statute, the application must be granted as is. The existing driveway is also a grandfathered non-conforming use and may still be allowed to serve the three units. Mr. Brooks clarified that the only change will be ownership, which has no land impact. The existing lot lines of the lot after the boundary line adjustment define setbacks for any future changes to the dwellings, not the limited common area of each unit, which is usually restricted for the exclusive use of each owner. Condominium documents would define the use of the limited common area surrounding each dwelling, but generally an owner could not expand beyond that area.

Mr. Burnell noted that the Condominium documents have not yet been finalized. He also stated that there would be a shared septic system on the common area owned by all three owners serving the three dwellings. Application has been made to the Department of Environmental Services (DES) for a Shoreland permit.

Ms. Walsh requested review of the plats. The public hearing was closed at 7:20 P.M.

From: R. D. King [mailto:rdkingx2@earthlink.net]

Sent: Thursday, July 22, 2010 11:26 AM

To: Melissa Arias

Cc: Mike Brooks; Michel Benoit

Subject: Selectmen's involvement in the Pomeroy case (RSA 674:41)


Hello Melissa:

   Attached are the references that I mentioned during my visit to the Selectmen's office earlier today.

   The Selectmen should be made aware of these references, as they are responsible for the administration of RSA 674:41 and right now such administration is clearly "off the track" in the Pomeroy case.

   Bob Babine has failed to notify the Pomeroys that the must deal with this RSA 674:41 hurdle. They only know about it as a result of the July 14 ZBA hearing. He was on vacation and didn't attend that hearing.

   Bob Babine has not read Bernie Waugh's report on the Veilleux building permit and has told me that Randy Cooper told him that he made no mistakes in the issuance of that permit. Bob says the only attorney he listens to is Randy. Hence Bob is repeating the same error of ignoring RSA 674:41 in the Pomeroy case.

   It is also important for the Selectmen to realize that Randy Cooper has a conflict of interest and hence may not represent or advise them or Bob Babine on Pomeroy issues. Randy represented the Pomeroys in their application to "condominiumize" the property.

   The Selectmen must also realize that what they do in the Pomeroy case will have implications for the Bourne case. Town authorities and counsel have been telling Bourne that he is not entitled to a building permit or a subdivision based in the inadequacies of his access road.

Bob King

ATTACHMENTS:

A - ZBA Minutes, 14 July 10, Pomeroy case

B - Ltr from Madison Fire Dept about Pomeroy access, 2Feb10

C - Minimum Road Access Requirements Under State Law (Word)

D - Legal advice from Atty Waugh re applicability of RSA 674-41 to Pomeroy case, 8Jul10