# EXHIBIT-3

THE STATE OF NEW HAMPSHIRE
SUPREME COURT

Docket No. 2010-0091

Bedrock Realty Trust and Samuel Bourne
Individually and as Trustee.

V.

Town of Madison, Cooper Deans and Cargill law firm, Randall F. Cooper in both his personal
and official capacities, Robert King individually, and Robert Babine in his official capacity.

Appeal From Final Order of Carroll County Superior Court

## BRIEF OF APPELLANT

Bedrock Realty Trust and Samuel Bourne
Individually and as Trustee.

Bedrock Realty Trust and
Samuel Bourne individually
and as Trustee,
117 Pond St
East Bridgewater, MA 02333
508-378-9319

*To Be Argued By: Samuel Bourne Pro se*

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………....ii-vii

QUESTIONS PRESENTED FOR REVIEW……………………………..……...viii-xv

STATEMENT OF FACTS…………………………………………….………...1-10

STATEMENT OF THE CASE …………………………………………………10-32

SUMMARY OF ARGUMENT…………………………………………………..32-33

ARGUMENT……………………………………………………………….……33

CONCLUSION………………………………………………………………..…33-35

## TABLE OF AUTHORITIES

Hersh v. Plonski, 156 N.H. 511 (N.H. 2007)………………………………………………………………11

Bill of Rights of N.H. Const. pt. 1, arts. 2 & 12……………………………………………………27, 28, 30

Shahi v. Madden, 949 A.2d 1022, 2008 WL 615079 (2008)…….. ………………………………9, 18

Feld's Case No. LD-97-009 NH Supreme--

--Court 149 N.H. 19; 815 A.2d 383; 2002 N.H …………………………………………………11,21,35

Brzica v. Trustees of Dartmouth College, 147 N.H. 443 (N.H. 2002)……………………………15, 32

Metzger v. Town of Brentwood, 117 N.H. 497, 501 (1977)……………………………………………9

Sinclair v. Brill, 857 F. Supp.132, 1994 U.S. Dist. LEXIS 9512 (D.N.H. 1994)………11,14,18,23

Merrill v. Manchester, 114 N.H. 722 (N.H. 1974)……………………………………………………14

Funtown USA v. Conway, 127 N.H. 312 (N.H. 1985)………………………………………………9, 25, 31

Dover v. Imperial Casualty & Indem. Co., 133 N.H. 109 (N.H. 1990)…………………………………26

ii

Turco v. Barnstead, 136 N.H. 256 (N.H. 1992)............................................................31

Hogan Family Enters., Ltd. v. Town of Rye, 157 N.H. 453 (N.H. 2008)...................................31

J. E. D. Assocs. v. Atkinson, 121 N.H. 581 (N.H. 1981)..............................................................30

Claridge v. N.H. Wetlands Bd., 125 N.H. 745, 485 A.2d 287 (1984).......... .............................26

Resolution Trust Corp. v. North Bridge Assocs., 22 F.3d 1198 (1st Cir. Mass. 1994)..............33

Dovaro 12 Atlantic, LLC v. Town of Hampton No. 2007-219 and 2008-064...........................

Maynard & Maynard, 155 N.H. 630, 636, 930 A.2d 1195 (2007)...............................................18

State v. Shannon, 155 N.H. 135, 920 A.2d 1163, 2007 N.H. LEXIS 40 (2007)........................14

Riss v. Madison docket 02-E-0036 and NH Supreme court appeal docket No. 2004-0323, dated

Oct 20, 2005.................................................................................................................................3

Bedrock Realty Trust v. Madison, dockets 03-E-0061, 03-E-114, 03-E-0144, and 05-E-0014 and

NH Supreme court docket No. 2008-0550...................................................................................viii

Bourne v. Town of Madison, 2007 U.S. Dist. Ct. Motions 952265 (U.S. Dist. Ct. Motions 2006).

Bourne v. Town of Madison, 2009 U.S. Dist. LEXIS 104413 (D.N.H., 2009).

Coerced release See: Van Der Stok v. Van Voorhees, 151 N.H. 679 (N.H. 2005)., and

Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 157 N.E.2d 597, 599, 184 N.Y.S.2d 599 (N.Y.

1959)., and ( Rickle v. Mills, 93 N.H. 191, 38 A.2d 78).

Rothenberg v. Kamen, 735 F.2d 753 (2d Cir. N.Y. 1984).......................................................5-6

Munson v. Raudonis, 118 N.H. 474 (N.H. 1978)......................................................................26

Nestle Foods Corp. v. Aetna Cas. and Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990)...............14

Burrows v. City of Keene, 121 N.H. 590, 598 (1981)................................................................25

Catalano v. Town of Windham, 133 N.H. 504, 510, 578 A.2d 858 (1990)................................11

McInnis v. Town of Hampton, 112 N.H. 57, 61, 288 A.2d 691 (1972)......................................12

Pettee v. Young, 2001 ME 156 (Me. 2001)................................................................12

White v. Schnoebelen, 91 N.H. 273 (N.H. 1941)......................................................12

Dovaro 12 Atl., LLC v. Town of Hampton, 158 N.H. 222 (N.H. 2009)....................30

Iannelli v. Burger King, Corp., 145 N.H. 190, 192 (2000)........................................34

Chewning v. Ford Motor Co., 354 S.C. 72 (S.C. 2003)......................................16, 34

United States of America v. Robert J. Gagalis, et al. Case No. 04-cr-126-01/06-PB U.S. District.

Court of New Hampshire...........................................................................................22

Munson v. Raudonis, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978)...................22

Crowley v. Global Realty, 124 N.H. 814 (N.H. 1984)..............................................22

Pierson v. Hubbard, 147 N.H. 760, 763 (2002)........................................................22

Restatement (Second) of Torts § 573 (1977).............................................................22

Thomson v. Cash, 119 N.H. 371, 376 (1979)............................................................22

Kenneth Webster Trust v. Town of Candia, Case No. 99-046, No 2000-348 Supreme Court of

New Hampshire.........................................................................................................24

Carignan v. N.H. Int'l Speedway, 151 N.H. 409, 412 (2004)....................................13

Opinion of Justices, 88 N.H. 484, 485 (N.H. 1937)...................................................2

WALKER v. CITY OF HUTCHINSON, 352 U.S. 112 (U.S. 1956)...Due Process violations.....2

Nashua Trust Co. v. Weisman, 122 N.H. 397 (N.H. 1982).......................................17

Snierson v. Scruton, 145 N.H. 73, 77 (N.H. 2000)...................................................17

Buskey v. Town of Hanover, 133 N.H. 318, 323 (1990)...........................................31

Chasse v. Candia, 132 N.H. 574 (N.H. 1989)...........................................................31

Cook v. Sullivan, 149 N.H. 774, 780 (2003).............................................................29

Thomas v. Hooksett, 153 N.H. 717 (2006)................................................................29

Coco v. Jaskunas, 159 N.H. 515 (N.H. 2009)......................................................27, 28

Dugas v. Conway, 125 N.H. 175 (N.H. 1984)................................................................................30

Blue Jay Realty Trust v. City of Franklin, 132 N.H. 502, 509 (1989)..........................................25

Doucette v. Town of Bristol, 138 N.H. 205 (N.H. 1993)..............................................................13

Awl Power v. City of Rochester, 148 N.H. 603 (N.H. 2002)..................................................31, 32

Morgenstern v. Town of Rye, 147 N.H. 558 (N.H. 2002)............................................................32

Porter v. City of Manchester, 151 N.H. 30 (N.H. 2004)..............................................................27

Conrad v. Hazen, 140 N.H. 249 (N.H. 1995)...............................................................................17

Smith v. Wade, 461 U.S. 30, 57, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983)................................35

Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir. 1992) (quoting Hernandez-Tirado v. Artau, 874

F.2d 866, 869 (1st Cir. 1989)......................................................................................................35

Cambridge Mutual Fire Ins Co. v Crete, 150 N.H. 673, 678 (2004)...........................................35

## N.H. STATUTES

RSA 638:1 Forgery....................................................................................4

RSA 638:2 Fraudulent Handling of Recordable Writings......................................11

RSA 638:3 Tampering With Public or Private Records.........................................4

RSA 638:11 Misapplication of Property.............................................................11

RSA 642:3(d) Hindering apprehension or prosecution..........................................11

RSA 641:1 Perjury..............................................................................6, 11

RSA 92:2 Oath Required..........................................................................ix

RSA 42:1-a Manner of Dismissal; Breach of Confidentiality.................................20

RSA 641:5 Tampering With Witnesses and Informants.........................................

RSA 641:5(b) Withhold any testimony, information, document or thing.............1-35

RSA 641:6 Falsifying Physical Evidence............................................................11, 15

RSA 641:7 Tampering With Public Records or Information...................................11

RSA 49-C:19 Non-Interference by the Elected Body,.............................................

RSA 498:5-a Real and Personal Property; Disputed Titles......................................

RSA 651:61-a Statement of Purpose. "victims of crimes"....................................9, 14

RSA 354-A:8 Equal Housing Opportunity Without Discrimination.........................35

RSA 354-A:19 Retaliation and Required Records. "retaliate or discriminate"..........22

RSA 311:6 Oath. – Every attorney admitted to practice...........................................20

RSA 637:3 Theft by Unauthorized Taking or Transfer...............................................11

RSA 637:4 Theft by Deception.....................................................................................26

RSA 635:2 Criminal Trespass......................................................................................25

RSA 643:1 Official Oppression....................................................................................34

RSA 640:3,(b) Improper Influence of town officials..................................................26

RSA 644:11 Criminal Defamation...............................................................................22

RSA 477:47 Interests in Real Estate. No grantee interest...........................................viii

RSA 477:27 Warranty Deed. (warrant and defend)....................................................28

RSA 508:2 (1998) Real Actions. No rights after 20 years..........................................viii

RSA 31:95-e (1998) Acceptance requirements............................................................10

RSA 674:35 Power to Regulate....................................................................................viii

RSA 229:1 Highways Defined. (dedication and acceptance)......................................viii

RSA 91-A and RSA 91-A:2, I (Supp. 2000)................................................................24

RSA 382-A:2-721 Remedies for Fraud..........................................................................

RSA 382-A:1-304 Obligation, Goods, Realty, or Otherwise.......................................xii

RSA 358-A:2 Acts Unlawful.................................................................................15, 32

RSA 358-A:10...................................................................................................32

RSA 649:5 Conspirators. - If 2 or more persons conspire to commit any crime............11

RSA 649:6 Witnesses' Privileges. – No person excused from producing documents......

RSA 674:19 (2008) Applicability of Zoning Ordinance...................................................30

RSA 39:3 Articles. lack of notice, Due Process violations...............................................2

RSA 508:10 Second Suit....................................................................................11

<u>Note: The factual details contained herein, reveals a disturbing realization that the Appellees have indeed committed fraud on the Court, to a degree that the entire N.H. legal process could be undermined by their efforts. Due to the discovery of concealed evidence that is material, the new causes of action were filed to address those issues and to address the continued abusive treatment. On or about June 29, 2009 additional concealed evidence has also been discovered.</u>

Head Notes:

In part, Material facts overlooked by the lower court: (1) "Continued concealment of material facts, (2) Continued concealment of requested discovery RSA 641:5(b), (3) Admitted spoliation of evidence RSA 642:3(d), (4) Admitted forgery of maps and confirmed falsified notary of witness on the Kelsey deed, and two affidavits RSA 638:1, RSA 638:3, and RSA 641:7, (5) Perjured testimony, (6) Continued fraudulent representations RSA 637:4, (7) Contempt of previous court orders, (8) Constitutional violations, (9) Perjured answers to interrogatories, (10) Perjured deposition testimony, (11) Improper influence RSA 640:3(b), (12) Defamation and libel with malicious intent RSA 644:11, (13) Fraud upon the Court by town counsel, and (14) use of tax dollars to promote private interests.

## QUESTIONS PRESENTED FOR REVIEW

(1) Did the Court err, by allowing RSA 477:16 to be "a cure all" for the NON accepted Kelsey deed, where: (a) by relieving the town of all "statutory" requirements for acceptance of gifts, right of ways, trails, or any other legal instruments that normally require public notice, public vote, public "acceptance", and public record of such, (b) by allowing the town to make claim to any such instrument recorded in the registry of deeds when said recorded instrument is without public knowledge, without public acceptance, without town record for over twenty years RSA 508:2, without grantee's signature RSA 477:47, and by not applying Hersh v Plonski 156 N.H. 511, 514 (2007), (c) by allowing the Kelsey's to attempt to deed a limited foot trail "novelty" easement to the town over an abutting property in which the Kelsey's did not own, as noted in part two of said deed, and (d) by allowing a fraudulent notary of witness to be permissive? (App. at 3, 122, 235, 251, and (court hearing 9/5/08 transcript at 54)

(2) Did the Court err, in dismissing **Count I, Slander of Title**, where the Appellees deceitfully continue "today" to: (a) publish forged map[s], falsified Road reports, altered tax maps, and false newspaper articles, making adverse claims to the Appellant's property in the local library, on the internet, in the town hall, and in the local newspapers, (b) cause trespass by unauthorized snowmobile use on the Appellant's driveway/private road in contempt of this Court's Order, and (c) continuously publish claims that the Appellant's property is burdened by a "prescriptive" Class VI highway, even though this Court had previously confirmed that no such Class VI highway ever existed? See Order on Merits 8/15/2007 by the Honorable Edward J. Fitzgerald NH Docket 03-E-0114 and 05-E-0014, and NH Appeal docket No. 2008-0550.

Did the Court err, (a) where the Appellees willfully "concealed" that the town had failed to accept the Kelsey deed within 20 years of dedication as required under "common law" RSA 508:2, RSA 31:95-e, RSA 674:35, RSA 477:47 and RSA 229:1, and (b) where Patrick and Patricia Kelsey both by sworn affidavit confirmed that in fact Appellee Randall Cooper falsified the notary of witness on the Kelsey deed, which once again forces the Appellant to seek relief? (App. at 3, 15, 122, 235, 251), and (court hearing 9/5/08 transcript at 53-54)

(3) Did the Court err, in dismissing **Count II, Negligence**, where the Court overlooked a substantial amount of evidence in the Appellants favor, demonstrating: (a) concealed material facts, (b) concealed evidence, (c) discovery of new concealed documents that were material, and (d) confirmation of perjury and fraud upon the Court and fraud upon the Appellant?

Did the Court err, where: (a) Appellee *Mr. Babine was NOT a party to any previous litigation, and where he insisted on violating the Appellant's vested property rights by way of perjured and corrupt actions at the request of the other Appellees in contempt of court orders)*, (b) "both" town officials and town counsel in [control] have violated their "duty of care" under RSA 643:1 abuse of office and under RSA 92:2 oath of office, (c) town officials had full control of the issues raised herein and only acted on behalf of a specific "PRIVATE" snowmobile club which does not pay property taxes, (d) Appellee town counsel under RSA 311:6 owed a higher standard of care, but violated that obligation to, and (e) under common law town officials or someone acting on their behalf must be held accountable for their malicious actions that continues to harm the Appellant, especially where they "concealed" material facts that would have prevented years of unnecessary litigation at the tax payer's expense?

Did the Court err, by failing to apply the law where: (a) the Appellees willfully concealed evidence in order to force the Appellant to endure an expensive litigation based on forged documents, (b) Selectman Aruda committed perjury, (c) the Appellees failed to investigate the town's claim to a public highway, (d) the Appellees failed to seek expert advice to determine if there was sufficient evidence to force a landowner into defending his property rights from an unlawful taking that continues today, (e) Appellee Mr. Cooper deliberately misled the Appellant into a coerced 2003 litigation settlement based on deceptive representation in light of "newly" discovered concealed evidence, (f) Appellee Mr. Cooper and town officials continually violate RSA 91-A by conducting secret meetings with local snowmobile club members regarding the Appellant's property, as the secret meetings were admitted to by Appellee Mr. King and Mr. Charrette, (g) the Appellees failed to correct their oppressive, vexatious, arbitrary, and capricious behavior, (h) the Court should have held Appellee Robert D. King accountable for forging public documents, falsifying reports, and for keeping his alterations of Public documents "secret" for over four years, (i) the Appellees unlawfully used tax dollars for a private agenda in violation of the law, Opinion of Justices, 88 N.H. 484, 485 (N.H. 1937), (j) the Appellees concealed the lack of acceptance of the Kelsey Deed by way of perjured interrogatories, and (k) Appellees concealed the falsified notary of witness of the Kelsey Deed in order to harm the Appellant? (App. at 6, 64-73, 125, 253), and (court hearing 9/5/08 transcript at 26 and 54).

**(4)** Did the Court err, in dismissing **Count III, Fraud**, where Appellees Mr. Cooper and his Firm participated in assisting Mr. King and town officials: (a) make false representations upon the

Court and upon the Appellant, (b) put in false evidence upon the Court, (c) submitted a falsified affidavit of Mr. King to escape summary judgment, (d) conceal requested discovery that was material, (e) knowingly presented perjured testimony upon the Court, and (f) make false claims to private property for the benefit of a private snowmobile and ATV club?

Did the Court err, by failing to hold Appellee Mr. King accountable for secretly falsifying public documents/map[s] "without notice" especially when he was caught red handed in violation of RSA 638:1, RSA 638:3 and RSA 637:4, and RSA 641:2.

Did the Court err, as the evidence against the Appellees was so overwhelming, where: (a) Appellees willfully and fraudulently misrepresented material facts to both the Court and to the Appellant by way of falsified physical evidence, (b) Appellees attempted to hide their knowledge of alter public documents in violation of RSA 641:6, (c) Appellees deceitfully revoked the Appellants build permit to use as bait to evade litigation, and to use as "leverage" to gain Deeded rights for a private snowmobile and ATV club, (d) Appellees revoked the build permit in contempt of a Court Order agreeing to the coerced settlement, (e) it was admitted that the Appellees willfully violate RSA 91-A by continuing to conduct secret meetings with certain members of the snowmobile club to discuss the Appellant's property without any notice or minutes, (f) Appellee Randall Cooper willfully concealed that he falsified the notary of witness on the Kelsey deed as sworn to by Patrick Kelsey and Patricia Kelsey, (g) the Appellees concealed the lack of acceptance of the Kelsey deed until after the State litigation trial on the merits had pasted, in which the Appellant was compelled to "rely" on Kelsey deed restrictions during said litigation, which concealment of material facts compelled Appellant to defend the allowable uses of said Kelsey deed, when in fact the Kelsey deed was already legally invalid, causing a continued fraud upon the Appellant and upon the Court, (h) the Appellees only produced limited amount of concealed documents after being found in contempt "after" the previous consolidated State action had already gone to trial, preventing proper "notice" to the Appellant in violation of due process, (i) Appellee Mr. Cooper committed perjury upon the Court multiple times, (j) Appellee Mr. King forged map[s], falsified report[s], submitted a falsified affidavit, and committed perjury within the pleadings of this case, (k) selectman Aruda committed perjury at his deposition in an attempt to evade judgment, (l) Appellee Mr. King admitted to assisting Appellees' counsel Mr. Cullen falsify interrogatories signed by selectman Aruda, (m) more concealed documents were recently discovered on or about June 29, 2009, (n)

Mr. King has admitted to spoliation of requested discovery, and (o) Appellees unlawfully used tax dollars for their own private agenda? See Feld's Case No. Ld-97-009 NH Supreme Court. (App. at 4-6, 64-73, 125,130, 255), and (court hearing 9/5/08 transcript at 8-10, 32-36, 48).

**(5)** Did the Court err, in dismissing **Count V, Inverse Condemnation and Trespass**, where: (a) the use of unauthorized snowmobile trespass continues "today" upon the Appellant's driveway/private road in an effort by the Appellees to continue harassing the Appellant Mr. Bourne for defending property rights, and in spite of this Court's Order prohibiting such, (b) trespass was "during and after" the previous litigation in violation of RSA 635:2, (c) it is considered an unconstitutional taking of property for the primary benefit of a private party in violation of N.H. CONST., pt. I, art. 12., (d) the Appellees continue to make public claim to the Appellant's property today, and (e) the Appellees have deprived the Appellant of all reasonable use? (App. at 10, 64-73, 130-135, 257), and (court hearing 9/5/08 transcript at 55).

**(6)** Did the Court err, in dismissing **Count VII, Negligence and False Representation**, where: (a) the building permit being granted under false representation and then later revoked a 2nd time under fraudulent circumstances, causing a "breach of court settlement" of a previous litigation instituted by the Appellees, (b) the Appellant "relied" upon said permit to settle litigation, but when it was revoked a 2nd time **Robert Babine admitted** he was just doing what he was Ordered to do by the other Appellees, (c) Appellee Robert Babine had a duty to correct his admitted deceitful actions, but failed to, (d) Appellees revoked said build permit with malicious intent to use as "leverage" and as "bait" a 2nd time in order to coerce deeded rights be granted to a private party snowmobile club, (e) Appellees additionally attempted to use the revoked permit to evade judgment in the consolidated State litigation, (f) the Appellees "continue" to make negligent and false claims to a prescriptive Class VI highway across the Appellant's property in spite of this Court's previous Order of May 14, 2009 docket 2008-0550, (g) Appellees know first-hand that the false claims are still based on the same forged maps and falsified reports still on display in the local library, (h) there are still "genuine issues of fact" still in dispute that can only be properly resolved by a finder of fact, and (i) the Appellees misrepresented the use of tax dollars to force their own private agenda upon the Appellant in violation of the law? (App. at 4-6, 11, 64-73, 135, 136, 257-260), and (court hearing 9/5/08 transcript at 8-11, 24, 29, 38-41, 43, 48, 53).

**(7)** <u>Did the Court err</u>, in dismissing **Count VIII, Quiet Title**, where: (a) a cloud remains "today", as the Kelsey deed was never legally accepted by the town as required under common law, See Hersh v. Plonski No. 2006-782, Supreme Court of NH, 2007, (b) the Kelsey deed is in violation of RSA 477:47, (c) the notary of witness on the Kelsey deed was falsified by Appellee Randall Cooper, causing the Kelsey deed to be null and void, (d) the Appellees continue today to display falsified map[s], falsified tax maps and other falsified documents in the public library, on the internet, and in the town hall, that make false claims to a plethora of private properties including the Appellant's, and (e) the Kelsey easement attempts to grant rights over the abutting property which Kelsey did not own, which continues today to bring the Appellant's Title into question? (App. at 12, 64-73, 138, 235, 251, 260), and (court hearing 9/5/08 transcript at 10, 45-46, 53).

**(8)** <u>Did the Court err</u>, in dismissing **Count IX, Nuisance**, where: (a) the Court incorrectly stated the nuisance was "prior" to the State litigation, which is simply NOT the case, as the Appellant clearly pointed out that the nuisance was "during and after" the consolidated State litigation, (b) by allowing the Appellees to escape justice for "continuing" a nuisance upon the Appellant's property that still exists and continues today, (c) Appellee Robert King attempted at the 2008 annual town meeting to lay out a fire road over the Appellant's property in an effort to circumvent the consolidated State Court Order on the Merits by the Honorable Judge Fitzgerald, as Mr. King's attempted lay out was "without" Madison fire chief's knowledge or support, (d) trespass by the public by unauthorized motor vehicles continues "today" upon the Appellant's driveway/private road as promoted by the Appellees, and (e) Appellees continue "today" to classify the Appellant's property as a Public Highway in violation of Court Orders? (App. at 1-24, 64-73, 120-143, 251-261), and (court hearing 9/5/08 transcript at 55).

**(9)** <u>Did the Court err</u>, in dismissing **Count X, Vested Rights**, where: (a) the Court incorrectly noted that the Appellant should appeal the issue to the ZBA, even though there is a "question of law" to uphold a Court settlement that created the vested right, (b) the Court should have compelled performance of said Court settlement to re-issue said build permit under RSA 382-A:1-304, (c) by failing to consider that it is a "continuance" of an existing use as noted in <u>Dovaro 12 Atlantic, LLC v. Town of Hampton</u> No. 2007-219 and 2008-064, January 9, 2009, and (d) the permit was only revoked by the Appellees to use as bait/blackmail to evade judgment in the

consolidated State action, and in an attempt to gain Deeded rights for a private snowmobile club?
(App. at 1-13, 18, 64-73, 139-140, 251-261), and (court hearing 9/5/08 transcript at 33).
**(10)** Did the Court err, in dismissing **Count XI, NH Consumer Protection Act RSA 358-A**,
where: (a) the Court failed to uphold the law to protect the Appellant from the Appellees'
"continued" deceitful actions, (b) the Court should have applied the NH Consumer Protection
Act to town officials for their actions when charging fees for building permits, charging taxes for
town services or breaching settlement of litigation instituted by the Appellee town, (c) Appellees
made promises to deliver certain products and breached that promise, (d) Appellees failed to
inform Appellant of defects in said product and failed to warn of deceitful intent of revoking said
product without proper warning, (e) Appellees failed to warrantee said inferior product, and (f)
Appellees charged Appellant a fee for said Build Permit product which was defective?
(App. at 14, 64-73, 120-143, 251-261).

**(11)** Did the Court err, in light of confirmation of Appellees continued concealment of material
facts, admitted spoliation of evidence, continued perjury upon the court, continued abusive
treatment against the Appellant, and discovery of more concealed evidence that is material to the
causes of action?

**(12)** Did the Court err, by incorrectly applying res judicata, even where: (a) this litigation was
instituted "prior" to any final judgment of any other litigation, (b) litigation was not and could
not have been fully litigated due to concealment of material facts, (c) no final judgment was
made on any of the other causes of action, (d) Appellee Randall Cooper has "admitted" the lack
of acceptance of the Kelsey deed was not within the perameter of the other litigation, as the
acceptance issue was concealed, and (e) certain Appellees were not a party to any other
litigation?

**(13)** Did the Court err, by not applying the legal doctrine of Municipal Estoppel to the build
permit, where: (a) the Appellees falsely led the Appellant to believe that the Appellant would be
allowed to replace the existing dwelling with a new home in settlement of litigation instituted by
the Appellees, and (b) the Appellees changed their position with malicious intent causing breach
of contract, breach of Court Order and causing further damage to the Appellant?
(App. at 17), and (July 28, 2008 motion to amend to include estoppel).

**(14)** Did the Court err, by not applying the legal doctrine of Estoppel by Silence, regarding the
build permit, where: (a) the Appellees made false representations with full knowledge of the

xiii

falsity, (b) concealment of material facts caused injury, (c) Mr. Bourne to whom the representation was made was ignorant of the truth until after the permit was revoked, (d) the Appellees offered the build permit as bait, with the intention that the Appellant should act upon it, and (e) the Appellant was induced by the Appellees to rely upon it to the Appellant's prejudice?

**(15)** Removed.

**(16)** Removed.

**(17)** Did the Court err, by depriving the Appellant of an opportunity to present additional evidence at the limited hearing to dismiss, as the Appellant was further deprived of the opportunity to receive requested and concealed discovery prior to such hearing, which resulted in an adverse ruling in violation of due process, especially where Appellees concealed names of other individuals involved who have a potential of being named as additional defendants, and especially where "new" concealed evidence material to the causes of action were just discovered on or about June 29, 2009 that further supports the Appellant's due process rights were actually violated?

**(18)** Removed.

**(19)** Removed.

**(20)** Did the Court err, by dismissing **Count IV, Defamation and Liable,** Appellee Mr. King only, where: defamatory and libelous statements were published with "malicious intent" by way of e-mails and in the local newspapers, which Appellee King "admits" were stated as "fact", even though Mr. King knew the defamatory statements contradicted his earlier sworn admissions? Did the Court err, in dismissing certain e-mails as "privileged" as Appellee "private" citizen Mr. King sent them to town officials and carbon copied to over 100 Madison voters in a continued effort to influence their decisions to discriminate against the Appellant Mr. Bourne? Did the Court err, even though the U.S. District Court district of NH already Ruled that any of Mr. King's e-mail communications carbon copied to third parties waived any alleged privilege? Did the Court err, by not applying RSA 91-A:2, I (Supp. 2000) and Kenneth Webster Trust v. Town of Candia, Case No. 99-046, No 2000-348 Supreme Court of New Hampshire; Where this Court ruled there is no privilege regarding communications intended to influence town officials? Did the Court err, by allowing Appellee Robert D. King to escape sanctions from his admitted and premeditated spoliation of evidence? SEE App. at **301** for complete review of spoliation!

( App. at 10, 213-219, 301-354, 355-364).

## **Statements of Facts and Procedural History**

On or about 2/26/08 the Appellant petitioned the Court for further relief while other litigation

was still pending, and due to continued harassment and discovery of concealed evidence.

Recently, more "concealed" evidence was also discovered that supports the following: The

scheme to defraud the Appellant and other Madison property owners from their property rights

was implemented by Robert D. King in order to create new snowmobile and ATV trails over

private property, as he stated it: "*must be claimed on some other basis*", App. at 366, *"possible*

*second theory of town ownership", "Prescriptive claim based on adverse use 20 years prior to*

*1968 RSA 229:1",* and *"the town can undermine the credibility of our adversaries theory while*

*strengthening the court's sympathy for our claim based on RSA 229:1".* App. at 370. Mr. King

also stated: *"They are ashamed to think their land could be taken from them like candy from a*

*baby".* Appellee Mr. King and others implemented his scheme to defraud land owners, where at

the 1998 Madison annual town meeting Appellee Mr. King wrote and presented Article No. 24

to: *"establish a road study committee to document Class VI roads",* App. at 372. The town

voters naively approved the idea to create a Road study committee and Mr. King was not

appointed as a member, but then showed up, got appointed as an un-authorized member by his

friend, Henry Forrest. The other members consisted of snowmobile club members. Then Mr.

King proceeded to set the agenda App. at 384, write all the unfounded reports, do all the so-

called research and fabricate maps to support his fictitious Road claims, by claiming adverse use

20 years prior to 1968. App. at 392. The "new" prescriptive Road claims and Road extensions

were implemented over a plethora of private properties. Selectmen minutes dated March 10,

1998 noted a letter from Mr. King which stated: *"requests the deletion of funding for a surveyor*

*regarding Class VI road research".* App. at 373.

1

Mr. King's Road study committee continually violated land owner due process rights, where it: *"established its ground rules an official vote was taken not to contact abutters"*. App. at 380. Votes were taken over the telephone and meetings were held in secret at Henry Forrest's home without any recorded minutes. App. at 374-379. During the 2000 Madison annual town meeting voters were dishonestly tricked into accepting Mr. King's fictitious Road claims through another one of his unlawful petitioned warrant Articles in violation of RSA 39:3. The Article 21 was without proper notice to affected land owners, without any notice of the forged/altered maps, or background of how Mr. King implemented his scheme to create OHRV trails over private property. The town had no lawful right to accept or defend Mr. King's fabricated Road claims for private use, constituting an unlawful taking. **"It is an underlying principle of our government that money raised by taxation can be used only for public purposes and not for the advantage of private individuals". Opinion of Justices, 88 N.H. 484, 485 (N.H. 1937)**. Where the new Road and Road extension claims were without proper notice, constituted a violation of due process. See WALKER v. CITY OF HUTCHINSON, 352 U.S. 112 (U.S. 1956). Mr. King's scheme is also suspect, as the town's [previously] "detailed" historic road files found in the selectmen's office already had a complete list of every known road in complete detail, including the Leon Gerry road commission records from the 1970s that named each Road and described its start and end point. App. at 167-171. Ironically, town counsel Appellee Randall Cooper also withheld from the Court pertinent facts of his participation as the head of a Steering Committee in 1979 that compiled a complete list of which town roads needed to be reduced to Class VI status by town vote of 1980, therefore raising the question: **Why the need to have Mr. King make new claims to new roads or new road extensions never known to exist over private property?**

2

A "concealed" document dated Nov 29, 2001 written by Appellee Cooper, but only discovered on or about 6/29/2009, at the Jones deposition, noted that: "*I have reviewed the OHRV regulation as proposed by Mr. King*", and "*...for such a limitation is unconstitutional vague, and thus unenforceable*". App. at 399. Ironically, Appellees Cooper and his Firm never divulged this concealed document to the Appellant or the Court, especially when Mr. Cooper deceived the Court by claiming ***"Your Honor, that is absolutely wrong. We have provided him everything we have"***. App. at 713. But then Appellees Cooper and his Firm deceitfully requested the Court to enforce the very same unconstitutional OHRV regulation. The unlawful regulation is noted at 1 (defendant's motion to dismiss). Mr. King's road regulation included the new Solomon Harmon Road as a new snowmobile trail to access a remote corner of a conservation easement called the McNair property. The McNair property has 4000 feet of frontage on Goe Hill Road and Shawtown Road as shown on a 1972 survey Book 021 Page 029, therefore it does not require any additional access through the Appellant's property. The 1976 McNair property "easement" restricted the use of motorized vehicles and [restricts] the creation of any new trails. In 1979 the Non-accepted Kelsey foot trail is completely different and separate from the McNair property. There was [never] any snowmobile trail over the Appellant's property until [after] Mr. King falsely claimed prescriptive rights based on secretly forged maps. See old snowmobile map demonstrating no previous trail over Appellant's property. App. at 424. Due to Mr. King's 1998-1999 committee meetings held in secret at the home of Henry Forrest, App. at 374, it was then followed up by Riss v. Madison docket 02-E-0036 for RSA 91-A violations and an unlawful taking claim. Also see NH Supreme Court appeal docket No. 2004-0323, dated Oct 20, 2005 confirming the road study claims were unfounded. App. at 200 and App. at 785.

3

On 6/28/02 [prior] to the Appellant's purchase of the subject locus, the town falsely led the Appellant to believe that the town would prohibit the use of snowmobiles from the so-called new Solomon Harmon Road. App. at 425-426. The Appellees also illegally claimed the alleged dirt foot path through the Appellant's property to be a public Highway, without any real evidence to support such a claim, except an [altered] blister rust map and the [forged] Weston map. App. at 631. Mr. King later [admitted] for the first time on March 12, 2007 that he secretly falsified maps to support his fabricated Road reports. See App. at 266-270. and RSA 638:1, RSA 638:3. Town officials attempted to conceal how the town's new Road claim originated. App. at 714. Also [prior] to the Appellant's purchase of the subject property, the Appellees falsely led the Appellant to believe the town would grant the Appellant a build permit to replace the existing dwelling, persuading the Appellant to purchase said property. The town stated it required a liability waiver agreement, which was then modified by local attorney Judith Reardon, signed by town officials, and then recorded by the town in the CCRD on 8/20/02. App. at 438. Attached to the Judith Reardon agreement was a cover letter noting the agreement was [revised and to review]. App. 427. Relying on the signed and recorded modified agreement the Appellant then purchased the subject property on 9/30/02. See Deed App. at 443. It is interesting that town officials would enter into a binding agreement before the Appellant even owned the property. Following the purchase of said property with town counsel permission the Appellant installed an un-locked steel gate within the subject property, then town officials ordered the highway department to rip it out without due process, just in time for the Appellees pre-planned snowmobile trail. App. at 176 and 399. Shortly thereafter, the town filed an injunction (docket 03-E-005) against Mr. Bourne to rescind the agreement modified by attorney Judith Reardon. Unknown at that time, the request to file suit to rescind the agreement came from Mr. King and other snowmobile club

members. The town also requested the Court to prevent the Appellant from stopping the unlawful trespass of snowmobiles through the front yard that [endangered] the Appellant's children. A settlement was coerced where Appellees withheld critical material facts, and denied the [1st] build permit in order to force the Appellant to rescind the Judith Reardon agreement. App. at 455. The Appellant was only granted the build permit, App. at 462, after the Judith Reardon agreement was rescinded, a new agreement was signed, App. at 465, and the "limited" settlement included a provision that the Appellant Mr. Bourne reserved the right to challenge and clarify the legal status of the so-called right of way. App. at 464. The selectmen deceitfully claimed the so-called trail could be relocated to a safer location, but then denied that offer after the Reardon agreement was rescinded. App. at 514. During the coerced 2003 settlement, at NO time did the Appellees disclose or warn the Appellant of their pre-approved plan to implement ATVs. App. at 408. The Appellees even concealed Mr. Cyr's, Mr. Charrette's, and Mr. Jones' involvement, and even concealed Mr. King's scheme to create new snowmobile and ATV trails over private property. The Appellees also [failed] to disclose their knowledge of falsified maps, the falsified notary of witness on the Kelsey easement, the lack of acceptance of the Kelsey deed, and especially the involvement of Bureau of Trails [Paul Grey]. App. at 798. During the consolidated State litigation, Appellees even sought law changes to circumvent the litigation and to implement ATV use. See H.B. 1166 App. at 415. The Appellees also [failed to inform] the Appellant that they would breach the [new] 2nd agreement by: (1) revoking the build permit a 2nd time, (2) obstructing all access road repair, and (3) obstructing all attempts to instill utility service, despite the 2nd license agreement. App. at 465. This obstruction and breach of written agreement was implemented by the Appellees to allow the unlawful trespass of snowmobiles. App. at 473-488. Breach of Court settlement and failure to disclose material facts, are noted in

5

Rothenberg v. Kamen, 735 F.2d 753 (2d Cir. 1984) where; *"The court remanded the case to the trial court, finding that appellant raised a colorable claim of fraud by appellees to induce him into entering into a settlement agreement".* The instant action was filed on or about 2/28/08, while the consolidated State case was still pending and while other claims like interference with access maintenance and obstruction of utility service were still pending in the federal court, now subject to 1st Circuit Court of Appeals. The selectmen's pre-approved "snowmobile regulation" as noted at 1 (defendant's motion to dismiss), is suspect to why the Appellees counsel [again] failed to inform the Court that the unlawful snowmobile regulation was actually secretly devised by Appellee Mr. King. A "concealed" Nov 29, 2001 letter was recently discovered at the Jones deposition on or about Jun 29, 2009 confirming in fact, that Appellee Cooper concealed the document because he warned the other Appellees that the regulation was *"unconstitutionally vague and thus unenforceable".* App. at 399. Even Appellee King continued to hide this fact as of July 16, 2008 where Mr. King under the pains of perjury claimed to the Court that: *"...of his motion that Mr. King even recommended to the selectmen to open new Roads to snowmobiles is a blatant falsehood..."* See App. at 396-399. and RSA 641:1 In violation of professional ethical rules, Mr. Cooper concealed this document and then requested the Court to enforce the very same snowmobile regulation against the Appellant. At NO time did Appellees Cooper or his Firm ever disclose these material facts to the Court or to the Appellant. Even attorney Cullen assisted the Appellees in hiding these documents. App. at 722. Throughout the 2nd litigation known as the consolidated State action, dockets 03-E-0061, 03-E-114, 03-E-0144 and 05-E-0014 where the Appellant was forced to defend against many unlawful claims. At NO time did the Appellees ever disclose the lack of legal acceptance of the Kelsey foot trail easement, nor did they ever disclose that they were acting outside of their official capacity on behalf of Mr. King,

6

and for the local snowmobile and ATV clubs private interest. App. at 652, 654, 685, 686, 688, 758, 776, 801, 803. Appellee Mr. Cooper even committed perjury when falsely testified to the Superior Court that: *"we have provided Mr. Bourne with everything we have".* APP. at 713. The Appellees never disclosed Mr. King's premeditated forging of maps. App. at 657. Nor did they ever give notice of the falsified affidavits that contained falsified notary of witnesses added as a third page, when no notary was present when the affidavits were signed. App. at 157 and 161. The Appellees even approved a road lay out petition, by blackmailing a neighbor Mr. Davis by withholding his build permit and driveway permit, APP. at 596, unless he petitioned the town to lay out the very same road that the town already claimed existed. App. at 597. In addition, see perjured testimony of selectman John Aruda, App. at 590, and confirmation by Mr. Davis. App. at 593. Also see concealed letter admitting to pre-empt the litigation. App. at 600. Ironically, the federal court found the Appellees in [contempt] for withholding court ordered discovery, where Appellees [only] produced a "limited" amount of redacted documents [after] the consolidated State cases had [already] gone to trial. App. at 84. The new documents previously concealed demonstrated the Appellees knew all along they were prosecuting a frivolous claim against private property [out of spite] at the taxpayers' expense. App. at 610, 615, 617, 618, 620, and 627. Next at the advice of Mr. King, the Appellee town has since modified the zoning bylaws to prohibit and limit the Appellant's future use of said property. Because the Appellant dared to defend his property from an unlawful taking, the Appellees continue "today" to publish false claims against the Appellant's Title in spite of the 8/10/07 Court Order and especially in spite of this Court's May 2009 Order. App. at 537. The Appellees malicious contempt of Court Orders and slander of Title continues today. See App. at 233, 644, 669, 672, 734, 760, 784, 789, and 814. The continued slander of Title, promotes continued trespass of snowmobiles upon the

7

Appellant's access right of way causing further damages. See Photo App. at 733, and 734. In an effort to harass the Appellant even further and to circumvent this Court's previous Orders, Appellee Mr. King also attempted to have the town lay out a fire road through the Appellant's front yard. App. at 147. Throughout the Appellant's entire time of ownership of the subject property, Mr. King, Mr. Cooper and his Firm have actively behind the scene worked diligently with malicious intent to influence every decision made by town officials to interfere and obstruct all reasonable use and enjoyment of the subject property, which included but not limited to: (a) revoking the Appellant's build permit a 2nd time, (b) denying two subdivision requests, (c) [preventing] the installation of electrical service, (d) preventing access road repair, (e) promoting an unlawful snowmobile and ATV trail through the Appellant's front yard, and (f) even "attempting" multiple times to have the Appellant arrested on false charges fabricated by Appellees Mr. King and Mr. Cooper. In part App. at 600. With malicious intent, Appellee Mr. King stated to town officials: *"try to find way to deal with Bourne that is much more costly to him..."*, in addition, Mr. King even had the nerve to falsely accuse the Appellant of criminal forgery of a document that was actually forged by collusion efforts by, Arruda, Graves and Malisa Arias Shackford as outlined by Mr. King, constituting another libel claim. See App. at 427-437 and 765. Just recently [more] concealed documents were discovered [again] on or about 6/29/09, at the Stephen Jones deposition. See in part App. at 399, 408-414, and 453. More disturbing documents were also discovered at the Jones deposition demonstrating that Mr. King has been continually publishing with malicious intent, additional derogatory, defamatory and libelous communications to town officials, and other members of the public in an attempt to negatively influence their decision making process, which has led to further discrimination against the Appellant. App. at 358-364. All of the Appellant's future plans to move to Madison

8

full time and start a new business, have been permanently damaged and halted by the Appellees malicious actions. The Appellees have no legitimate public purpose for continuing to limit the Appellant's use and enjoyment of the subject property, or for their continuation of making fraudulent claims against the Appellant's Title. The Appellees continued efforts are an abuse of power so arbitrary that this Court should finally afford the Appellant relief under State law, or under the Constitution of this State. Private property enjoys a special protection under the Bill of Rights of N.H. Const. pt. 1, arts. 2 & 12. Municipal officials having authority to adopt ordinances and regulations have a "**constitutional duty**" to observe these protections. They may not attempt to extort from a citizen any right without just compensation for a legitimate use of any part of his property and only subject him to reasonable regulation, not malice obstruction. See Shahi v. Madden, 949 A.2d 1022, 2008 WL 615079 (2008) and Funtown USA v. Conway, 127 N.H. 312 (N.H. 1985) and Metzger v. Town of Brentwood, 117 N.H. 497, 501 (1977) (emphasis added). So far the Appellant's money damages add up to approximately $400.000.00 and still rising.

**The Court should also consider making the Appellant whole again by enforcing:**

**N.H. RSA 651:61-a** "...repayment, in whole or in part, by the offender to the victim can operate to rehabilitate the offender". Concealed documents from Jan 2003 through Nov of 2004, are still being concealed. App. at 335, 715, 720, and 724. Once this Court made its final ruling on the Riss v. Madison case, NH Supreme Court appeal docket No. 2004-0323, dated 10/20/05 there should have been no question that the Appellees actions were abusive and unfounded. Since Mr. King admitted to hand drawing in the missing road on the only supporting map, the discovery of many other forged maps, and the criminal road layout to evade judgment, the Appellees had more than enough notice to stop. Mr. Cooper and his Firm knew in fact that they were

9

prosecuting baseless claims against the Appellant's property and against other unsuspecting land owners as well, but that was never their concern, since the Madison tax payers and Mr. Bourne continually got stuck with the bill. The Appellees have no legitimate reason for continuing this abuse [today], except to continue the discrimination against the Appellant in retaliation. In newly discovered documents demonstrate Appellees continue harassing other land owners as well, therefore it is time this Court makes an example out of the Appellees for their abusive tactics, and finally make things right. See App. at 685-688.

## STATEMENT OF THE CASE

Due to discovery of "concealed" evidence material to ongoing claims against the Appellant's property, the Appellant was compelled to seek relief. The Appellant is not re-litigating any cause of action previously ruled in favor of the Appellant within the 2003-2009 consolidated State action, where the lower Court and this Court both agreed there is no Class VI highway of any kind leading to or over the Appellant's property. The lower Court has confirmed that there: *"was insufficient evidence to show that members of the public had used the road for twenty years under a claim of right".* Id. at 4 (Court Order Dec 7, 2008). But unfortunately Appellees continue today with their abuse, compelling the Appellant to seek relief again.

## COUNT I
## Common Law action for Slander of Title:

The lower Court in error, asserted that the "Kelsey deed" being fraudulently notarized and [never] legally accepted by the town was somehow cured by RSA 477:16. To the contrary, if a land owner would like to throw open his property to public use, then "requiring" the town under RSA 31:95-e to hold a public hearing, have recorded public vote, recorded public acceptance, to accept, to build, to maintain, and to be liable for its use. No exception. The Court in error, also failed to consider the Appellees continued bad faith, as Appellees willfully "concealed" that the

10

town had no record of acceptance. So in light of these additional requirements under State law, in order to prevent unjust burdens thrust upon a town, there must be unequivocal recorded acceptance. See Hersh v. Plonski, 156 N.H. 511 (N.H. 2007). The lower Court somehow confuses res judicata, when in fact "concealment" of material facts are evident, litigation was not final, and the Appellant's property Title is still defective. See Sinclair v. Brill, 857 F. Supp.132, 1994 U.S. Dist. LEXIS 9512 (D.N.H. 1994). The lower Court cannot approve deeded rights to the town, for failure of the Appellant to discover material facts that were deceitfully concealed time after time, and then reward the Appellees for their deceitful, malicious and criminal behavior. See applicable statutes: RSA 31:95-e, RSA 508:2, RSA 638:2, RSA 638:11, RSA 642:3(d), RSA 641:1, RSA 641:6, RSA 641:7, RSA 637:3, and RSA 649:5. Where Appellees knew there was no legal acceptance of the Kelsey foot trail easement by any official public meetings, notice, or recorded vote, they then attempted all possible ways of concealment. "Even perjured interrogatories". Due to this fact, Appellee Mr. King has recently admitted on Sep 3, 2008 that he and his attorney Mr. Cullen answered interrogatories signed by selectman John Aruda, which in fact was another attempt to hide the lack of acceptance of the Kelsey Deed. See **App. at 745 and 749**. Now after committing perjury, the town [admits] for the first time that it has NO record of any acceptance. App. at 75 and 77. Also See **Feld's Case** No. LD-97-009 NH Supreme Court 149 N.H. 19; 815 A.2d 383; 2002 N.H. The Court in error, failed to acknowledge that the town of Madison had already failed to demonstrate any adverse use in order to accept the paper foot trail "novelty" easement. The 8/10/07 Court Order confirmed, "*that there was insufficient evidence to show that members of the public had used the* (easement) *for twenty years under a claim of right*". Id. at 4 (court order 12/7/08). and at 13 (court order 8/10/07) App. at 531. Under, *Catalano v. Town of Windham,* 133 N.H. 504, 510, 578 A.2d 858

11

(1990). "Limited use by the lot owners or by neighboring owners . . . does [not] rise to the height of unequivocal acts of acceptance by public use" *McInnis v. Town of Hampton,* 112 N.H. 57, 61, 288 A.2d 691 (1972). Next, the Court in error, at 7 (12/7/08 order) cites; Pettee v. Young, 2001 ME 156 (Me. 2001) for support, but just the opposite, as Pettee v. Young actually supports the Appellant's claims, as *"the appellate court remanded the action, because the slander of title ruling was based on a misinterpretation of the landowner's rights under the deed, that ruling had to be vacated and the slander of title claim had to be reconsidered".* The lower Court also ignored the appellant's financial damages incurred as a result of the Appellees' concealment of material facts, including Appellees fraud on the Court, where they attempted to conceal they had no rights of reservation. The lower Court also failed to address the invalid attempt to grant an easement over an easement over property that the Kelsey's did not own. Res judicata does not apply, as this action was timely filed prior to any final judgment in the consolidated State cases. In addition, when selectman Aruda was questioned on 3/12/07 if the Kelsey deed was ever accepted, Appellee Cooper represented to the Court at 54 that the acceptance; *"issue is not in front of this case as to whether it's properly accepted or not".* App. at 613. Due to concealment of facts that were material, and continued abusive treatment the Appellant has an automatic right of second suit under RSA 508:10 White v. Schnoebelen, 91 N.H. 273 (N.H. 1941). Despite this Court's Order confirming no Class VI Road ever existed, the Appellees' "continue today" to claim a Class VI highway to and over the Appellant's property out of ill will. The Appellees continue to promote the trespass of snowmobiles upon the Appellant's access right of way, in an effort to further harass the Appellant, which should now be considered willful [contempt]. App. at 733 and 734.

.

## COUNT II
## Negligence:

The lower Court in error, failed to apply "Duty of Care" as the Appellees exercised control and continued unreasonable interference over the Appellant's property. Therefore, the Appellees control over the Appellant's property creates a "duty of care". Doucette v. Town of Bristol, 138 N.H. 205 (N.H. 1993). The lower Court also in error overlooked "obstruction of justice", perjury, and willful "concealment" of material facts. In addition, the lower Court in error failed to apply "Estoppel by Silence", where Appellees failed to disclose material issues, which resulted in a severe hardship upon the Appellant. It is quite clear that the Appellees' actions are completely negligent when: (a) revoking a build permit a 2nd time to use as "leverage", (b) deceitfully refusing to re-issue said permit, (c) continuing to fraudulently misrepresent material facts against the Appellant's property today, (d) concealing material facts such as the falsified notary of witness on the Kelsey Deed, (e) perjured answers to interrogatories in an attempt to conceal the lack of acceptance of the Kelsey deed, (f) secretly forging more map[s], and (g) fraud on the Court by way of perjured testimony, concealment of material facts and submitting forged and falsified evidence. Attorney Cooper and his Firm acting on behalf of all Madison land owners and residents, owes a "duty of care" to such a higher standard requiring the Court to hold Mr. Cooper and his Firm liable for the confirmed abuse. Anything short of that would create a negative stigma upon this Court for tolerating and condoning such abuse. Attorney Cooper [admits] "an attorney can be held liable for fraudulent misrepresentation to an adversary of the attorney's client". App. at 569. This Court has previously stated that; *"To prove actionable negligence, a plaintiff must establish that the defendant owed a duty to the plaintiff, breached that duty, and that breach proximately caused the claimed injury".* Carignan v. N.H. Int'l

13

Speedway, 151 N.H. 409, 412 (2004. Conspiring to promote a "private" snowmobile and ATV trails over private property is <u>not</u> within the normal function of any town official or town counsel representative, therefore allowing the Appellant to seek full compensation for the Appellees' deceit. <u>Merrill v. Manchester, 114 N.H. 722 (N.H. 1974)</u>. The Appellees have and continue to use tax dollars for their own private agenda. Recently, Mr. King and snowmobiler Dave Charrette have admitted that the Appellees and town officials have conducted "secret" meetings with the snowmobile club leaders to discuss the Appellant's property in violation of RSA 91-A. See App. at 649-652, and 750. The defendants concealment of material facts has certainly violated the Appellant's due process rights, therefore tolling the statute of limitation. See <u>Sinclair v. Brill, 857 F. Supp.132, 1994 U.S. Dist. LEXIS 9512 (D.N.H. 1994).</u>

*"The parties must be permitted to scrutinize <u>all</u> relevant evidence so that each will have a fair opportunity to present its case at trial."* <u>Nestle Foods Corp. v. Aetna Cas. and Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990)</u> (citations omitted). When the Appellees willfully concealed discovery of "material" facts, and held secret meetings, which in turn had a "negligent" impact that caused extreme injury to the Appellant. Newly discovered concealed evidence that is material, now allows the Appellant to seek relief for <u>previous injuries</u> incurred, <u>present day</u> injuries, and for any foreseeable <u>future</u> injury.

Under NH RSA 651:61-a the Legislature stated: *"It also finds that repayment, in whole or in part, by the offender to the victim can operate to rehabilitate the offender. It is the purpose of this act to establish a presumption that the victim will be compensated by the offender who is responsible for the loss".*

The evidence before this Court demonstrates the Appellant has provided a viable claim for negligence. Then pursuant to the language of <u>RSA 651:61-a</u>, I, the Court must presume that the Appellees will compensate the victim/Appellant and the party wishing to rebut this presumption would, logically, bear the burden of proof. <u>State v. Shannon, 155 N.H. 135, 920 A.2d 1163, 2007</u>

14

N.H. LEXIS 40 (2007). Newly discovered concealed documents only produced by snowmobile club president Stephen Jones on or about "6/29/09" confirm in fact that the Appellees knowingly intended to deceived the Court, in order to harm the Appellant. See App. at 419, 627, 453, 649, and 652.

### Count III
### FRAUD

The Court in error, at 9 (Dec 7, 2008 court order), asserting <u>Brzica v. Trustees of Dartmouth College, 147 N.H. 443 (N.H. 2002)</u> was controlling in order to dismiss the cause of action for fraud. But contrary to the lower Courts assertion, <u>Brzica v. Trustees of Dartmouth</u> actually supports the Appellant's claims, as this Court previously stated:

 *"Fraudulent or deceptive conduct <u>can be actionable</u> under the New Hampshire Consumer Protection Act, specifically <u>N.H. Rev. Stat. Ann. § 358-A:2</u> (Supp. 2001), if it occurs in a business setting..., <u>or service as part of the day-to-day business of the defendant.</u>*

Here in the instant case, the Appellees falsely led the Appellant into ligation to determine the allowable uses of the Kelsey deed, when in fact the Appellees knowingly "concealed" they knew all along that the Kelsey Deed was <u>not</u> legally valid. App. at 547, 548, 556, 566, 568, 609, 618, 627, and 781. Mr. Cooper's fraudulent notary of witness on the Kelsey Deed, and the fact it was <u>never</u> legally accepted by the town automatically voided the Deed. App. at 562. The Appellees also "falsely" claimed to the Court and to the Appellant that the Kelsey Deed allowed motorized vehicles by the public, when in fact the Appellees knowingly again "concealed" they knew all along that it did <u>not</u>. App. at 561. Defendant Cooper admits he can be held liable for "*fraudulent misrepresentation*". App. at 574. The defendants continued their unfounded claims just to burden the Appellant as outlined by Mr. King. App. at 453 and 683. The Appellees fraudulently compelled the Appellant into litigation based on forged documents, which defendants secretly "concealed" in violation of RSA 641:6. The secretly forged documents only came to light after

15

Mr. King was "caught red handed" and finally "admitted" to secretly forging maps. App. at 657,

662, and 663. The Appellees have a sworn duty to uphold the law, a duty to be free from

collusion and deceit, and a duty of fiduciary responsibility as the relationship of a controlling

representative of the town to its individual land owners. The Appellees' fraudulent

misrepresentations to the Appellant and to the Court has caused severe injury. See Chewning v.

Ford Motor Co., 354 S.C. 72 (S.C. 2003). The Appellant has clearly shown that the Appellees

continually and fraudulently misrepresented facts to the Court and to the Appellant's detriment

noted in part: (a) the "continued" falsified Class VI road claim, (b) any rights falsely alleged in

the Kelsey Deed, (c) the granting of the build permit and then deceitfully revoking said permit a

2nd time to use as "leverage"(d) the coerced settlement of previous litigation, including its

coerced release, (e) secretly forged map[s], (f) the phony road layout implemented through

extortion, (g) the concealment of documents that were material, (h) the secret snowmobile and

ATV agenda, (i) blocked access maintenance and obstruction of utility service, (j) perjured

answers to interrogatories and depositions, (k) falsified notary of witness on the Kelsey

easement, (l) perjured testimony upon the Court, (m) putting in false evidence upon the Court,

(n) tampering with public documents, (o) knowingly submitting the deceptive affidavit of Robert

D. King, and (p) concealment of names of other individuals directly involved. Robert Babine

made a fraudulent representation when he granted the build permit, which the Appellant relied

upon, then Mr. Babine again made another fraudulent representation when he revoked the Build

permit a 2nd time per order of the other Appellees. App. at 497and 40-47. Since Mr. Babine's

fraudulent representations, App. at 497, and at 40-47, the Appellee town has since [admitted] on

Jan 15, 2008 that in fact the build permit was actually revoked because the Appellant dared to

institute "litigation" and not because of the fraudulent out of current use claim. See App. at 513.

16

*"To establish fraud, a plaintiff must prove that the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it"*. Snierson v. Scruton, 145 N.H. 73, 77 (N.H. 2000).

The concealed facts are material and the continued fraudulent misrepresentations went on for many years, and continue[s] today, which constitutes a continuing fraud upon the Appellant and upon the Court. Just because Appellee King was caught red handed and only admitted at trial on March 12, and13, 2007 App. at 657, that he secretly made "twenty two" alterations to the map, including adding the road to it", (Fitzgerald Order at 9) these late admissions do not relieve the Appellees of liability. The concealed material facts were withheld in order to cause the Appellant extreme financial pain as outlined by King. App. at 765. If a murder suspect admits to a murder only at trial, that in itself would not relieve any liability, the same liability is true here. **Attorney Cooper's Concealment of the fraudulent notary of witness on the Kelsey Deed, and concealment of lack of acceptance is actionable.** Conrad v. Hazen, 140 N.H. 249 (N.H. 1995). Fraud consists of anything calculated to deceive, whether by a single act or combination, or by suppression of truth. "New Hampshire law recognizes that the procuring of a contract or conveyance by means of fraud or negligent misrepresentation is an actionable tort, and hence can be raised as a defense to a claim based on the agreement". Nashua Trust Co. v. Weisman, 122 N.H. 397 (N.H. 1982). The Appellant has demonstrated all of the necessary elements required to prove actionable fraud, supported by compelling evidence, which in part consist of: (1) willful concealment of material facts, (2) confirmed perjured testimony, (3) admitted forgery, (4) confirmed perjured answers to interrogatories and depositions, and (5) admitted spoliation of incriminating evidence. Additionally, the Appellees continue "today" to post on the internet, in the local library, in the town hall and even in the local news papers fraudulent adverse claims to

17

the Appellant's property in spite of this Courts earlier Orders. See App. at 760, 781-791, and

814. Due to the continued abusive, malicious treatment, and continued interference with all

reasonable use and enjoyment of the subject property, the Appellant is left with no other choice

but to seek relief again. See Shahi v. Madden, 949 A.2d 1022, 2008 WL 615079 (2008).

Due to the fraudulent concealment of material facts by the Appellees, the statute of limitations is

tolled, and now allows the Appellant to seek further relief. See Sinclair v. Brill, 857 F.

Supp.132, 1994 U.S. Dist. LEXIS 9512 (D.N.H. 1994). The Appellees cannot intentionally hide

and destroy incriminating evidence and expect to be shielded. See **RSA 642:3 Hindering**

**Apprehension or prosecution.** Decisions concerning pretrial discovery abuse are noted in the

Matter of Maynard & Maynard, 155 N.H. 630, 636, 930 A.2d 1195 (2007). Here in the instant

case, the lower Court's ruling is simply wrong, which only promotes further abuse, as the

Appellees counsel deliberately misinformed the Court of material facts in order to escape

liability. Appellee Mr. King has also "admitted" to spoliation of evidence, material to the

Appellant's claims. App. at 301-354. In addition. Appellee King has committed perjury multiple

times in answering interrogatories in this case. See App. at 753-755. Mr. King has also submitted

verified pleadings under oath that also contain additional perjured statements in this case. See

App. 394-399. Recently new documents were discovered on or about June 29, 2009 that proves

Appellees intent for revoking the Appellant's build permit was actually to use as "leverage" in

order to extort deeded rights for the snowmobile club. See App. at 358, and 507. The Appellees'

coercion was used to retaliate against the Appellant for defending his property rights, clearly

outlined by defendant Robert King in newly discovered concealed documents. See App, at 448,

453, 501, 566, 599-603. By revoking the Appellant's build permit a [2nd] time, Appellees were

now in "contempt" of previous Court Orders approving said coerced settlement. The newly

18

discovered documents were claimed <u>not</u> to exist, as Appellee Mr. Cooper willfully perjured his testimony. See App. at 713. Even Appellees counsel Mr. Cullen has deceptively concealed additional material evidence App. at 722, and falsified answers to interrogatories to assist his clients. See App. at 749 and 745. This concealment even continues in spite of the contempt order to produce discovery, App. at 84. Once again more concealed evidence was recently been discovered at the Jones deposition on or about June 29, 2009 in part. App. at 801-804, 806, 807, 809-812. The lower Court in error applied res judicata, even though the evidence before the Court clearly pointed to continued concealment of material facts and continued abusive treatment. The Appellant can prove by clear and convincing evidence that: (a) Appellees made a plethora of fraudulent representations, (b) efforts to conceal material facts, (c) fraudulent representations with full knowledge of their falsity, (d) the Appellant was ignorant of the truth of the matter do to concealment of material facts, (e) the representation by the Appellees were made with the intention that the Appellant and the Court should rely and act upon them, and (f) the Appellant was induced to act upon it to his prejudice. In addition, the reliance was based on authorized representations by town officials and representations by Mr. Cooper as secretly outlined by Appellee Mr. King. App. at 399, 410-414, 428-430, 448, 449, 453-454, 516-517, 545, 599-603, 618-630, 649-652, 732, and 781. In addition, Mr. Cooper and his Firm fraudulently concealed from the Court and from the Appellant, that the Jan 2002 snowmobile [regulation] at 1 (defendants motion to dismiss) previously and unlawfully enforced by the Court at Appellees request, was actually secretly written and devised by Appellee Mr. King. See concealed document, App. at 399. At <u>no</u> time did any of the Appellees divulge Mr. King's involvement or that the new snowmobile regulation was part of Mr. King's elaborate scheme to create OHRV trails over private property. On <u>July 16, 2008</u> Appellee Mr. King continued to

19

commit perjury upon the Court in an effort to hide his involvement in the snowmobile regulation.

See App. at **396 and 399**.

**Under RSA 311:6 Oath.** – "Every attorney...will <u>do no falsehood, nor consent that any be done in the court</u>, and <u>if you know of any, that you will give knowledge thereof to the justices of the court</u>,...

Due to the deceitful circumstances involved, the lower Court had a "Duty to Remove" the Madison town officials involved under <u>RSA 42:1-a,</u> order charges be brought against attorney Cooper and his Firm, and order criminal charges be brought against Mr. King, but not condone their deceitful, malicious, and criminal behavior. Appellee Cooper has made a mockery out of the Court by knowingly committing perjury, submitted falsified evidence, and concealing critical material facts for deceptive purposes, such as in part: (a) submitting a forged cover letter, (b) submitting altered tax maps, (c) submitting the forged Herbert Weston map, even after Mr. Cooper was previously given notice by the judge Houran in the Riss v. Madison case that ruled the Weston map was unreliable at 6, App. at 205, (d) submitting the falsified Herbert Weston map after Mr. King admitted to secretly altering it, (e) submitting the deceptive affidavit of Mr. King, App. at 97, (f) deceitfully giving perjured testimony to avoid discovery, App. at 713, (g) Cooper even attempted to hide his falsification of notary of witness on the Kelsey Deed, App. at 59, 562, and at 10 (court hearing Sep 5, 2008), (h) Cooper also gave perjured testimony to avoid a contempt motion, App at 470-488, (I) Cooper even attempted to use the build permit as bait to evade Appellant's objection to the blackmailed road layout, App. 507, (j) actively participated in hiding the lack of acceptance of the Kelsey Deed, (k) actively participated in Mr. King's scheme to create unlawful trails through private property, and (l) concealed from the court that the Kelsey deed unlawfully attempted to grant an easement over an easement over a neighboring property that Kelsey did not own, App. at 556. Defendant Cooper and his Firm also participated

20

and assisted selectman Aruda in blackmailing Dave Davis into petitioning the town to lay out a

road where the town already claimed one existed, by deceitfully withholding his build permits in

order to force him to file a Road lay out petition. App. at 596 and 597. Mr. Cooper has even

falsely claimed to the Court that he had a plethora of witnesses to prove the prescriptive road

claim of adverse use 20 years prior to 1968, when in fact he knew he had none, just to undermine

the Court's ability to rule on summary judgment. See foot note App. at 771. Next, Appellee

Cooper again withheld incriminating evidence when he was deposed and refused to answer any

questions presented. App. at 55.  Appellee Cooper even participated in aiding and abetting in Mr.

King's "attempted" plan to have the Appellant arrested on fabricated charges. App. at 600.  See

Feld's Case No. LD-97-009 NH Supreme Court 149 N.H. 19; 815 A.2d 383; 2002 N.H.

Permanent Disbarment should not be overlooked and the Restatement makes it clear that lawyers

can be subject to civil liability to non-clients under many of the same circumstances as non-

lawyers. Town officials also must be held accountable. The manner of dismissing a town officer

who violates the oath as set forth in RSA 42:1 shall be by petition to the superior court for the

county in which the town is located. Next, **Perjured testimony in an attempt to evade**

**judgment**: during a deposition of selectmen John Aruda who willfully gave perjured testimony

when asked at 143: App. at 590.

**Question:** *"So in addition to the matter involving Dave Davis--well, on that particular question did anybody on the board of selectmen to your knowledge approach Dave Davis to ask him to submit a petition for laying out a Solomon Harmon Road?"*
**Answer:** *"No, Well , I can only speak for myself".*

When Dave Davis later testified on March 12, 2007 at 96 he confirmed selectman John Aruda gave perjured testimony. see App. at 593 as Mr. Davis testified:

**Question:** *"So as you testified at your deposition, you got the idea to layout the Road from a conversation you had with Mr. Aruda?"*
**Answer:** *"True".*
**Question:** *"And he actually gave you the information to do that, to lay out the road?"*

21

**Answer:** *"True".*

Next, selectman Aruda was asked at 144, questions related to the Dave Davis permit issues:

**Question:** Did you ever have a problem or did the board ever have a problem with his Quonset hut in any fashion?
**Answer:** "No".

Then, see John Aruda's letter denying Mr. Davis his permits, confirming Aruda testified falsely

again. App. at 596. Also see United States of America v. Robert J. Gagalis, et al. Case No. 04-cr-

126-01/06-PB U.S. District Court of New Hampshire. and Munson v. Raudonis, 118 N.H. 474,

479, 387 A.2d 1174, 1177 (1978), and "When the act involved is wanton, malicious, or

oppressive, the compensatory damages awarded may reflect the aggravating circumstances".

Crowley v. Global Realty, 124 N.H. 814 (N.H. 1984).

## COUNT IV
### Defamation and Libel

The lower Court in error dismissed Mr. King's malice, defamatory, and deceitful libel published

communications as if they were stated as an "opinion", But in fact Appellee King [admitted] that

he considered the "derogatory" and malice statements as "true statements". App. at 753.

Therefore, the derogatory, defamatory, and deceitful communications published as "fact" are

actionable. RSA 644:11, RSA 354-A:19, and Pierson v. Hubbard, 147 N.H. 760, 763 (2002). If

defamation is established, the plaintiff may seek damages for harm to his or her reputation. "He

need not prove these damages specifically." Id.; see Restatement (Second) of Torts § 573 (1977)

("One who publishes a slander that ascribes to another conduct . . . that would adversely affect

his fitness for the proper conduct of his lawful business . . . is subject to liability without proof of

special harm."). See Thomson v. Cash, 119 N.H. 371, 376 (1979). The derogatory and malice

influence over town officials and other members of the public has caused in part approximately

$400,000.00 in "actual" damages to the Appellant. Mr. King's ill will was motivated to

undermine the Appellants objections to: concealed discovery, forged maps, fabricated reports, falsified affidavits, and Mr. King's elaborate scheme to create OHRV trails over private property. The lower Court in error at 5 (court order dated Feb 5, 2010) asserted certain defamatory statements published by King on Nov 6, 2003 were barred by the statute of limitations RSA 508:4, when in fact those e-mail communication to over 100 Madison voters were [concealed] and only discovered on or about June 29, 2009, App. at 414, therefore concealment tolled any statute of limitations. Sinclair v. Brill, 857 F. Supp.132, 1994 U.S. Dist. LEXIS 9512 (D.N.H. 1994). Mr. King's deceitful libel and defamatory published communication stated as "fact" published in the local news papers or by e-mail, consisted of, in part: "sick mind", "pathological liar", "nut case", "sociopathic characteristics", "alterations of a certain map are delusional", "con man", "this person spews falsehoods and misrepresentations at a rate and in a quantity that should win him a place in the Guinness Book of World Records", false criminal claim- ""Aggressively seek Bourne's criminal prosecution for the "forged" document he submitted..."", "no compunctions or conscience",  "it's long past time to take off the gloves with this guy", "try to find way to deal with Bourne that is much more costly to him...", "Bourne's tediously repetitive false accusations", "Bourne's outrageous lies", "Bourne's falsehoods", "Bourne is a pathological liar,...a rare but evil gift", "callous Mr. Bourne dishonors the memory of this noble pioneer family", and so on. In part App. at 33, 414, and 761 -776.

The lower Court in error at 3 (court order dated June 11, 2009) stated that:

*"statements Mr. King made in his e-mails fall within the absolute privilege afforded to statements during judicial proceedings".*

Contrary to the Court's error, all communications sent by "citizen" Mr. King to town officials as ex parte communications would be considered public documents. Even attorney Cooper admits there was no client relationship with Mr. King. APP. at 57. Next, any communications sent to

23

town counsel carbon copied to co-defendants and snowmobile club members "again" automatically waived any so-called privilege. The malicious communications published were carbon copied to over 100 members of the public, which were then discovered in part at the Jones deposition on or about June 29, 2009 demonstrating again any such alleged privilege was automatically waived. In addition, Under the Right to Know law, applies to isolated conversations among individual members outside of public meetings, when conversations and e-mail communications were planned or intended for the purpose of discussing matters related to official business and the public entity made decisions during them, RSA 91-A:2, I (Supp. 2000). Communications from Appellee Mr. King sent to town officials for the purpose of guiding their decisions automatically becomes public communications under the law. See Kenneth Webster Trust v. Town of Candia, Case No. 99-046, No 2000-348 Supreme Court of New Hampshire. Therefore the lower Court's ruling violates State law and the Appellant's due process rights. All of Mr. King's e-mail communications with Town officials and to over 100 Madison town residents, and additionally to the local snowmobile and ATV club members, which always received carbon copies of the same, were stated as fact, premeditated, malicious, defamatory and libel. The derogatory and defamatory statements had no relevance to any of the subject matters, but were simply meant to harm the Appellant's "lawful right" to be treated fairly and with respect. It is quite obvious that Mr. King's outrageous defamatory and libelous statements were published without any reasonable care, without any lawful occasion, without justifiable purpose, or concern of the consequences.

## COUNT V
## Inverse Condemnation and Trespass

The lower Court in error stated at 10 (court order Dec 7, 2008) that: *"Bourne argues that the town, in maintaining that a Class VI road ran through Bourne's property prior to the order made*

24

*in the State litigation, condemned and trespassed on his property".* But in fact, the Appellant stated the trespass was "during and after" at 3 (court document 9) the consolidated State case. In addition, the Appellant filed this action "during" the consolidated State action. The Appellant should be allowed to maintain a trespass cause of action for all trespass that occurred within three years [prior] to this litigation and for all trespass that continued [after] this litigation. RSA 635:2 A taking has occurred by the: (a) trespass, (b) 2nd revoked build permit, (c) two false denials of subdivision requests, (d) continued false claims to Title, and (e) constant interference with all reasonable use and enjoyment. The lower Court's Order in error continues to substantially deprived the Appellant from all economical viable use of the Appellant's land." See Burrows v. City of Keene, 121 N.H. 590, 598 (1981). Similar to the abuses noted herein, this Court noted in Funtown USA v. Conway, that the master found several examples of bad faith on the part of the defendants.

*Chief among them were the board of selectmen's repeated use of delaying tactics to avoid granting a building permit to Mr. Goldman until a zoning ordinance could be passed prohibiting water slides in the town of Conway.* Funtown USA v. Conway, 127 N.H. 312 (N.H. 1985).

Much worse than Funtown v. Conway, the Madison Appellees have committed deceitful delay tactics here to a higher degree of abuse, including changing the zoning bylaws "after" the Appellant's build permit was falsely revoked, and "after" a four lot subdivision was rejected. When the town officials rejected the Appellant's 4 lot subdivision request due to only having a pre-existing private 30 foot wide access, but then approximately two months later town officials then granted another landowner an 8 lot subdivision on a narrower access road of 28 feet wide. See App. at 696. The Appellant contends that a landowner is [not] required to exhaust administrative remedies by bringing an inverse condemnation, or fraud claim first to the zoning board before bringing it to the Superior Court. See Blue Jay Realty Trust v. City of Franklin, 132

25

N.H. 502, 509 (1989). In addition, arbitrary, unreasonable, and discriminatory restrictions that substantially deprive the owner of the "economically viable use of his land" in order to benefit the public in some way constitutes a taking. The question is one of degree and its resolution is governed by no set test. Factual differences in each case will affect the determination of whether a compensation requirement taking has occurred. The Court must decide whether the denial of use is substantial and is especially onerous. If it is, then a taking occurs. See Claridge v. N.H. Wetlands Bd., 125 N.H. 745, 485 A.2d 287 (1984).

## COUNT VII
## Negligence and False Representation

The Court in error, first overlooked that the town does in fact have a long history of granting build permits to properties accessed by "Private" Roads, confirming the Appellee town's refusal to re-issue the Appellant's build permit and subdivision denials are discriminatory, therefore the Appellant has stated a claim for which relief should be granted. The Court in error, also overlooked ALL of the fraudulent misrepresentations by the Appellees outlined in Count II, and Count III, which said fraudulent misrepresentations were relied upon by the Appellant, which then caused direct harm as a result. The Appellees can be held liable for all negligent acts of the town employees which constantly deprived the Appellant of all viable use and enjoyment of the subject property. See Dover v. Imperial Casualty & Indem. Co., 133 N.H. 109, 575 A.2d 1280, 1990 N.H. LEXIS 39 (1990). Also see RSA 640:3,(b) and RSA 637:4 Theft by Deception. The defendants deceitful methods and acts noted above, are wanton, malicious, and oppressive, and compensatory damages should be awarded to reflect the aggravating circumstances noted herein. A false statement of one's intent to perform written promise required by the statute of frauds is actionable. Munson v. Raudonis, 118 N.H. 474 (N.H. 1978). The Appellees should be held liable for negligence and false representations under Respondeat Superior. Especially where

26

the Appellees failed to carry out their obligations in good faith. <u>Porter v. City of Manchester, 151</u>

<u>N.H. 30 (N.H. 2004)</u>.

**COUNT VIII**
<u>**Quiet Title**</u>

The Court in error, has overlooked the [continued] publishing of false claims against the

Appellant's property, that continues today to bring the Appellant's Title into question, causing a

continued trespass for as long as the falsified documents are on display. The forged maps and

fabricated reports should be permanently removed to prevent adverse claims to all future

properties involved. New Hampshire State Constitution-Bill of Rights [Art.] 12-a. [Power to take

property limited.] "No part of a person's property shall be taken by eminent domain and

transferred, directly or indirectly, to another person if that taking is for the purpose of private

development or other private use of the property". Here the Appellees have attempted all

possible unlawful attempts, to use, to control, to take, and to deprive the Appellant from all

reasonable use of the Appellant's property, without just cause, or compensation. <u>See Appendix</u>

<u>volume I through III for further support</u>. The Appellees continue today to publish unfounded

claims to the Appellant's property in <u>the local newspaper, on the internet, at the local library, and</u>

<u>in the Madison town hall,</u> causing a continued defective and unjust claim against the Appellant's

Title. App. at 144-151, 624, 639, 644, 760, and **781-814**. The continued trespass of snowmobiles

upon the Appellant's deeded access right of way, which in turn affects: maintenance, plowing,

access availability, cost, safety, and creates a continuous nuisance. App. at 733-734. Where the

Appellant is <u>constantly</u> compelled to defend against all unfounded claims by the defendants'

deceit and bad faith, the Appellant is now entitled to collect tremble damages and tremble legal

cost associated with the continued defense of the subject property. See <u>Coco v. Jaskunas, 159</u>

<u>N.H. 515 (N.H. 2009)</u>.

27

In the alternative, due to the fact that the town of Madison sold "all" rights to the subject

property to Carroll County Trust Co. on March 28, 1932 with "covenant's", "To have and to hold

the said premises with appurtenances to the said Carroll County Trust Company, its successors

and assigns forever". App. at 446.

This Court may also consider the conveyance to be a warrantee deed of conveyance as outlined
by **N.H. RSA 477:27 Statutory Form of Warranty Deed.** "A deed in substance following the
form appended to this section shall, when duly executed and delivered, have the force and effect
of a deed in fee simple to the grantee, heirs, successors and assigns, to their own use, with
covenant on the part of the grantor, for himself or herself, heirs, executors and administrators,
that, at the time of the delivery of such deed, the grantor was lawfully seized in fee simple of the
granted premises, that the said premises were **free from all incumbrances**, except as stated, that
the grantor had good right to sell and convey the same to the grantee, heirs, successors and
assigns, and **that the grantor will,** and the heirs, executors, and administrators shall, **warrant
and defend the same to the grantee and heirs, successors and assigns, against the lawful
claims and demands of all persons".**

Where the town continues its breach of warranty, and continued false claims, should now subject

the town to liability for all costs, and attorney fees, from 2002-2010 related to the continued

defense of said property under N.H. RSA 477:27. Coco v. Jaskunas, 159 N.H. 515 (N.H. 2009).

In addition, the Appellees have recently [conceded] that there was never any legal acceptance of

the Kelsey Deed, and in fact that it was defective. App. at 52, 59, 246, 247, 338, 510, 556, 564-

568, 599, 600, and 609.

## COUNT IX
## Nuisance

The lower Court in error, overlooked that the nuisance was during the past litigation and

continues "today" as noted herein. This cause of action was properly filed during the

consolidated litigation, therefore, res judicata does not apply. In addition, the Court failed to

apply the N.H. Constitution. pt 1, arts. 2, 12, where the Appellees deprived the Appellant from

all vested property rights, and the Constitution requires the government to compensate the

property owner reasonably for that loss. There is no immunity from liability for the creation of a

28

nuisance or actual trespass. *"A private nuisance exists when any activity substantially and unreasonably continues to interfere with the use and enjoyment of another's property."* Cook v. Sullivan, 149 N.H. 774, 780 (2003). In tort Law, it is a broad concept characterizing "the Appellees interference with the Appellant's interest". It extends to everything that endangers life or health, gives offense to the senses, violates laws of decency, or obstructs the reasonable and comfortable use of property. (Barron's Law Dictionary, Third Edition). All of the Appellees actions noted herein clearly fall within the meaning of nuisance, therefore the Appellant seeks relief and damages for ALL of the constant interference and continued harassment by the defendants.

## COUNT X
### Request for Injunctive Relief to Uphold Vested Rights

First: The Court erred, by failing to apply Municipal Estoppel: the legal doctrine employed by Courts to assure that citizens are treated fairly in their dealings with municipalities. Town officials who withhold material facts and make statements to a person who later proves the statements to be false, and that the officials intentions were that the person relying upon the information provided, is ignorant of the truth, reasonably relies upon the information, and suffers damage as a result of the reliance. The Court should not allow the municipality to act in a manner contrary to that representation. That is, the municipality will be "estopped" or "prevented" from taking action to reach some other result with that person. See, ***Thomas v. Hooksett***, 153 N.H. 717 (2006). Where the town should be estopped from revoking the Appellant's build permit by deceptive purposes and should be ordered to re-issue said permit based on original promises, agreements, and settlement of previous litigation, or simply because the Appellees are in contempt of Court Orders approving said coerced settlement.

29

Second: The Court erred, as it failed to enforce a vested right and a coerced settlement approved by the Court, where the Appellant was granted a build permit to replace an existing dwelling. App at 465. The Appellant had received two septic disposal permits from the NH DES, conducted survey work, started construction, and spent a large sum of money in the vested project. The existing dwelling is to become a workshop upon completion of construction. The revoked permit: (a) constituted an unconstitutional taking of a vested property right, (b) brought about by the town's failure to properly grandfather an existing use, and (c) was in fact contempt of a Court settlement. All cost and attorney fees resulting from the unlawful taking should be granted to the Appellant. Dugas v. Conway, 125 N.H. 175 (N.H. 1984). The right to continue a conforming use is a vested right that was secured prior to new zoning changes, and secured by statute, RSA 674:19 (2008), and also by N.H. Const. pt. I, arts. 2 and 12. See Dovaro 12 Atl., LLC v. Town of Hampton, 158 N.H. 222 (N.H. 2009). The requirement to exhaust administrative remedies does not apply to all zoning and planning disputes, especially where the "Appellees have clearly inconsistent positions". See App. at 513 and then see App. at 497. This Court has previously held that the rule does not apply where the nature of the issues is beyond administration expertise, such as the issues presented herein. In such cases the Appellant is allowed to file suit in the Superior Court without first seeking a ruling from the administrative officials and appealing to the ZBA. See J. E. D. Assocs. v. Atkinson, 121 N.H. 581 (N.H. 1981). When the Permit was issued to the Appellant, there were no zoning bylaws restricting such use. After the build permit was unlawfully revoked, and tied up in court, Appellees then proceeded to modify the zoning bylaws in order to further restrict the Appellant's constitutional property rights. In addition, the lower Court's ruling violates the Appellant's right to own, to use, and to enjoy the subject property, which constitutes a restriction on property rights that is not rationally

30

related to any of the town's legitimate goals. The Appellee Build Inspector Robert Babine

knowingly violated: (a) in current use law, (b) town ordinances, (c) State and federal Law, (d)

the Appellant's due process rights, (e) constitutional property rights, and (f) his oath of office.

The harm to the Appellant is great and any possible harm to the town is none existent. Buskey v.

Town of Hanover, 133 N.H. 318, 323 (1990). "The doctrine of vested rights entitles a landowner

to complete a project when he has made substantial construction or incurred substantial liabilities

in good faith reliance. Chasse v. Candia, 132 N.H. 574 (N.H. 1989). In Funtown USA v. Town

of Conway, 129 N.H. 352, 354, 529 A.2d 882 (1987) (quotation, omitted). This Court has

employed an exception where a party was required to litigate against a town in order to build a

waterslide which it "had a vested right to construct," id.

Again similar to this action, in Turco v. Barnstead, *"The landowners' property fronted on a
certain road, which served as the only access to the house....On appeal, the court reversed. The
court found that by issuing the building permit, the town represented that the landowners were
entitled to construct the home and to all rights reasonably appurtenant to it, including
reasonable access. The court further found that the landowners' reliance on the permit was
reasonable. Turco v. Barnstead, 136 N.H. 256 (N.H. 1992) and Hogan Family Enters., Ltd. v.
Town of Rye, 157 N.H. 453 (N.H. 2008)"*.

Third: The Court erred, by failing to apply Estoppel by Silence, which would prevent Appellees

from asserting falsified reasons for revoking said build permit, when Appellees had both the

"duty and the opportunity" to speak up earlier, and their silence put the Appellant at a

disadvantage. For example, See affidavit of Rod Wood, Vice President of Brett S. Purvis and

Associates, a Municipal Assessing Consultant Co. employed by the Town of Madison, where he

informed Appellees of their error, but they continued their abusive actions without any notice to

the Appellant. App. at 501. The Appellant acquired a vested right to complete the project, and

should be re-issued said permit, compensated for all delays, granted triple costs, and triple

attorney fees associated with being forced to seek judicial assistance, again and again. See Awl

claiming: *"we have provided Mr. Bourne with everything we have"*. App. at 713. In addition,

more forged maps have been discovered making new false claims to the Appellant's property.

App. at 669. Where the Appellees continue "today" to publish unfounded prescriptive road

claims, the Appellant is compelled to seek justice again. In addition, the Appellees deceitful

concealment of incriminating evidence newly discovered demonstrates that they knew first hand

they were making fraudulent representations since day one. The Appellees continue to deprive

the Appellant of all monetary value and all reasonable use of the subject property. Appellees had

full knowledge to preserve evidence as far back as April 7, 2004, App. at 715, and again on

March 9, 2006 App. at 727. Even during the start of discovery within this action the Appellees

were put on notice to preserve, but since then Appellee Robert D. King has [admitted] to the

willful spoliation of more incriminating evidence immediately after the request for access to his

computer, and town officials have since commenced shredding operations of all sensitive

documents App. at 310, 311, 317, 326, 350, 699, 726, 728, and **731**.

## ARGUMENT

In reviewing a trial Court's grant of a motion to dismiss, the standard of review is whether

the allegations in the Appellants pleadings are reasonably susceptible of a construction that

would permit recovery, if there was any question, the court should have allowed the Appellant an

opportunity to amend the complaint. The Appellant has shown good cause why this action

should not be dismissed. Due to Appellees delaying tactics, the information sought by Appellant

is material and would have been likely to raise additional genuine issue of material fact.

Resolution Trust Corp. v. North Bridge Assocs., 22 F.3d 1198 (1st Cir. Mass. 1994).

## CONCLUSION

The Appellant contends that all of the facts common to all counts establish a horrendous pattern of "continued" bad faith misconduct directed toward the Appellant Mr. Bourne in response to his vigilant protection of his property rights. The Court erred, by failing to sanction the Appellees for perjury, willful concealment of material facts, and willful spoliation of incriminating evidence. See App. at 301. The lower Court's rulings are considered an unsustainable exercise of discretion, as it was against the clear weight of the evidence and the Court ignored a significant volume of evidence favorable to Mr. Bourne. The Court should also recognize that there are so many disputed issues of material fact, so many discovery abuses, including admitted spoliation of evidence, which normally would require the Court to deny a motion to dismiss. Iannelli v. Burger King, Corp., 145 N.H. 190, 192 (2000).

**In light of the Appellees admitted forgery of maps, perjury, compelling evidence of premeditated concealment of material facts, and premeditated fraudulent misrepresentations, clearly points to an error of judgment by the lower Court.**

The Appellees conduct is wholly unsupportable at law or in equity, greatly egregious and so completely devoid of good faith that equity and under common law cannot be permitted to intervene on their behalf. Indeed, Appellees actions toward the Appellant in this matter have been so harsh, repugnant, shocking, and repulsive to the extent that the Appellees must be appropriately sanctioned so as to deter them from imposing further abuse against the Appellant and others. The Court cannot be assured that Appellees will not repeat this course of unlawful conduct, if this action is merely dismissed and hence, dismissal standing alone is not a reasonable option. In fact the Appellees are continuing their deceitful actions against other as well. **See 685-688, 788-791.** Finally, remand is required under RSA 643:1 Official Oppression:

*Chewning v Ford Motor Co.*, *"where an unsuccessful litigant in underlying case now alleges that defendants in that case and their lawyers committed fraud by concealing evidence and*

34

*tampering with witnesses, because litigant's remedy, if any, is to petition original court, through an <u>independent</u> action in equity...". Chewning v Ford Motor Co. (1998, DC SC) 35 F Supp 2d 487, remanded (2001, App) 346 SC 28, 550 SE2d 584, reh den (Aug 22, 2001) and affd (2003) 354 SC 72, 579 SE2d 605.*

Also see Felds Case No. LD-97-009 N.H. Supreme Court, noting N.H. professional conduct Rule 4.3 violations as the <u>attorney knew discovery answers were false</u> or misleading, and improperly invoked the attorney-client privilege. Here the Appellees and their counsel violated N.H. Super. Ct R. Rule 35(b)(1) when concealing and restricting access to all relevant, unprivileged information that was requested during discovery. The Appellees conduct was motivated by criminal intent and when it involves reckless or callous indifference to the Constitutional protected rights of others. <u>Smith v. Wade, 461 U.S. 30, 57, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983)</u>. The Court normally requires that the Appellees conduct [be] of the sort that calls for <u>deterrence and punishment</u>, and here compensatory damages should also be provided. <u>Davet v. Maccarone, 973 F.2d 22, 27 (1st Cir. 1992)</u> (quoting <u>Hernandez-Tirado v. Artau, 874 F.2d 866, 869 (1st Cir. 1989)</u>. Also see <u>RSA 354-A:8</u> Equal Housing Opportunity Without Discrimination.

WHEREFORE the Appellant respectfully requests this Honorable Court to:

A.    Order that the Kelsey deed Book 734 Page 78-80 is void for lack of legal acceptance, and

B.    Remand ALL causes of action for further review as this Court see's appropriate, and

C.    Order that a prosecuting attorney from the NH Attorney General's Office be appointed as special counsel to assist the Appellant in prosecuting the claims noted herein, and

D.    Order severe sanctions against the Appellees for their perjured testimony, fraud upon the Court, and for concealment and spoliation of evidence, and

E.    Where the Appellant was limited to amend count IV only, Order now that the Appellant is allowed to amend the complaint to include newly discovered evidence that supports additional

claims of fraudulent misrepresentation, <u>Cambridge Mutual Fire Ins Co. v Crete</u>, 150 N.H. 673,

678 (2004),  and

F.    for such other relief that is just.


Respectfully submitted, under oath and under the pains of perjury that everything detail stated

within the this brief is based on firsthand knowledge and belief to be truth and nothing but the

truth.

Sam Bourne Individually, *Pro se*
and as Trustee,                                          Date _____
Bedrock Realty Trust
117 Pond Street
East Bridgewater, MA 02333
508-378-9319


I hereby certify that on _____, I served the foregoing Brief of Appellant by
mailing copies thereof by first class mail, postage prepaid, to Randall Cooper, Cooper, Deans
and Cargill, George W. Walker Esq, Brian J.S. Cullen Esq, counsel of record.