UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2012 SEP 17  P 1: 25

*In re*

Samuel J. Bourne

Plaintiff

V.

*Ref*
*12-CV-251-PB*

STATE OF NEW HAMPSHIRE,
SUPREME COURT OF NEW HAMPSHIRE,
LINDA STEWART DALIANIS individually,
JAMES E. DUGGAN individually,
GARY E. HICKS individually,
CAROL ANN CONBOY individually,
ROBERT J. LYNN individually, and
EILEEN FOX individually,

Defendants

## *"In re Samuel Bourne, Petitioner."*
## Petition for Writ of Mandamus to Recuse Judge Barbadoro and Order Change of Venue

Now Comes the Petitioner, Samuel Bourne, Plaintiff in Civil Action 12-cv-251-PB,

captioned as Bourne v. State of New Hampshire, New Hampshire Supreme court, and individual

Defendants *et al*, in the United States District Court for the District of New Hampshire, hereby

applies, pursuant to the provisions of section 1651, Title 28, United States Code, and Rule 21(a)

of the Federal Rules of Appellate Procedure, for a writ of mandamus to be issued by this Court

directing Judge Barbadoro and [others] similar situated, as known Judge[s] of the United States

District Court for the District of New Hampshire to recuse and disqualify themselves from

presiding in any way over the above-named action now pending before said Court. The Plaintiff

does not intend or imply any disrespect what-so-ever to any justice of the N.H. District Court,

but because there are so many known conflicts of interest that do in fact exist, Recusal must be

1

mandatory. Judge Barbadoro and [others] of said Court were in fact previously employed by the Defendants herein, as such, impartiality might reasonably be questioned. Therefore, this 1st Circuit Court of Appeals should order that "Recusal and Change of Venue" is mandatory in the above captioned litigation.

Statement of Facts and Order Challenged

District Judge Laplante has recently recused himself (order no. 13) because of known conflicts of interest, see also (document no. 9). On Aug 22, 2012 Magistrate McCafferty was designated to review the pending motions (order no. 11). On Aug 30, 2012 Judge Barbadoro has reassigned this case to himself. Then on Sept 5, 2012 Judge Barbadoro vacated the previous designation of Magistrate McCafferty (order no. 16).

Now the Plaintiff is compelled to Challenge Court Order No. 18, which unjustly denied Plaintiff's motion for recusal and change of venue. For this Court's convenience, the challenged order is attached hereto as Exhibit A.

Challenged (court order No. 18) inappropriately and [inconsistently] applies the law, which is now in conflict with decisions of other courts. As such, the District court order defies [known] conflicts of interest, and confirms impartiality will reasonably be questioned. Therefore, an order vacating NH District Court (order no.18) is necessary.

It is well known that Judge Laplante, Magistrate McCafferty and specifically Judge Barbadoro were in fact all employed by the Defendants herein at one time or another. It is also well known that each NH Federal justice continues to be affiliated with the Defendants herein. As such, recusal should be without question, but because Judge Barbadoro has failed to comply with the law, and has knowingly failed to disclose his other known conflicts, intervention from this Court is now required.

Statement of Issues

The pending litigation addresses a host of deprivation issues that plagues the New

Hampshire [State] judicial system, especially when it comes to outsiders from Massachusetts and

*Pro se* litigants. The instant litigation addresses a host of specific issues of [public concern], and

are not limited to: (a) Defendants' unjust retaliatory fines implemented against the Plaintiff when

he dared to present new evidence that proves Madison town officials "*vowed*" to deny Bourne his

vested property rights, and in doing so, Defendants herein prohibited the Plaintiff's from

exercising his 1st Amendment Rights to seek redress of the Government without retaliation; (b)

deprivation of due process as a result of Defendants systematic dismissal of appeals without

review, without applying the law, and without addressing a plethora of disputed material facts;

(c) Defendants' unjust actions permitted without review the lower superior court's biased order to

stand, even though it failed to apply the law consistently with other similar rulings, and ignored

known disputed material facts, deprived Mr. Bourne of vested property rights, and left his

property plagued with Title defects; (d) Defendants' improperly allowed the lower superior court

to improperly apply res juticata when other litigation was known to be still pending; (e)

Defendants' actions improperly allowed an unconstitutional State statute that creates an unlawful

taking without compensation or just cause; (f) Defendant knowingly condoned forgery and

discovery abuses so outrageous that amounted to aiding and abetted [fraud on the Court] by

attorney Brian Cullen, and Attorney Randall Cooper; and (g) where the Defendants failed to

review (any part) of the Plaintiff's complex and highly detailed appeal brief or three volume

appendix, and instead, opted to implement their unsigned generic dismissal order because of

State budget cuts. In addition, "fraud upon the court" by attorney Brian Cullen and attorney

Randall Cooper makes void the orders and judgments of the subject State court. As such, an

impartial Judge who honestly cares about justice, who is willing to apply justice where no one else dares, and who is not politically influenced by the Defendants herein, should be designated to review this case. But not Judge Barbadoro who's previous employment was in fact by the [same] Defendants herein. If any judge of the NH district Court with known ties to the Defendants herein is allowed, in any way, to review the pending litigation, or has an interest that could substantially affect the outcome, impartiality will reasonably be questioned. As such, the Public will certainly loose trust in the ability of the NH District Court to be impartial. Future news coverage of this notable case, could in fact, put the NH District court in a bad light, especially if the Defendants actions are condoned, or allowed to continue without any repercussions, disciplinary actions, or change.

**Should a judge with known conflicts of interest not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. *United States v. Sciuto*, 521 F.2d 842, 845 (7th Cir. 1996).**

<u>Statement of Relief Sought</u>

Petitioner's motion for recusal and change of venue should be given the upmost attention, and as such, (court order no. 18) should be vacated. Disqualification of Judge Barbadoro from presiding over the above-named action now pending should be required. Recusal is justified on grounds that Judge Barbadoro was disqualified under 28 U.S.C. section 455(a) and section 455(b)(1) which he was, and continues to be, materially associated with the Defendants herein. Judge Barbadoro's continued participation in the matter now before him creates the strong appearance of impropriety for which relief through disqualification is warranted. Petitioner further requests that the instant case be reassigned to a Judge who is not associated with Defendant[s].

4

## Standard of Review

The statute. Section 455(a) requires "[a]ny justice, judge or magistrate of the United States [to] disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This statute seeks to balance two competing policy considerations: first, that "courts must not only be, free of bias or prejudice," In re United States, 158 F.3d 26, 30 (1st Cir. 1998) (quoting In re United States, 666 F.2d 690, 694 (1st Cir. 1981)); and second, the fear that recusal on demand would provide litigants with a veto against unwanted judges, id. As such, this Court must considered disqualification appropriate only when the charge is supported by a factual basis, and when the facts asserted "provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." In re United States, 666 F.2d at 695. However, this Court should also note that the district court should exercise that discretion with the understanding that, "if the question of whether Section 455(a) requires disqualification is a close one, the balance tips in favor of recusal." Nichols v. Alley, 71 F.3d 347, 352 (10th Cir. 1995). As presented, and quite evident, Judge Barbadoro should be disqualified from presiding over any case, where he was in fact employed by the very same Defendants, and in addition, is closely associated with the Defendants. To this day, it is widely known that Judge Barbadoro attends functions and other political gatherings with the Defendants herein. Impartiality is certainly in question here. It is highly suspected why Judge Barbadoro has failed to acknowledge other recent contact with the Defendants herein, regarding this specific case.

## Reason Why Writ Should Issue

The writ should issue because the District Court has indisputably abused its discretion, and Petitioner's motion for recusal and change of venue was unjustly denied based on known

5

bias toward the Plaintiff. See Plaintiff's "motion for recusal and change of venue" and "memorandum of law" attached hereto as Exhibit B.

See also Defendants "objection" to the motion to recuse and change of venue, and Plaintiff's Reply to said objection, also attached hereto as Exhibit C.

According to the case law cited to support such recusal and ethical determination. it is the obligation of a judge to disclose all facts that might be grounds for his disqualification. In addition, it should be noted that Judge Barbadoro failed to inform the Plaintiff of his private law practice and/or other interaction[s] with the Defendants herein. Further, Canon 3C of the Code of Judicial Conduct of the American Bar Association, codified with modifications as 28 U.S.C. section 455, states, in part, "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned... ." Under Canon 3 of the Code of Judicial Conduct, Judge Barbadoro had a duty to disclose his association with the Defendants, before sitting in any case in which the Defendants were involved. However, Judge Barbadoro was specifically disqualified pursuant to U.S.C. 28 section 455 (b)(1), when bias was evident in a previous litigation (docket no. 09-cv-270-PB). The underlying issues of that case stem from same Madison defendants, where Plaintiff attempted to address them in NH State docket No 08-E-0027. See also 2nd Supplement to Plaintiff's motion for recusal and change of venue attached hereto as Exhibit D.

It is also interesting to note that one of the Town of Madison defendants in the underlying action was also a student of Judge Barbadoro. See Madison selectman Michael Brooks email to Robert D. King date Feb 16, 2011 attached hereto as Exhibit E.

Even though Mr. Bourne was able to reasonably settle all disputes with Laconia Savings Bank and Stewart Title Guaranty Co., (docket No. 09-cv-270-PB), Madison defendant Robert D.

King continued his slander of title and abusive agenda toward taking control of Mr. Bourne's property. This abusive agenda by King and others continues today without any end in sight, which will indeed compel Mr. Bourne to file yet another lawsuit to protect his property rights. See King email to Michael Brooks where King admits town officials "vowed" to deny Bourne his vested property rights, attached hereto as Exhibit G.

In conclusion

Past experience demonstrates that [if] Judge Barbadoro is allowed to preside over this case, he will then specifically favor the Defendants by: (a) first dismissing the individual Defendants without just cause or proper application of law; (b) consider allowing an amended complaint to clarify each element of each cause of action; and (c) then he will dismiss the action without ever addressing any of many violations of Mr. Bourne's constitutional rights, without ever addressing the unjust treatment of Mr. Bourne, and without granting Mr. Bourne any relief what-so-ever.

**WHEREFORE**, the Petitioner Samuel Bourne, respectfully request this Court to:

A.   Issue a writ of mandamus directing Judge Barbadoro to vacate the subject (court order no.18), and

B.    Issue an order approving the Plaintiff's motion for recusal and change of venue, and

C.   Issue an order directing Judge Barbadoro be recused from presiding in any way over the above named litigation, and

D.   Issue an order directing the NH District Court to Change said Venue to a neutral Court, and

E.   For such other and further relief as this Court may deem proper and just.

Respectfully Submitted,

Samuel Bourne individually,                     Sep 13, 2012
117 Pond Street
East Bridgewater, MA 02333
508-378-9319

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to counsel for the Defendant[s], Michael A. Delaney Attorney General of N.H., and Nancy J. Smith Senior Assistant Attorney General of N.H., 33 Capital Street Concord, N.H. 03301

In addition, I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to Judge Barbadoro C/O U.S. District Court, District of New Hampshire 55 Pleasant Street Concord, NH 03301

# EXHIBIT -A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Samuel J. Bourne**

v.

Civil No. 12-cv-251-PB
Opinion No. 2012 DNH 158

**State of New Hampshire et al.**[1]

### O R D E R

Before the court is plaintiff's motion for recusal and change of venue. Defendants have objected (Doc. No. 5). Bourne has replied (Doc. No. 7) and filed two supplements to the motion (Doc. Nos. 9 and 17). For the following reasons, the motion for recusal and change of venue (Doc. No. 4) is denied.

### Discussion

I.   Recusal

A federal statute, 28 U.S.C. § 455, governs the recusal of federal judges and magistrate judges. I must recuse myself if

---

[1] Defendants in this action are: the State of New Hampshire; the New Hampshire Supreme Court ("NHSC"); NHSC Justices Linda Stewart Dalianis, James E. Duggan, Gary E. Hicks, Robert J. Lynn, and Carol Ann Conboy; and NHSC Clerk Eileen Fox.

my "impartiality might reasonably be questioned," id. § 455(a),[2]

and in close cases, doubts are to be resolved in favor of

recusal. See United States v. Snyder, 235 F.3d 42, 46 (1st Cir.

2000). The inquiry is objective, from the perspective of a

"reasonable person," not one who is "'hypersensitive or unduly

suspicious,'" but one who is a "'well-informed, thoughtful

observer,'" who is aware of all of the surrounding facts and

circumstances. United States v. Sierra Pac. Indus., 759 F.

Supp. 2d 1198, 1203 (E.D. Cal. 2010) (quoting United States v.

Holland, 519 F.3d 909, 913 (9th Cir. 2008)); see also United

States v. Pulido, 566 F.3d 52, 62 (1st Cir. 2009), cert. denied,

131 S. Ct. 632 (2010). To avoid delays and a waste of judicial

resources, unnecessary recusals are to be avoided. Snyder, 235

F.3d at 46. ("Thus, under § 455(a) a judge has a duty to recuse

himself if his impartiality can reasonably be questioned; but

otherwise, he has a duty to sit." (footnote omitted)).

To support his contention that I should be recused from the

case, Bourne asserts the following:

> 1.    I served as an assistant attorney general for the
> State of New Hampshire from 1980 to 1984, as counsel for
> United States Senator Warren Rudman from 1984 to 1986, and
> as Deputy Chief Counsel to the United States Senate
> Committee on Secret Military Assistance to Iran and the

---

[2] Canon 3(C)(1) of the Code of Conduct for United States
Judges also requires recusal where "the judge's impartiality
might reasonably be questioned."

2

Nicaraguan Opposition, in 1987.

2.   I was appointed to this court upon recommendations made to the President, and, Bourne alleges, it is "widely known" that I and other judges were "politically appointed by the recommendations of the State Defendants."

3.   I have appeared in a photograph with Governor Lynch, congratulating a newly-naturalized citizen, following her naturalization, at which I officiated.

4.   I issued rulings adverse to Bourne in prior litigation, <u>Bourne v. Stewart Title Guaranty Co.</u>, 09-CV-270-PB (D.N.H.).

I address each contention in turn.

First, my prior state government service occurred at the onset of my legal career, almost thirty years ago, and lasted for less than five years.  That past employment relationship with the Attorney General's office was so remote in time and unrelated to the issues here, that no objective observer would question my impartiality in this case.  See <u>Arnell v. McAdam</u>, No. 07CV0743-LAB(RBB), 2007 WL 2021826, at *2 (S.D. Cal. July 10, 2007) (employment with district attorney's office, ending twenty-two years ago, would not raise reasonable questions as to judge's impartiality).  Nor would any objective observer question my impartiality based on my service as counsel to Senator Rudman and to a Senate committee in the Iran Contra inquiry, occurring more than twenty years ago.  Bourne has alleged no facts, and the court is aware of none, that would give rise to any conflict of interest relating to those

3

associations.

Second, Bourne's claim about politics and the judiciary, namely, the alleged common knowledge that the "State defendants" made "recommendations" regarding each judge's appointment to this court, is neither substantiated nor accurate in my case. Bourne provides no evidence to support his claim, and I am aware of none. While members of the Bar and others may have contacted the President in connection with my appointment, after due inquiry, I have found no records suggesting that any defendant in this case made such a recommendation. I find that no objective, well-informed observer, aware of all of the relevant circumstances here, would question my impartiality in this case based on Bourne's bald assertions. Cf. In re Mason, 916 F.2d 384, 387 (7th Cir. 1990) (reasonable, well-informed observers of federal judiciary understand that "[j]udges with tenure need not toady, and don't[;] Chief Justice Burger wrote an opinion that led to the resignation of the President who gave him that office" (citing United States v. Nixon, 418 U.S. 683 (1974))).

By the same token, the photo of me standing with Gov. Lynch, congratulating a newly-naturalized citizen following her naturalization, provides no grounds for disqualification. I officiated at the naturalization, and Gov. Lynch attended it. The caption identifies each of us and provides information about

the citizen's background, indicating that the photo may have accompanied a news story on the naturalization ceremony. See Ex. 2 to Pl.'s Addendum to Mot. to Change Venue (doc. no. 17-2). The citizen is not a party here, and Gov. Lynch is named only in his capacity as the State's chief executive. No objective observer, aware of all of the circumstances, would find that the photo raises any reasonable question concerning my impartiality.

Furthermore, the rulings that I issued in prior litigation involving Bourne do not generate a reasonable basis upon which to question my impartiality. See Pulido, 566 F.3d at 62 (opinions issued by judges based on facts introduced in prior proceedings "'do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible'" (quoting Liteky v. United States, 510 U.S. 540, 555 (1994))). Put another way, Bourne's fervent disagreement with the reasoning or effect of my prior rulings does not raise any reasonable question about my impartiality.

Bourne's remaining contentions warrant few words. A third party lawyer's prediction in discussions with Bourne in a different case, regarding the likely disposition of this case, provides no basis for disqualification. That remark does not in any way suggest that dismissal would result from any improper

5

considerations or partiality.

Bourne also seeks the recusal of the magistrate judge and
other judges in this court, by pointing to their prior state
employment, as well as defendant Justice Carol Ann Conboy's term
as a law clerk for United States District Judge Shane Devine
from 1978-1979, two decades before Judge Devine's death. Chief
Judge Laplante has recused himself from this case, see Order
(Doc. No. 13), the remaining sitting judges are not assigned to
it, and no issue in this matter is presently before the
magistrate judge. The motion for recusal as to those judicial
officers is thus not ripe, and merits no further consideration.

II. Change of Venue

Bourne premises his request for a change of venue solely
upon his contention that all of the judges in this court should
be recused. As explained above, neither my recusal nor the
wholesale recusal of the judges of this court is warranted. I
find no basis for concluding that either the interests of
justice or the convenience of the parties warrants a transfer to
a different district. See 28 U.S.C. § 1404. Accordingly, I
deny the motion for a change of venue.


Conclusion

For the foregoing reasons, the motion to recuse and to

6

change venue (Doc. No. 4) is denied.

SO ORDERED.

/s/Paul Barbadoro
Paul J. Barbadoro
United States District Judge

September 11, 2012

cc:  Samuel J. Bourne, pro se
     Nancy J. Smith, Esq.

7

# EXHIBIT -B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

SAMUEL J. BOURNE,
Plaintiff

Docket No. 12-cv-251-JL

v.

STATE OF NEW HAMPSHIRE,
SUPREME COURT OF NEW HAMPSHIRE,
LINDA STEWART DALIANIS individually,
JAMES E. DUGGAN individually,
GARY E. HICKS individually,
CAROL ANN CONBOY individually,
ROBERT J. LYNN individually, and
EILEEN FOX individually,

Defendants

## MOTION FOR RECUSAL AND CHANGE OF VENUE

Now Comes the Plaintiff Mr. Bourne and respectfully request the *Recusal* of Justice

Joseph LaPlante, and other[s], and a *Change of Venue* in order to provide a [fair] hearing before

an [impartial] tribunal. This request is due to known conflicts of interest, therefore the Plaintiff

respectfully requests this Court to *Recuse* itself from hearing any proceedings in the above-

captioned matter for reasons set forth more fully in the [attached] Memorandum of law in

support of Plaintiff's Motion for Recusal and Change of Venue.

Respectfully Submitted,

Samuel Bourne individually,
117 Pond Street
East Bridgewater, MA 02333
508-378-9319

July 23, 2012

1



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to counsel for the Defendant[s], Michael A. Delaney Attorney General of N.H., and Nancy J. Smith Senior Assistant Attorney General of N.H., 33 Capital Street Concord, N.H. 03301

2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

SAMUEL J. BOURNE,
          Plaintiff

Docket No. 12-cv-251-JL

v.

STATE OF NEW HAMPSHIRE,
SUPREME COURT OF NEW HAMPSHIRE,
LINDA STEWART DALIANIS individually,
JAMES E. DUGGAN individually,
GARY E. HICKS individually,
CAROL ANN CONBOY individually,
ROBERT J. LYNN individually, and
EILEEN FOX individually,

          Defendants

## **MEMORANDUM OF LAW IN SUPORT OF MOTION FOR RECUSAL AND**

## **CHANGE OF VENUE**

      Now Comes the Plaintiff Mr. Bourne and respectfully submits this Memorandum of law

in support of *Recusal* of Justice Joseph LaPlante, and *other[s],* due to known conflicts of interest.

In addition, in light of the factual history of known conflicts of interest, the Plaintiff further

request a *Change of Venue* in order to provide a [fair] hearing before an [impartial] tribunal, and

the Plaintiff states as follows:

      First and foremost, the Plaintiff's Constitutional Rights guaranteed by the First and

Fourteenth Amendment provide Mr. Bourne the right to present his case and to be heard by an

impartial Judge and/or Jury. As such, the Plaintiff does not intend or imply any disrespect what-

so-ever, but because of the many known conflicts of interest, impartiality might reasonably be

questioned.

1

## Factual Background

It is known that Justice LaPlante was previously employed by the Defendants at the NH Attorney General's Office from 1993-1998. It is known that Magistrate McCafferty was previously employed by the Defendants at the NH Attorney Discipline Office from 2004-2010. It is also known that Justice Declarico was employed by Defendants as an Assistant NH Attorney General from 1970-1977. and then employed at the NH Superior Court from 1978-1992. It is known that Justice McAuliffe was employed by the Defendants as an Assistant NH Attorney General. And, it is also known that Justice Barbadoro was previously employed by the Defendants as an Assistant NH Attorney General from 1980-1984. and as counsel for NH Senator Warren Rudman from 1984 to 1986. In addition, [others] currently employed by this Court who also may have a direct association with the Defendants herein creates more conflict. As such, impartiality might reasonably be questioned.

It is also known that Defendant "Carol Ann Conboy" clerked for Judge Shane Devine at this NH Federal District Court, just before Justice Barbadoro took Justice Devine's seat on the bench. As such, a conflict of interest does in fact exist with current Court employees, staff, and justices, therefore requiring Change of Venue.

## Standard of Review

If any such member Justice of this NH Federal Court were allowed to preside over the instant action. then His or Her impartiality would reasonably be questioned.

Disqualification and/or recusal is mandatory Pursuant to 28 U.S.C. 455, which provides that:

(a) Any justice. judge. or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

2

(1) Where he has a personal bias or prejudice concerning a party, or *(personal knowledge of disputed evidentiary facts concerning the proceeding)*;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any *other interest* that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person: (i) Is a party to the proceeding, or an officer, director, or trustee of a party; (ii) Is acting as a lawyer in the proceeding; (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

(c) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

(d) For the purposes of this section the following words or phrases shall have the meaning indicated: (1) "proceeding" includes pretrial, trial, appellate review, or

3

other stages of litigation; (2) the degree of *relationship* is calculated according to the civil law system; (3) "fiduciary" includes such *relationships* as executor, administrator, trustee, and guardian; (4) "financial interest" means ownership of a legal or equitable interest, however small, or a *relationship* as director, adviser, or other active participant in the affairs of a party, except that: (i) Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund; (ii) An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization; (iii) The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest; (iv) Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(e) No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

(f) Notwithstanding the preceding provisions of this section, if any justice, judge, magistrate judge, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party *(other than an interest that could be substantially affected by the outcome)*, disqualification is

4

not required if the justice, judge, magistrate judge, bankruptcy judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

The Court justices, and known employees thereof, have an obligation to disclose *their* conflicts of interest. The facts, as stated, clearly satisfy the standards of the statute since any reasonable person, apprised of these circumstances, would reasonably question the Court's impartiality. See *Liteky v. United States,* 510 U.S. 540, 114 S. Ct. 1147,127 L. Ed. 2d 474 (1994). The guarantee of an independent, impartial judiciary enables society to 'withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts.' *West Virginia Bd of Ed v. Barnette,* 319 U.S. 624, 638 (1943). 'Without this, all the reservations of particular rights or privileges would amount to nothing.' The Federalist No. 78, p. 466 (C. Rossiter ed. 1961).

In *Liljeberg v. Health Services Acquisition Corp.,*486 U.S. 847 (1988)""A violation of § 455(a) --which requires a judge to disqualify himself in any proceeding in which his impartiality might reasonably be questioned -- is established when a reasonable person, knowing the relevant facts, would expect that a judge knew of circumstances creating an appearance of partiality, notwithstanding a finding that the judge was not actually conscious of those circumstances .... his reading of § 455(a) does not require judges to perform the impossible by disqualifying themselves based on facts they *do not know,* since, improper cases, the provision can be applied retroactively to rectify an oversight once the judge concludes that 'his impartiality might reasonably be questioned."*(emph. Added)* But here, there is no question, the conflicts of interest are known, and specifically do exist. Therefore, requiring recusal.

5

In *Nevada Commission on Ethics v. Carrigan,* 131 S.Ct. 2343 (2011), the United States Supreme Court clarified that: "Federal conflict-of-interest rules applicable to judges also date back to the founding. In 1792, Congress passed a law requiring district court judges to recuse themselves if they had a personal interest in a suit or had been counsel to a party appearing before them. Act of May 8, 1792, ch. 36, § 11, 1 Stat. 278-279. In 1821, Congress expanded these bases for recusal to include situations in which 'the judge ... *is so related to, or connected with, either party, as to render it improper for him, in his opinion, to sit on the trial of* [131 S. Ct. 2349] *such suit.*' Act of March 3, 1821, ch. 51, 3 Stat. 643.

The statute was again expanded in 1911, to make any 'personal bias or prejudice' a basis for recusal. Act of March 3, 1911, §21, 36 Stat. 1090. The current version, which retains much of the 1911 version's language, is codified at 28 U.S.C. §144. *See generally Liteky v. United States,* 510 U.S. 540, 544, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); Frank, Disqualification of Judges, 56 Yale L. J. 605, 626-630 (1947)"

The plain language of 28 U.S.C. 455:(a) provides that Any justice, judge, or magistrate judge of the United States shall disqualify him or herself in any proceeding in which his impartiality might reasonably be questioned. The facts, as stated herein, clearly satisfy the standards of the statute since any reasonable person, apprised of these circumstances, would reasonably question the Court's impartiality. See *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147,127 L.Ed. 2d 474 (1994). Any objective observer would be compelled to conclude that NH Federal Court Justice Laplante, Magistrate McCafferty, Justice Declarico, Justice Barbadoro and many [others] employed by this Court, that their impartiality would be questioned. Especially, where each named justice[s] have in fact been employed by the Defendants, Defendant's counsel, and/or have a direct related association. These facts more than satisfy Section 455(a) which

6

mandates recusal merely when a Court's impartiality "might reasonably be questioned." Further, 28 U.S.C. 455 (b) provides that He or She shall also disqualify him or herself in the following circumstances: He knows that he or she, individually or as a fiduciary ... has a financial interest in the subject matter in controversy or in a party to the proceeding, or *any other interest* that could be substantially affected by the outcome of the proceeding; [...].

A number of States, by common-law rule, have long required recusal of public officials with a conflict. *See, e.g., In re Nashua,* 12 N.H. 425,430 (1841) ("If one of the commissioners be interested, he shall not serve"); *Commissioners' Court* v~ *Tarver,* 25 Ala. 480, 481 (1854) ("If any member ... has a peculiar, personal interest, such member would be disqualified"); *Stubbs v. Florida State Finance Co.,* 118 Fla. 450, 451, 159 So. 527, 528 (1935) ("[A] public official cannot legally participate in his official capacity in the decision of a question in which he is personally and adversely interested"). Especially, where known conflicts of interest have been established.

The new section 455(a) replaced the subjective standard of the 1948 statute with an objective standard. It is no longer the case that a judge should recuse where "in his opinion" sitting would be improper, but rather where his or her impartiality "might reasonably be questioned." Also, section 455(b) spells out certain situations in which *partiality is presumed* and recusal is required.

Judges should keep in mind that sections 455(a) and (b) provide separate (though substantially overlapping) bases for recusal. The former deals exclusively with the appearance of partiality in any circumstance, whereas the latter pertains to conflicts of interest in specific instances. Thus, the existence of the facts listed in section 455(b) requires recusal, even if the judge believes they do not create an appearance of impropriety. Any circumstance in which a

7

judge's impartiality might reasonably be questioned, whether or not touched on in section 455(b), requires recusal under section 455(a).

Disqualification Based on Question of Partiality: Section 455(a)

Standard for applying when Congress amended section 455(a), it made clear that judges should apply an objective standard in determining whether to recuse. A judge contemplating recusal should not ask whether he or she believes he or she is capable of impartially presiding over the case. The statute *requires* recusal in any case "in which [the judge's] impartiality might reasonably be questioned." Because of that language, every circuit has adopted some version of the "reasonable person" standard.

## Conclusion

For these reasons stated above, the Plaintiff Mr. Bourne respectfully request this Honorable Court to recuse Justice LaPlante, Magistrate McCafferty, and [any other] justice[s] with *known* conflicts of interest from hearing or reviewing any proceedings in the above captioned matter. Such recusal would incorporate all NH Federal District Court employees who have known direct ties with the Defendants, whether or not, those direct ties included prior employment, or other direct association.

In light of the necessity for Recusal, and Change of Venue, the Plaintiff respectfully request this Court to consider the change of venue to the Federal District of Rhode Island (first), the Federal District Court of Maine (second), and the Federal District Court of Massachusetts (third).

But, in any event, recusal is required under Cannon 3 (c) (1) of the Code of Conduct for the United States Judges requires a judge to disqualify himself from any case *"in which the judge's impartiality might reasonably be questioned."* Under this test, a judge ordinarily must

8

disqualify him or herself if a reasonable person, knowledgeable of the relevant facts, would have reason to question the judge's impartiality.

**WHEREFORE**, based upon the forgoing, the Plaintiff respectfully requests this Court to recuse itself from reviewing any and/or all such proceedings in the above-captioned matter, and that this case be transferred to an impartial Court.

Respectfully Submitted,

Samuel Bourne individually,                                                July 23, 2012
117 Pond Street
East Bridgewater, MA 02333
508-378-9319

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to counsel for the Defendant[s], Michael A. Delaney Attorney General of N.H., and Nancy J. Smith Senior Assistant Attorney General of N.H., 33 Capital Street Concord, N.H. 03301

9

# EXHIBIT -C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

*******************************************
Samuel Bourne,                              *
        Plaintiff                           *
                                            *
        v.                                  *        12-cv-251-JL
State of New Hampshire, Supreme             *
Court of New Hampshire, Honorable Linda     *
Dalianis, Honorable James Duggan,           *
Honorable Gary Hicks, Honorable Carol Ann   *
Conboy, Honorable Robert Lynn               *
and Eileen Fox, Supreme Court Clerk         *
        Defendants                          *
                                            *
*******************************************

## OBJECTION TO MOTION TO RECUSE AND CHANGE OF VENUE

The Defendant(s), State of New Hampshire, Supreme Court of New Hampshire,

Honorable Linda Dalianis, Honorable James Duggan, Honorable Gary Hicks, Honorable Carol

Ann Conboy, Honorable Robert Lynn and Eileen Fox, Supreme Court Clerk, by and through

counsel, the Office of the Attorney General object to plaintiff's motion to recuse and for change

of venue as more specifically set forth in the memorandum law attached hereto.

WHEREFORE, Defendants respectfully request that the court order as follows:

A.      That the plaintiff's motion to recuse and for change of venue be denied;

B.      For such other and further relief as is just and necessary.

Respectfully submitted,

STATE OF NEW HAMPSHIRE, N.H. SUPREME
COURT, HONORABLE LINDA DALIANIS,
HONORABLE JAMES DUGGAN, HONORABLE
GARY HICKS, HONORABLE CAROL ANN
CONBOY, HONORABLE ROBERT LYNN AND
EILEEN FOX, SUPREME COURT CLERK

By their attorney,



UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

```
*******************************************
                                          *
Samuel Bourne,                            *
        Plaintiff                         *
                                          *
        v.                                *       12-cv-251-JL
                                          *
State of New Hampshire, Supreme           *
Court of New Hampshire, Honorable Linda   *
Dalianis, Honorable James Duggan,         *
Honorable Gary Hicks, Honorable Carol Ann *
Conboy, Honorable Robert Lynn             *
and Eileen Fox, Supreme Court Clerk       *
        Defendants                        *
                                          *
*******************************************
```

## **MEMORANDUMOF LAW IN SUPPORT OF OBJECTION TO MOTION TO**

## **RECUSE AND CHANGE OF VENUE**

The Defendant(s), State of New Hampshire, Supreme Court of New Hampshire,

Honorable Linda Dalianis, Honorable James Duggan, Honorable Gary Hicks, Honorable

Carol Ann Conboy, Honorable Robert Lynn and Eileen Fox, Supreme Court Clerk, by

and through counsel, the Office of the Attorney General object to plaintiff's motion to

recuse and for change of venue as follows.

## I.      ARGUMENT

Plaintiff cites 28 U.S.C. § 455 in support of his claim that all of the judges, the

magistrate and court staff in the New Hampshire federal district court should be required

to recuse themselves. At bottom the only facts on which he bases this allegation is the

fact that at some time in the distant past the judges were employed by the New

Hampshire Department of Justice (NHDOJ) or had some other employment relation to

state government. For example, Judge LaPlante's employment with the NHDOJ ended in

Case 1:12-cv-00251-JL   Document 5-1   Filed 07/27/12   Page 3 of 5

1 F.3d 985, 993 (10th Cir.1993) (quotation marks omitted)." *Buckenberger v. Reed*, 2010

WL 3523021 (E.D.La. 2010) (unpublished).  As the judge in *Buckenberger* also noted,

not even prior rulings adverse to the plaintiff satisfy this objective standard. "The basis

for his motion for recusal is that I have issued orders which were adverse to him. That is

insufficient." *Id.*  The Fifth Circuit has noted: "Judicial rulings alone almost never

constitute a valid basis for a bias or partiality motion. Instead, the judge's rulings should

constitute grounds for appeal, not for recusal." *United States v. Landerman,* 109 F.3d

1053, 1066 (5th Cir.1997) (internal quotation marks and citation omitted).

A district court in Massachusetts recently explained the longstanding rules

regarding recusal based on prior government employment in declining to recuse himself

from a criminal prosecution.

> Under § 455(b)(3), a judge must recuse himself "[w]here he has served in
> government employment and in such capacity participated as counsel,
> advisor or material witness concerning the merits of the particular case in
> controversy." Here, there is no allegation by defendant (nor could there
> be) that as an Assistant United States Attorney (AUSA), I was involved in
> the prosecution of any case in which he was a subject or target. See United
> States v. Di Pasquale, 864 F.2d 271, 279 (3d Cir. 1988) (the statute
> requires "a [4] specific showing that the judge was previously involved
> with a case while in the U.S. Attorney's office that he or she is later
> assigned to preside over as a judge") (emphasis in original).

*United States v. Bulger*, 2012 U.S. Dist. LEXIS 98471, 3-4 (D. Mass. July 17, 2012).

To the extent that Mr. Bourne argues that simply any allegation of a prior

relationship is enough to cause a reasonable person to question impartiality, that broad

brush reading of §  455(a) must be rejected. "No permissible reading of subsection 455(a)

would suggest that Congress intended to allow a litigant to compel disqualification

simply on unfounded innuendo concerning the possible partiality of the presiding judge.

Indeed, "[a] trial judge must hear cases unless some reasonable factual basis to doubt the

Case 1:12-cv-00251-JL   Document 6-1   Filed 07/27/12   Page 5 of 5

Email: nancy.smith@doj.nh.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on the following persons on this date and in the manner specified herein: Conventionally served by first class mail to Samuel Bourne, pro se, 117 Pond Street, East Bridgewater, MA 02333.

Date:  July 27, 2012

_/s/ Nancy J. Smith_____
Nancy J. Smith
NH Bar #  9085

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

SAMUEL J. BOURNE,
            Plaintiff                                    Docket No.  12-cv-251-JL

                              v.

STATE OF NEW HAMPSHIRE,
SUPREME COURT OF NEW HAMPSHIRE,
LINDA STEWART DALIANIS individually,
JAMES E. DUGGAN individually,
GARY E. HICKS individually,
CAROL ANN CONBOY individually,
ROBERT J. LYNN individually, and
EILEEN FOX individually,

                    Defendants


**Plaintiff's Reply to Defendant's objection to Motion to Recuse and Change of Venue**

        Now Comes the Plaintiff Mr. Bourne and hereby Reply to the Defendants misleading

objection, and the Plaintiff states as follows:

1.      First and foremost, the Defendants objection in itself is sufficient evidence that

demonstrates that the Defendants do not want to lose their political advantage within this New

Hampshire Federal Court. It is widely known that the Justices of this Court were in fact

politically appointed by the recommendations of State Defendants to the President of the U.S.,

therefore having such political advantage would in fact confirm the question of impartiality.

2.      Most important is that the Defendants [admit] that the Justices of this NH Federal Court

were in fact employed by the same Office or same NH Attorney General that now defends the

Defendants herein. Once again, confirming a known conflict of interest, which requires recusal.

3.    If it was not for the Justices previous NH State employment, and the NH political favors

that allowed the NH Federal Justices of this Court to be appointed, then such obvious conflict of

interest would not exist. In other words, the evidence before this NH Federal Court makes it

more probable, than not, that the NH Federal Justices previous employment by the Defendants

herein, confirms that the Justices impartiality would absolutely be questioned. Therefore,

requiring recusal.

4.    If there still was any reservation, what-so-ever, to confirm the necessity of recusal and

change of venue, then town of Madison Defendants attorney Brian Cullen, has in fact stated and

confirmed that he knows this case will be dismissed. Such political fix, once again confirms this

Court's impartiality will be questioned. See Cullen email attached hereto as Exhibit A.

**WHEREFORE**, the Plaintiff requests this Court to:

A.    Grant the Plaintiff's Motion for Recusal, and Change of Venue, and

B.    For such other relief that protects the Court's integrity.

Respectfully Submitted,

Samuel Bourne individually,                                    July 31, 2012
117 Pond Street
East Bridgewater, MA 02333
508-378-9319

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail,
postage prepaid, to counsel for the Defendant[s], Michael A. Delaney Attorney General of N.H.,
and Nancy J. Smith Senior Assistant Attorney General of N.H., 33 Capital Street Concord, N.H.
03301

from: Brian Cullen Bcullen@cullencollimore.com
to: Sam Bourne <bourne.sam@gmail.com>
date: Mon, Jul 30, 2012 at 4:24 PM
subject: RE: Objection to Statement of Reasonable Expenses

Mr. Bourne:

I fail to see how a settlement offer that would allow you to avoid paying what will soon be over $3,000 of court ordered fees (in the two cases), move a much-despised foot path from your front door, and give you a chance to have a fresh start in the town you would like to live in at least part time, is "abusive." In reality, it would save your family money and save you time pursuing a claim (the federal case against the Supreme Court) that is certain to be dismissed.

While you have rejected my settlement overtures, the Court in the defamation case has reviewed and denied your most recent motion, ordering today that you answer Interrogatory No. 16 exactly as I had outlined in my email to you of last week (which you ignored) by next Monday. Assuming that you do so, I'd like to resume your deposition the week of August 20. Please let me know which day that week suits you best, barring Friday the 24th.

Brian

Brian J.S. Cullen, Esq.
CullenCollimore pllc
10 East Pearl Street
Nashua, NH 03060



EXHIBIT -D

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

SAMUEL J. BOURNE,
        Plaintiff

Docket No. 12-cv-251-PB

v.

STATE OF NEW HAMPSHIRE,
SUPREME COURT OF NEW HAMPSHIRE,
LINDA STEWART DALIANIS individually,
JAMES E. DUGGAN individually,
GARY E. HICKS individually,
CAROL ANN CONBOY individually,
ROBERT J. LYNN individually, and
EILEEN FOX individually,

        Defendants

## 2nd Supplement to Plaintiff's MOTION FOR RECUSAL AND CHANGE OF VENUE

Now Comes the Plaintiff Mr. Bourne and respectfully submit this [2nd] supplement to the

pending motion for recusal and change of venue, due to this Court's **"ping pong"** Judge

designation, and latest designation of **Judge Barbadoro**, and the Plaintiff states as follows:

Background

On or about Aug 22, 2012 Judge Laplante ordered that Magistrate McCafferty was

designated to review the pending motion[s]: motion for recusal and change of venue; motion to

dismiss; and motion to strike. See (court order no. 11). Then without any official recusal, or

documented notice, Magistrate McCafferty sent this case back to Judge Laplante. Now on Aug

30, 2012 Judge Laplante finally recused himself and requested the Clerk to Re-assign this matter.

See (court order no. 13). Also on Aug 30, 2012 this Court in error Re-assigned this case to Judge

Paul J. Barbadoro, thereby ignoring Judge Barbadoro's known conflicts of interest, and previous

1



record of bias toward the Plaintiff. See (Civil Action No. 09-CV-270-PB) and subsequent appeal (First Circuit No. 12-1001). See also first circuit notice of appeal issues attached hereto as Exhibit 1.

The Court should also note that all disputes between Mr. Bourne and Laconia Savings, Bank and Stewart Title Co., were in fact reasonably resolved, and specifically settled without any assistance of this Court. Shortly thereafter the parties agreed to dismiss the appeal. See (docket 09-cv-270) (document no. 159).

## Judge Barbadoro's known Conflict[s] of interest require Recusal

The Plaintiff has discovered additional information that further demonstrates known conflicts of interest do in fact exist, which would lead a reasonable person to question the impartiality of the Judge Barbadoro. For example, it is known that Judge Barbadoro was previously employed by the Defendants herein at the NH Attorney General's Office. Therefore, confirming direct ties to the Defendants, and requiring recusal under 28 U.S.C. 455.

The basis for recusal and change of venue are directly related to the probability of actual bias, especially where it is known that the conflicts of interest do in fact exist. Any failure to recuse would violate the Plaintiff's constitutional due process rights. In other words, it does not matter what Judge Barbadoro thinks of his own potential for bias; the key point here is whether the appearance of impartiality would be compromised. Applying *Withrow* v. *Larkin*, 421 U. S. 35, 47 (1975). When those due process precedents are applied properly to the circumstances herein, it would then in fact require recusal.  For further support, it has also been discovered that Judge Barbadoro's political ventures have specifically included direct ties to the Defendant State of New Hampshire's Governor John Lynch as demonstrated by a recent photo, as said photo speaks for itself, and is attached hereto as Exhibit 2. In addition, if a Juror was known to

2

associate with a defendant, then that Juror would in fact be excused, as evidenced by said photo in exhibit 2.

This Court's justices, and other known employees thereof, have an obligation to disclose *their* conflicts of interest. The facts, as stated, clearly satisfy the standards of the statute (28 U.S.C. 455), since any reasonable person, apprised of these circumstances, would reasonably question the Court's impartiality. But, in any event, Judge Barbadoro's recusal would also be required under Cannon 3 (c) (1) of the Code of Conduct for the United States Judges, which requires a judge to disqualify himself from any case *"in which the judge's impartiality might reasonably be questioned."* Under this test, a judge ordinarily must disqualify him or herself if a reasonable person, knowledgeable of the relevant facts, would have reason to question the judge's impartiality.

## In Conclusion

Because the record demonstrates Magistrate McCafferty un-officially recused herself, and Judge Laplante officially recused himself, there still remains a question of; (whether or not) a *"Motion to recuse by petition for a writ of mandamus"* before the First Circuit Court of Appeals will be necessary to compel Judge Barbadoro to recuse himself due to known conflicts of interest. As such, the Plaintiff will patiently await further notice from this Court, for approximately ten days, before submitting any other motions for such further relief.

Respectfully Submitted,

Samuel Bourne individually,                                      Sep 3, 2012
117 Pond Street
East Bridgewater, MA 02333
508-378-9319

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to counsel for the Defendant[s], Michael A. Delaney Attorney General of N.H., and Nancy J. Smith Senior Assistant Attorney General of N.H., 33 Capital Street Concord, N.H. 03301

4

EXHIBIT - 1

## UNITED STATES COURT OF APPEALS
### For the First Circuit

```
*************************************
                                     *
Samuel Bourne individually, and as Trustee
of Bedrock Realty Trust,             *
                                     *
              Appellant[s],          *
                                     *    Civil Action No. 12-1001
   v.                                *
                                     *
Stewart Title Guaranty Company
And
Laconia Savings Bank
                                     *
                                     *
              Appellee[s].           *
                                     *
*************************************
```

## APPELLANT'S STATEMENT OF APPEAL ISSUES

Now Comes the Appellants Samuel Bourne individually, and as Trustee, and

hereby lists the appeal issues **[separately]** for each of the **[two]** different

Appellee[s], and Mr. Bourne states as follows:

### First; Appeal issues regarding the Appellee Stewart Title Guaranty Company:

1.     The Court erred by misinterpreting [two] different [ambiguous] Title

policies.

2.     The Court erred by granting summary judgment when there remained fact

issue[s].

1

3.     The Court erred by misapplying the statute of limitations to: (a) an ongoing Title Contract; (b) [newly] discovered Fraud and/or Forged documents; (c) [newly] discovered Title defects; and (d) fraudulent denial of coverage that tolled the statute.

4.     The Court erred by applying (inconsistent) applications of law.

5.     The Court demonstrated bias, while condoning the Appellee's misconduct that consisted of: (a) concealment of discovery; (b) submitting falsified pleadings; and (c) taking inconsistent positions not supported by the Court's record.


**Second; Appeal issue regarding the Appellee Laconia Savings Bank:**

1.     The Court erred by not recognizing that Appellee Laconia Savings Bank lacked legal standing to foreclose upon the subject property, especially where the predatory Bank failed to secure rights of the actual owners.

2.     The Court erred by failing to recognize there remained fact issue[s] as to: (a) the [Bank's Fraud] by its "creation and use" of (predatory appraisals) that purposely over valued the subject property by three times the actual worth, while the property was plagued with ongoing litigation, and Title defects; (b) the Bank failed to secure a Certificate of Trust or Entity Ownership; and (c) whether or not the Bank was Negligent for failing to enforce a second Title policy that covered the ongoing Title defects.

3.    The Court erred by its failure to apply and/or enforce the [Uniform Trust Code] adopted by New Hampshire, as it applies to the subject "Declaration of Trust."

4.    The Court erred by applying (inconsistent) applications of law to the Bank's (fraud), (negligence), and (predatory practices).

Respectfully Submitted,                                        Jan 11, 2012

Samuel Bourne individually, and as Trustee
of Bedrock Realty Trust
117 Pond St
East Bridgewater, MA 02333
508-378-9319

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been forwarded via U.S. First Class Mail, postage prepaid, to counsel for the Appellees,

Gallager, Callahan & Gartrell                Ford & Weaver, P.A.
C/O R. Mathew Cairns,                        C/O Edmond J. Ford,
P.O. Box 1415                                10 Pleasant St., Suite 400
Concord, NH 03302                            Portsmouth, NH 03801

3

# EXHIBIT - 2



Gov. John Lynch, left, and U.S. District Court Judge Paul
J. Barbadoro congratulate Maribel A. Cypher of Hancock
on becoming a U.S. Citizen. Cyppher has lived and
worked in the Philippines, Saudi Arabia, Taiwan, China,
Israel and Boston.



# EXHIBIT - E

From:          mbrooks@dewhurstlaw.com
Sent:          Wednesday, February 16, 2011 9:32 PM
To:            rdkingx2@earthlink.net
Subject:       Bourne's Actions Against Laconia Savings Bank and Stewart Title
Attachments:   Order on LSB & Stewert MTD[1].pdf

Bob:

Wanted to get this right out to you.

Bad day for Mr. Bourne.

All claims dismissed as to LSB. The pathway is clear for foreclosure action!

Majority of claims dismissed as to Stewart Title. All save one claim for breach of contract.
If they re-plead in summary judgment, they will likely be successful if they provide the
level of factual-based analysis that Judge Barbadoro requires.

In any event, a good read. Judge Barbadoro is extremely intelligent (I took a course that he
taught on the Federal Courts when I was in law school). He writes nearly bullet-proof
opinions and he is very well respected in the appellate courts.

Enjoy.

Mike

1

MAD00065



EXHIBIT - F

| From: | R. D. King [rdkingx2@earthlink.net] |
| Sent: | Saturday, June 25, 2011 2:13 PM |
| To: | Mike Brooks |
| Subject: | Recommendation that Selectmen formulate and announce its position concerning issuance of a building permit on the Bourne property |
| Attachments: | Foreclosure Notice, Bourne property, 14Jun11.pdf |
| Importance: | High |

## NON-PUBLIC COMMUNICATION

Hello Mike:

Now that the Foreclosure Notice has been issued on the Bourne property (see attached), there are two measures that the Board could take to protect the Town from future troubles with that property.

One would be to initiate an exploratory discussion of whether the Town should seek to acquire the property at auction, either to keep it as conservation land or later to sell it to a buyer with deeded covenants against residential construction beyond what is there now (rustic cottage). Reinstatement of the snowmobile trail would be an obvious option under this concept. The Selectmen could provide leadership by encouraging discussions of this issue by the Planning Board and Conservation Commission. The idea is not to propose anything, but just to initiate a timely dialog and see where it goes. You might be surprised at what you find out by doing this. It's anyone's guess about how public opinion will react to the opportunity that is presenting itself.*

The other measure would be to formulate and announce the Board's perspective on whether it should issue a building permit for a new year-round home on the Bourne property. The purpose of this would be to assure that no one buys the property with a presumption that he could go beyond what is grandfathered and build a year-round dream home on it. *Allowing such a presumption could lead to serious trouble later*.

Court documents in the Bourne cases contain frequent statements that without the old town road that led to the Solomon Harmon ruins, the remaining easement r.o.w. (Kelsey easement) isn't a public vehicular road and hence is unsuitable to further residential development. Bourne was strongly assured that you wouldn't issue him a building permit for a new home under these circumstances.

A new owner could ask for a building permit based on his private r.o.w. ("driveway"), but you discouraged Bourne strongly from believing that you'd allow that.

Subdivision on a Class VI road is flatly prohibited by our Zoning Ordinance. Subdivision on a private r.o.w. is not flatly prohibited by our Ordinance, but in Bourne's case the Planning Board made it clear that it would not approve a subdivision on a private r.o.w. with the characteristics of the Bourne driveway, particularly as to its narrow width (30 feet or less) and steepness.

In any event, construction on a Class VI highway or a private r.o.w. where the lot has no frontage on a Class V or better road is deemed unsuitable hence unlawful under state law; however, Selectmen have special discretion to make exceptions where circumstances overcome the state's presumption of unsuitability, e.g., where the actual conditions are little different from those prevailing on Class V roads.** A classic example of this is the Brown's home on Daniel Ward Road, where the house is but a short "driveway distance" from Lead Mine Road, where there are no further houses on the Class VI road and little potential for same, where the grade is gentle and the roadbed sound, where conflicts with public use are minimal, where there are no school bus problems, and where potential pressures to make the road Class V are difficult to imagine.

In any event, state law does not obligate the Selectmen to grant requests for building permits on these types of road, and as long as they have a reasonable basis for their decision, their exercise of discretion will be upheld. To this I would only add that a rejected permittee has recourse to the ZBA, but that body has some pretty stringent standards to meet in overturning the Selectmen's decision.

In a word, letting the public and the auctioneer know of your already well-developed position on a building permit for this particular property could save the Town a lot of grief later on. Prospective buyers would have realistic expectations about what they could build there.

Procedurally, let me remind you that in the Bourne case, he came to the Selectmen before purchase and received pre-sale assurances that he could build what he wanted. The new owner should have similar assurances about what he can build before making his purchase.***

If all goes well, the Bourne property will pass to someone who only wants it for the view, the proximity to conservation easement lands and scenic Bald Ledge, and the rustic cottage to facilitate such pursuits as snowmobiling, hunting, and communing with nature. It will be especially nice if the new buyer re-opens the Kelsey easement to snowmobilers who will maintain the roadway for enjoyment by the public in general.

1

MAD00081



As the auction is scheduled for July 15, it would seem that time is short for acting on these proposals, but the auctioneer told me that these auctions are often postponed. You may have more time than it seems. In any event, you have one regular meeting in July before the auction as presently scheduled. My suggestion would be to bring up the subject under "new business" at your meeting on the 28th and announce your position, perhaps after a public hearing, on July 12.****

I hope that you share with me the view that the Kelsey easement, the 300-acre McNair recreational easement parcel, and Bald Ledge together constitute one of Madison's most valuable recreational gems. This gem is worth preserving.

Please give this suggestion your careful consideration.

I am communicating these same thoughts to each Selectman separately and individually so as to remain on the non-public side of RSA 91-A. It isn't as if anything I'm saying won't bear the light of day, but it will keep personalities out of the equation and hence allow a more objective public discussion.

Bob King

---

* At this point many people are feeling "non-buyer's remorse" at not having acquired the Jimmy Perkins' mini-lot in the Town Forest when it was available. Haunted by that missed opportunity, they may find acquisition of the Bourne property to be a good idea. If we haven't already done so in legal fees and other costs – not to mention moral costs – before all is said and done, the Town will have saved money by buying out the Perkins lot.

** RSA 674:41.

*** The last thing you'd want is for the new owner to assume that the assurance of a permit that you gave to Bourne in 2002 applies equally to the new owner in 2011. Circumstances have changed. You also have to worry that if you give to the new owner a permit that you vowed to deny to Bourne, Bourne will have an issue about unequal treatment.

**** The subject of the hearing could be broadly framed, e.g., "What if any actions should we take in regard to the auction of the Bourne property scheduled for July 16?"

MAD00082